**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK_____**

LATIN AMERICAN MUSIC COMPANY, INC.,
a/k/a LAMCO, and ASOCIACIÓN DE
COMPOSITORES Y EDITORES DE MUSICA
LATINOAMERICANA a/k/a ACEMLA,                                    13 CV 1526-RJS

                             Plaintiffs,

vs.

SPANISH BROADCASTING SYSTEM, INC. AND
RAÚL ALARCÓN, JR.,

                             Defendants.

_____

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT SPANISH BROADCASTING SYSTEM INC.'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

Kelly D. Talcott
The Law Offices of Kelly D. Talcott
34 Grove Street, PO Box 43
Sea Cliff, New York 11579
kelly@kdtalcott.com
v. 516.515.1545
f. 516.871.0682

Attorney for Plaintiffs

**Contents**

I. PRELIMINARY STATEMENT ..........................................................................................1

II. STATEMENT OF FACTS ..............................................................................................1

   A. SBS Entered into Retroactive Licenses with BMI and ASCAP.............................2

   B. There Exist Substantial Questions as to Whether Fania Music has a Valid Agreement with BMI..............................................................................................................................3

   C. There are Material Questions of Fact as to SBS's Rights to Soy Sensacional.....................4

   D. There are Material Questions of Fact as to SBS's Rights to Aguanile, Ausencia, and Abuelita...............................................................................................................................5

   E. There are Material Questions of Fact as to SBS's Rights to Arroz Con Bacalao..................7

   F. There are Material Questions of Fact as to SBS's Rights to La Malanga ............................8

   G. There are Material Questions of Fact as to SBS's Rights to Aniversario and Toro Mata ....10

     1. Aniversario ...........................................................................................................12

     2. Toro Mata ............................................................................................................13

III. ARGUMENT ..............................................................................................................14

   A. The BMI and ASCAP License Agreements Attempt to Operate Retroactively .................15

   B. There Are Substantial Questions of Material Fact as to Every Song Covered by SBS's Motion..............................................................................................................................16

   C.  SBS is not an Innocent Infringer...................................................................................17

IV. CONCLUSION.............................................................................................................18

## Cases

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ...................................................................... 14

*Basic Books, Inc. v. Kinko's Graphics Corp.*, 758 F.Supp. 1522 (S.D.N.Y. 1991) .................................. 17

*Cifra v. Gen. Elec. Co.*, 252 F.3d 205 (2d Cir.2001) ...................................................................... 14

*Davis v. Blige*, 505 F.3d 90 (2d Cir. 2007) ...................................................................... 16

*First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253 (1968) ...................................................... 15

*Fischl v. Armitage*, 128 F.3d 50 (2d Cir.1997) ...................................................................... 15

*H. Sand & Co. v. Airtemp Corp.*, 934 F.2d 450 (2d Cir.1991) .......................................................... 15

*Hunt v. Cromartie*, 526 U.S. 541 (1999) ...................................................................... 15

*Jeffreys v. City of N.Y.*, 426 F.3d 549 (2d Cir. 2005) ...................................................................... 14

*Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199 (2d Cir.2006) .................................. 14

*McCarthy v. Dun & Bradstreet Corp.*, 482 F. 3d 184 (2d Cir. 2007) ................................................. 14

*Patterson v. County of Oneida, NY*, 375 F.3d 206 (2d Cir. 2004) ..................................................... 15

*Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155 (2d Cir.1999) ....................................... 15

## Statutes

17 USC 504(c)(2) ...................................................................... 18

Fed. R. Evid. 802 ...................................................................... 5, 12, 14

## Treatises

10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 2738, at 328 (3d ed.1998) ...................................................................... 15

Plaintiffs Latin American Music Company, Inc. ("LAMCO") and Asociacion de Compositores y Editores de Musica Latinoamericana  ("ACEMLA") respectfully submit this memorandum of law in opposition to defendant Spanish Broadcasting System, Inc.'s ("SBS") motion for partial summary judgment.

## I. PRELIMINARY STATEMENT

Defendant SBS's motion for partial summary judgment depends on the quality of two *nunc pro tunc* licenses it holds, one from Broadcast Music, Inc. ("BMI"), and the other from the American Society of Composers, Authors and Publishers ("ASCAP").  The licenses, however, are each defective in at least two respects.  First, they ineffectively attempt to license retroactively to cover dates on which plaintiffs allege SBS illegally broadcast one or more recordings for which plaintiffs hold the broadcast rights.  Second, there are substantial questions of material fact as to whether BMI and ASCAP hold clear rights to the titles at issue in this motion; accordingly, their ability to issue licenses for those titles (whether prospective or retroactive) is questionable at best.

## II. STATEMENT OF FACTS[1]

As correctly noted in SBS's motion, LAMCO is a music publisher that administers copyrighted musical works of Puerto Rican and foreign composers, and ACEMLA is a music performance licensing organization, competing with BMI and ASCAP, that licenses and

---

[1] Plaintiffs incorporate by reference their responses to SBS's Statement of Material Facts pursuant to Local Civil Rule 56.1 ("SMF" referring to SBS's statements, and "Response" referring to plaintiffs' responses thereto), as well as plaintiffs' Counterstatement of Material Facts ("Counterstatement").

administers the performance rights in its repertory.[2]  SMF 1, 2.  SBS is a radio broadcaster that

owns and operates commercial radio and television stations across the United States and in

Puerto Rico. SMF 3.  To date, two of SBS's radio stations have been identified as having

broadcast songs that are at issue in this lawsuit.  SMF 4.

      BMI and ASCAP each operate music performing rights licensing organizations that enter

into agreements with songwriters, composers, and music publishers which grant BMI and

ASCAP the non-exclusive right to license the public performance of the BMI affiliates' and

ASCAP members' copyrighted musical works.  SMF 5-7.  Their respective licenses typically

grant broadcasters the right to perform publicly all of the copyrighted musical works contained in

their respective repertoires.  SMF 8.

## A. SBS Entered into Retroactive Licenses with BMI and ASCAP

      SBS maintains that it "entered into a license agreement with BMI for the SBS radio

stations (the 'BMI License') for the January 1, 2010 to December 31, 2016 license term."  SMF

9.  While that may be the purported term of SBS's BMI license, the agreement itself was not

signed until January 2, 2013.  Response 8.  As noted in plaintiffs' third amended complaint,

SBS's alleged infringement of two titles – Aguanile and Arroz Con Bacalao[3] – occurred in 2012,

before the SBS-BMI retroactive agreement had been signed.  SMF 13.

      SBS also claims that it signed a similar license with ASCAP, also "for the January 1,

2010 to December 31, 2016 license term." SMF 11.  Here too, the agreement was retroactive; in

this case, it was not signed until September 5, 2013.  Response 11.  This was just weeks after the

---

[2] The fact that ACEMLA competes with ASCAP and BMI, together with the fact that ASCAP
and BMI have injected themselves into this lawsuit on SBS's behalf, may explain SBS's
pejorative and admittedly irrelevant characterization of ACEMLA as "essentially a music
publisher." SBS Memorandum at 3.  Clearly, ASCAP and BMI are driving the SBS bus in this
case.
[3] Both are at issue in this motion.

August 2013 dates on which plaintiffs allege SBS broadcast Aniversario and Toro Mata, two titles also at issue in this motion.  SMF 14.

There are eight titles at issue in this motion (out of a total of 13 titles set forth in plaintiffs' third amended complaint).  BMI claims to hold the rights to license six of these: Soy Sensacional, Aguanile, Ausencia, Arroz Con Bacalao, and La Malanga (a/k/a Malanga Brava).  SMF 13.  ASCAP claims to hold rights to two: Aniversario and Toro Mata.  SMF 14.

SBS broadcast two of the BMI songs before it signed its license agreement with BMI on January 2, 2013: Aguanile, on June 17, 2012, and Arroz Con Bacalao, on January 24, 2012.  Response 9; SMF 13.  SBS broadcast both of the ASCAP songs before it signed the ASCAP license agreement on September 5, 2013: Aniversario, on August 11, 2013, and Toro Mata, on August 8, 2013. Response 12; SMF 14.

**B. There Exist Substantial Questions as to Whether Fania Music has a Valid Agreement with BMI**

An entity known as Fania Music claims to hold rights to five of the BMI songs: Soy Sensacional, Aguanile, Ausencia, Abuelita, and Arroz Con Bacalao.  SMF 15.  It is not clear, however, that Fania Music has rights to any of these five titles.  Most importantly for purposes of this motion, there is no signed affiliation agreement between Fania Music and BMI.  The 1986 license agreement in Garza Exh. B is between BMI and "FAF PUBLISHING, a Division of F PUBL. INC.," and not BMI and Fania Music.  Furthermore, there is no record of a transfer of that agreement from "FAF PUBLISHING, a  Division of F PUBL. INC." to any other entity, let alone "Fania Music."  The purported 2006 letter agreement found at the last page of at Garza Decl. Exh. B does not cure this, for two reasons.  First, while it purports to document a transfer of rights from "Sonido Inc., a corporation organized and existing under the laws of the State of New York d/b/a FAF PUBLISHING" to Fania Music, Sonida – the purported transferor -- did

not sign the transfer letter, so the attempted transfer is ineffective. Second, even if Sonido had signed the letter agreement, there is no record of what connection there is between Sonido and "FAF PUBLISHING, a Division of F PUBL. INC." or whether "FAF PUBLISHING, a Division of F PUBL. INC." ever transferred any rights to Sonido. At a minimum this calls into serious question what the relationship is between Fania Music and BMI, as well as what rights BMI may have via Fania Music to license to SBS. Response 15, 18, 19, 20.

In other words, without a signed agreement between Fania Music and BMI, or a clear chain of title from "FAF PUBLISHING, a Division of F PUBL. INC." to "Sonido Inc., a corporation organized and existing under the laws of the State of New York d/b/a FAF PUBLISHING," and then to Fania Music, there is a question of material fact as to whether Fania Music has any agreement in place with BMI under which BMI in turn has rights to license any Fania Music songs. Response 15, 18, 19, 20.

## C. There are Material Questions of Fact as to SBS's Rights to Soy Sensacional

While SBS claims that Fania Music has rights to Soy Sensacional, the sole document it provides as support is a self-serving "Publisher Clearance Form" provided to BMI by "Fania Publishing Co." in 1973 (*not* Fania Music, or even FAF Publishing or Sonido). SMF 25. SBS ignores the obvious chain-of-title issues highlighted above – in particular, what connection exists between "Fania Publishing Co." in 1973, FAF Publishing in 1985, and Sonido in 2006?. The Fania Music claim to Soy Sensacional is also called into question by two sets of documents from plaintiffs' files; agreements between the composer Jenaro Alvarez Domenech transferring rights in and to Soy Sensacional and other compositions to plaintiffs in 1996, and LAMCO's registration of the copyright to Soy Sensacional in 2003. Response 25; Counterstatement 1 and 2.

The agreement between BMI and Larry Harlow Kahn, who appears to claim rights to Soy Sensacional, does not change this. Aside from the list of titles appended to the agreement, there is nothing to establish that Mr. Kahn was actually a writer or co-writer of Soy Sensacional. SBS and BMI go further, however, claiming without any documentation that one "Jenaro Alvarez, Jr" was a co-writer with Mr. Kahn on Soy Sensacional, and that Alvarez was affiliated with BMI in 1966. SMF 28-32; Response 32. Similarly, SBS's claims that BMI has been "diligently searching" for Mr. Alvarez's heirs, or that it has been paying royalties to Fania Music and Mr. Kahn, are unsupported in this motion, and should be disregarded as hearsay. Fed. R. Evid. 802. Response 34.

At a minimum there is a material question of fact whether plaintiffs or BMI hold the rights to Soy Sensacional, in addition to the Fania-BMI chain-of-title issues highlighted above. Accordingly, SBS's motion with respect to Soy Sensacional should be denied.

**D. There are Material Questions of Fact as to SBS's Rights to Aguanile, Ausencia, and Abuelita**

While SBS (via BMI) claims that Fania Music is the publisher of Aguanile, Abuelita, and Ausencia, there is virtually no support for that claim. Even the self-serving "Publisher Clearance Form" cited at SMF 39 is not in Fania Music's name, but instead in the name of "Fania Publishing Co., Inc.," a different entity entirely. Response 39. In addition, the form lists only Aguanile for clearance; there is no mention of Abuelita or Ausencia. Response 39. There is thus no evidence to support SBS's claim that Fania or BMI had any rights to Abuelita or Ausencia. Further, the chain-of-title problems described above call into serious question whether present-day Fania Music holds any of the rights to Abuelita that Fania Publishing Co. Inc. may have been claiming in 1972.

5

Compounding this are the agreements that plaintiffs entered into with Jose Alberto Perez Castro, heir to Hector Perez, a/k/a Hector Lavoe, in 1999, which transferred to ACEMLA and LAMCO a broad range of rights to license and exploit Mr. Lavoe's compositions, including Aguanile, Abuelita, and Ausencia. ACEMLA promptly recorded those agreements with the United States Copyright Office. Counterstatement 6. In addition, based on those agreements, LAMCO registered the copyrights to all three compositions in November of 1999. Counterstatement 7.

SBS further claims that Willie Colon was a co-author with Mr. Lavoe of Aguanile, Abuelita, and Ausencia, and that Mr. Colon had an affiliation agreement with BMI that gave BMI the right to license works written or co-written by Mr. Colon. SMF 41. The documents cited in support of this claim actually call it into serious question. A simple visual comparison of the signature on the purported Colon Affiliation Agreement at Garza Exh. F with the signature on the "no exception" letter, also at Garza Exh. F reveals the two are significantly different. One or both of the signatures is thus likely a forgery. Response 41.

SBS has a similar problem with the purported agreement with the heirs of Mr. Lavoe, who SBS claims (again, via BMI) "executed a posthumous affiliation agreement with BMI as to all of" Mr. Lavoe's works. Assuming that "Jose A. Perez" in the affiliation agreement is the same person as Jose Alberto Perez Castro, who entered into the agreements with ACEMLA and LAMCO described above, there is a substantial difference between the signatures on the ACEMLA and LAMCO agreements (which were notarized) and those on the BMI agreements (which were not). Compare Garza Exh. G with Bernard Exh. 6.

Here too, there are material questions of fact the prevent entry of summary judgment in SBS's favor. For one, there is a substantial question whether plaintiffs or BMI hold the rights to

6

Aguanile, Abuelita, and Ausencia.  There is also the chain-of-title question with respect to the BMI-Fania Music agreement, and of course the question of the effectiveness of the retroactive SBS-BMI license as a cure for SBS's broadcast of Aguanile that occurred before the signature date on the SBS-BMI agreement.

**E. There are Material Questions of Fact as to SBS's Rights to Arroz Con Bacalao**

While SBS claims that Arroz Con Bacalao was written by "Johnny Alvarez," Copyright office records for Arroz Con Bacalao as well as documents maintained by LAMCO and ACEMLA reflect that Jenar Alvarez Domenech, was the writer.  Counterstatement 3, 4, 5.  SBS also maintains that Fania Music is the publisher of Arroz Con Bacalao.  SMF 52.  Here too, however, there is a significant discrepancy between the entity appearing on the Publisher Clearance Form – "Fania Publishing Co. Inc." – and the one now claiming rights, namely "Fania Music."  Once again, there is no documentation supporting any transfer of rights to Arroz con Bacalao to any entity by the name of Fania Music.  Response 52, 53.  Similarly, the purported copyright registration for Arroz Con Bacalao was issued in the name of Fania Publishing Co., Inc., not Fania Music.  Response 54.

SBS/BMI claims that Johnny Alvarez included Arroz Con Bacalao in a membership application he submitted to BMI in 1978.  SMF 55.  Once again, there are authenticity problems with BMI's documentation.  For one, Mr. Alvarez's signature on the BMI documents – which was not witnessed – is significantly different from his signature on the agreements he signed with LAMCO and ACEMLA, which were witnessed.  Response 55.  Further, the social security number listed on the BMI documents differs from the number listed on the ACEMLA/LAMCO documents.  Compare Garza Exh. I, final page, with Bernard Decl. Exh. 1, second page.

Response 55.  For these reasons, Mr. Alvarez's purported affiliation agreement with BMI and the Writer Clearance Form submitted under his name are also suspect.  Response 56, 57.

BMI claims that Mr. Alvarez was married to Amelia Colón Ruiz, and that she provided BMI with a signed document agreeing to be substituted for Mr. Alvarez after his death.  SMF 58. BMI, however, fails to provide any proof (such as a marriage certificate or ruling of a probate court) that Ms. Ruiz was ever married to Jenaro Alvarez Domanech, or that he and "Johnny Alvarez" were one in the same person.  Response 58.

Once again, there are material questions of fact the prevent entry of summary judgment in SBS's favor.  The most basic is the question of which individual – Jenaro Alvarez Domanech, or "Johnny Alvarez" – was the writer of Arroz Con Bacalo, or whether they were one in the same person.  If they were, then either BMI's documents or plaintiffs' documents appear to bear a forged signature.  There is also the now-familiar question whether Fania Publishing Co., Inc. transferred any rights by any chain-of-custody to today's Fania Music and further, whether Fania Music is properly a BMI affiliate due to its lack of a signed agreement with BMI.  Finally, even if BMI had the rights to license Arroz Con Bacalo, the date of SBS's alleged infringement predates the signature date of the BMI-SBS license.  For all of these reasons, SBS's motion for partial summary judgment with respect to Arroz Con Bacalao should be denied.

## F. There are Material Questions of Fact as to SBS's Rights to La Malanga

The song La Malanga a/k/a Malanga Brava was written by James Sabater some time prior to December 14, 1966. SMF 64.  While Mr. Sabater first registered La Malanga with BMI, listing no formal BMI publisher of record, he later renounced that agreement when he registered with ACEMLA and LAMCO in 1997.  SMF 65; Response 66.  Counterstatement 8.

SBS (via BMI) states that Mr. Sabater later re-entered an affiliation with BMI in 2007; however, that agreement specifically did not apply to compositions "composed by you alone or with one or more co-writers prior to the Period" where "there is an outstanding grant of the right of public performance to a person other than a publisher affiliated with BMI."  Response 67.  Thus, contrary to SBS/BMI's contention, while Malanga Brava may once have been a BMI title, it does not fall within the scope of Mr. Sabater's second affiliation agreement with BMI.

The "no exceptions" letter that Mr. Sabater supposedly signed on April 2, 2007 does not change this, given that the letter references "the attached list," and there is no list attached to the letter.  Response 70.  The inference that Mr. Sabater was representing and warranting that Malanga Brava was available for license to BMI is thus unsupported.

As noted above, in 1997, Mr. Sabater entered into agreements with ACEMLA and LAMCO transferring to the two entities a wide range of rights to a number of songs, including "La Malanga."  ACEMLA and LAMCO recorded their agreements with Mr. Sabater with the United States Copyright Office on or about April 8, 1997 at Volume 3359, page 246, and Volume 3359, page 248.  Counterstatement 8.  In 2001, LAMCO registered its copyright to "La Malanga" (among other songs) with the United States Copyright Office, Reg. No. PA 1-049-452.  Counterstaement 9.

While SBS/BMI contends that Mr. Sabater's heirs have entered into affiliation agreements with BMI for Mr. Sabater's works, those agreements – similar to his 2007 agreement with BMI – specifically except out compositions "composed by you alone or with one or more co-writers prior to the Period" where "there is an outstanding grant of the right of public performance to a person other than a publisher affiliated with BMI."  Response 73.

9

Here, as with the other titles purportedly controlled by BMI, there are material questions of fact that prevent entry of summary judgment in SBS's favor.  For La Malanga, these include Mr. Sabater's renunciation of his first BMI agreement, the exclusion in his 2007 BMI agreement that puts La Malanga outside of its scope, the lack of an attachment to the 2007 "no exceptions" letter, and the agreements between Mr. Sabater and plaintiffs, as well as LAMCO's registration of the copyright to La Malanga.

**G. There are Material Questions of Fact as to SBS's Rights to Aniversario and Toro Mata**

The remaining two songs at issue, Aniversario and Toro Mata, are purportedly licensed to SBS by ASCAP.  There are, however, serious questions as to whether ASCAP has the rights to these two songs that it claims to license to SBS.

ASCAP claims that its rights to the song Aniversario derive from a "uniform membership agreement with Cartagena Enterprises, Inc.," and that Cartegena Enterprises "owns and administers" the Aniverario copyright.  SMF 78.  ASCAP offers no support, however, for this claim.  Nothing in the exhibit cited in support (Reimer Exh. B) mentions Aniversario or its writer, Tommy Sanchez.

There are also chain-of-title questions with respect to Cartegena Enterprises.  In particular, SBS/ASCAP claims that Cartegena Enterprises "has been a member of ASCAP continuously since 1986."  However, the two agreements included as part of Reimer Exh. B in support of this statement are with two different entities; one is "Ralph Cartagena d/b/a Cartagena Publishing," and the other is "Cartagena Enterprises, Inc." Neither document establishes that Ralph Cartagena d/b/a Cartagena Publishing is the predecessor-in-interest to Cartagena Enterprises, Inc.  Response 79.

ASCAP similarly claims that its rights to the song Toro Mata derive from "a uniform membership agreement with Spirit Two Music Inc."  SMF 79.  As with Aniversario, however, ASCAP offers no support for the claim that Spirit Two has rights to Toro Mata.  Nothing in the exhibit cited in support (Reimer Exh. C) mentions Toro Mata or its writer, Tommy Sanchez. Response 80.

ASCAP also misstates the terms of its agreements with Cartagena Enterprises and Spirit Two, claiming that "[u]nder the Cartagena and Spirit Two Membership Agreements, all musical compositions in which Cartagena and Spirit Two owned or controlled performing rights, prior to or during the term of the Cartagena and Spirit Two Membership Agreements, are part of the ASCAP repertoire." SMF 82.  This is not correct, however; the agreement language is more limiting than ASCAP suggests.

In particular, each agreement states that it applies to "musical works" "Of which the Owner is a copyright proprietor; or Which the Owner, alone, or jointly, or in collaboration with others, wrote, composed, published, acquired or owned; or In which the Owner now has any right, title, interest or control whatsoever, in whole or in part; or Which hereafter, during the term hereof, may be written, composed, acquired, owned, published or copyrighted by the Owner, alone, jointly or in collaboration with others; or In which the Owner may hereafter, during the term hereof, have any right, title interest or control, whatsoever, in whole or in part."  Reimer exh. B at Cartagena Enterprises, Inc. agreement, paragraph 1, and exh. C at paragraph 1.  The language of these agreements is ambiguous at best, but suggests for example that the agreements would not cover musical works in which the so-called "Owner" once had rights, but no longer held such rights. Response 82.

### 1. Aniversario

SBS has no support for its claim that Tommy Sanchez assigned the copyright in Aniversario to Cartagena Publishing; it submits a document that purports to be an assignment agreement, but neither SBS nor ASCAP are parties to that agreement, and so the document is unauthenticated hearsay and inadmissible to establish the truth of the matters asserted therein. Fed. R. Evid. 802. Response 86.  Similarly, the purported 1985 assignment from Cartagena Publishing to Cartagena Publishing Company, a Division of Cartagena Enterprises, Inc. is not one to which either SBS or ASCAP is a party, and so it is unauthenticated hearsay that may not be considered for the truth of the matters asserted therein.  *Id*. Response 87.

Almost ten years after the purported 1985 assignment, Cartagena Publishing – which one is not clear – registered a copyright for Aniversario.  SMF 88.  This 1994 registration came some eight years after LAMCO filed its application to register its rights to the same song.  Response 88.  Counterstatement 11.

Plaintiffs' rights to Aniversario are much clearer than SBS's or ASCAP's.  On or about April 11, 1986, the composer Tommy Sanchez entered into a membership agreement with ACEMLA, under which ACEMLA was granted the right to license a number of Mr. Sanchez's works, including "Aniversario."  ACEMLA recorded its agreement with Mr. Sanchez with the United States Copyright Office on or about May 12, 1986.  Counterstatement 10.  As noted above, LAMCO registered the copyright to "Aniversario" with the United States Copyright Office in 1986, (eight years before one of the Cartagena entities did the same).  Counterstatement 11.

While ASCAP claims that Aniversario is shown as being in the ASCAP repertoire in ASCAP's searchable online database, in fact that is not the case.  A search of the work ID

number provides no results.  A search of the title "Aniversario" yields no results with the writer Tommy Sanchez.  A search of the writer "Tommy Sanchez" and "Sanchez Tommy" yields no results that include the song "Aniversario."  Response 91.

There are thus substantial questions of material fact that prevent a ruling in SBS's favor on the song Aniversario.  There is no evidence to support any transfer of rights between the Cartagena entities; no evidence to support a transfer of rights from Mr. Sanchez to either of those companies; and the title does not even appear when searched on the ASCAP database.  Against this is Mr. Sanchez's assignment of rights to ACEMLA and LAMCO, their recordation of those agreements with the United States Copyright Office, and LAMCO's registration of its copyright in and to Aniversario.

## 2. Toro Mata

SBS/ASCAP claim that *Toro Mata* was written by Peruvian songwriter Pedro Carlos ("Caito") de la Colina, and that on January 20, 1979, he assigned his rights in the song to Manuel Lopez-Quiroga y Clavere, doing business as Ediciones Quiroga; that Ediciones Quiroga later assigned its rights to  Sociedad Espanola de Ediciones Musicales, S.A. ("SEEMSA"); that SEEMSA entered in to an administration agreement with Hadem Music Corp. covering all of SEEMSA's works in the United States; and Hadem entered into an administration agreement with Spirit Two, granting to Spirit Two, among other rights, the right "[t]o perform and license others to perform the Compositions [owned or controlled by Hadem] publicly . . ." SMF 93, 94, 95, 96.

None of these agreements, however, involve SBS or ASCAP, and none have been authenticated.  None refer to Toro Mata.  In addition to failing to establish that Spirit Two has

any rights to Toro Mata, the agreements all constitute inadmissible hearsay and should be disregarded.  Fed. R. Evid. 802.  Response 93, 94, 95, 96.

LAMCO, on the other hand, entered into an agreement in 1981 with an entity known as Consorcio de Editoras (CONEDISA), a Peruvian corporation, under which LAMCO was granted the exclusive right to sell and license in the United States and the Dominican Republic a number of compositions, including "Toro Mata."  Counterstatement 12.  In 1986, LAMCO registered the copyright to "Toro Mata" with the United States Copyright Office.  Counterstatement 13.

There are clear issues with SBS's claim of rights in and to Toro Mata that, particularly in light of the strength of LAMCO's agreement for the same title, prevent the entry of summary judgment in SBS's favor with respect to that title.

### III. ARGUMENT

When "ruling on a summary judgment motion, the district court must '"resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment"' and determine whether there is a genuine dispute as to a material fact, raising an issue for trial. *Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199, 206 (2d Cir.2006) (*quoting Cifra v. Gen. Elec. Co.*, 252 F.3d 205, 216 (2d Cir.2001)). A fact is 'material' when it '"might affect the outcome of the suit under governing law."' *Jeffreys v. City of N.Y.*, 426 F.3d 549, 553 (2d Cir. 2005) (*quoting Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)). An issue of fact is 'genuine' if '"the evidence is such that a reasonable jury could return a verdict for the nonmoving party."' *Id.* (*quoting Anderson*, 477 U.S. at 248.) *McCarthy v. Dun & Bradstreet Corp*., 482 F. 3d 184, 202 (2d Cir. 2007).

The Supreme Court has emphasized that "all that is required [from a nonmoving party] is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or

14

judge to resolve the parties' differing versions of the truth at trial." *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968); *see also Hunt v. Cromartie*, 526 U.S. 541, 552 (1999). "Credibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment." *Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir.1997).

Of particular importance in connection with this motion is the rule that "[a]ffidavits submitted in support of or in opposition to the summary judgment motion must 'be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.'" *Patterson v. County of Oneida, NY*, 375 F.3d 206, 219 (2d Cir. 2004), *citing Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 160 (2d Cir.1999); *H. Sand & Co. v. Airtemp Corp.*, 934 F.2d 450, 454 (2d Cir.1991); 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 2738, at 328 (3d ed.1998).As noted above, there are a number of assertions made in the Garza and Reimer declarations that cannot have been made based on the declarant's personal knowledge, and a number of unauthenticated documents that are not admissible in evidence because no party having actual knowledge of the document has testified as to its authenticity.

### A. The BMI and ASCAP License Agreements Attempt to Operate Retroactively

SBS's license with BMI was signed on January 2, 2013, but the term of the agreement runs from January 1, 2010 through December 31, 2015.  Garza Decl. Exh. A at 2, section 1. Similarly, SBS's license with ASCAP was signed on September 5, 2013, but its term runs for the exact same period of time.  Reimer Decl. Exh. A at 2, section 1.  To the extent any of the songs at issue in this motion are covered by either of these licenses (something that is considerably in

doubt given the fact issues set forth above), and LAMCO or ACEMLA can be considered a co-owner of any of the songs, then the licenses may not operate retroactively to deprive plaintiffs of their right to recover from SBS for infringements that took place before the signing date of the licenses.  "A retroactive license or assignment that purports to eliminate the accrued causes of action for infringement held by a co-owner who is not party to the license or agreement also violates the fundamental principle of contract law prohibiting the parties to a contract from binding nonparties." *Davis v. Blige*, 505 F.3d 90, 103 (2d Cir. 2007).

In this case, SBS is accused of playing two songs for which BMI claims rights before the January 2, 2013 signing date of the SBS-BMI license:  Aguanile on June 17, 2012 and Arroz Con Bacalao on January 24, 2012.  Similarly, SBS is accused of playing two songs for which ASCAP claims rights before the September 3, 2013 signing date of the SBS-ASCAP license: Aniversario on August 11, 2013, and Toro Mata on August 8, 2013.  Third Amended Complaint para. 23.

Thus, to the extent plaintiffs may share rights to any of these four songs with BMI or ASCAP, then under *Davis*, the retroactive licenses that SBS entered into with these two entities are ineffective to deprive plaintiffs of their right to pursue SBS for infringement.

**B. There Are Substantial Questions of Material Fact as to Every Song Covered by SBS's Motion**

As set forth in detail in the facts section above, each and every song at issue in this motion brings with it substantial fact questions that prevent a ruling in SBS's favor.  There are a number of chain-of-title questions; plaintiffs have agreements for each one of the songs at issue; SBS relies on inadmissible documentation and hearsay statements to support its claims; and each song has its peculiar set of disputed facts that prevent SBS from securing the partial summary judgment it seeks.

**C. SBS is not an Innocent Infringer**

There are a number of facts that together combine to defeat SBS's claim that it is an innocent infringer.  First, and as set forth in the third amended complaint, in late 1994, SBS entered into a license agreement with plaintiffs.  The license agreement was "pursuant to an informal settlement" following a suit against SBS filed by LAMCO and ACEMLA arising out of SBS's broadcast of musical compositions for which LAMCO and ACEMLA claimed rights.  3rd Amended Complaint para. 18.  SBS thus had actual knowledge that plaintiffs possessed rights to compositions that SBS was likely to use in the course of radio broadcasts from one or more of its stations.  Second, SBS took retroactive licenses from both BMI and ASCAP, both of which followed plaintiffs' attempts to secure a renewal of the 1994 license after its expiration.  3rd Amended Complaint para. 20; Garza Decl. Exh. A; Reimer Decl. Exh. A.  By attempting to cover their past infringing activity, perhaps hoping that BMI and ASCAP could rescue them from having to secure a license from plaintiffs, SBS showed that it was anything but an innocent infringer.  Indeed, given that the present motion seeks to dispose of only a portion of the songs at issue in this suit, it is difficult to see how SBS can justify its request for a declaration of "innocent infringer" status.  The facts on the ground support a finding of willfulness, not innocence.

When seeking to establish that it acted as an "innocent infringer" under 17 U.S.C. 504(c)(2), the defendant must show "that it was not aware and had no reason to know it was infringing. The defendant shoulders the burden of proving this good faith and that its belief was a reasonable one." *Basic Books, Inc. v. Kinko's Graphics Corp.*, 758 F.Supp. 1522, 1544 (S.D.N.Y. 1991)(citation omitted).  As set forth above, the facts in this case show SBS's awareness of its infringing activity, not its innocence.  Given the prior history between the

17

parties, it is a significant stretch to argue that SBS "was not aware and had no reason to believe" that its acts were infringing.  17 USC 504(c)(2).

## IV. CONCLUSION

Because for each song at issue there are substantial questions of material fact that prevent the Court from ruling in SBS's favor, SBS's motion for partial summary judgment should be denied as to all eight of the songs.

 Dated: February 13, 2015

 /s/ _____
Kelly D. Talcott
The Law Offices of Kelly D. Talcott
34 Grove Street, PO Box 43
Sea Cliff, New York 11579
kelly@kdtalcott.com
v. 516.515.1545
f. 516.871.0682
