UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LATIN AMERICAN MUSIC COMPANY, INC., a/k/a LAMCO, and ASOCIACIÓN DE COMPOSITORES Y EDITORES DE MUSICA LATINOAMERICANA *a/k/a* ACEMLA,<br>　　　　　　　　　Plaintiffs,<br><br>　　vs.<br><br>SPANISH BROADCASTING SYSTEM, INC. AND RAÚL ALARCÓN, JR.,<br>　　　　　　　　　Defendants. | Civil Action No.  13 CV 1526-RJS |

### DEFENDANT SPANISH BROADCASTING SYSTEM, INC.'S
### REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR PARTIAL
### <u>SUMMARY JUDGMENT</u>

James C. Fitzpatrick
Meaghan C. Gragg
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004-1482
212-837-6000

*Attorneys for Defendant Spanish Broadcasting System, Inc.*

James G. Sammataro
STROOCK & STROOCK & LAVAN, LLP
Southeast Financial Center
200 South Biscayne Blvd. Suite 3100
Miami, Florida 33131
305-358-9900

*Attorneys for Defendant Spanish Broadcasting System, Inc.*

**TABLE OF CONTENTS**

                                                                                               **Page**

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT ..................................................................................................................................2

I.     SBS INDISPUTABLY POSSESSED VALID BMI AND ASCAP LICENSES WELL BEFORE THE ALLEGED INFRINGEMENTS. .....................................................2

II.    THERE IS NO DISPUTE THAT BMI HAD THE RIGHT TO LICENSE THE PERFORMANCE OF THE BMI WORKS AT ALL RELEVANT TIMES. .......................3

       A.     Fania Music Granted BMI the Rights to License Five of the BMI Works. ............3

       B.     BMI's Affiliated Songwriters Gave BMI the Rights to License the BMI Works. ..................................................................................................................5

III.   THERE IS NO DISPUTE THAT ASCAP HAD THE RIGHT TO LICENSE THE PERFORMANCE OF THE ASCAP SONGS AT ALL RELEVANT TIMES. ...................7

IV.   EVEN IF THERE WERE A QUESTION AS TO BMI AND ASCAP'S RIGHTS TO LICENSE, SBS AT WORST WOULD BE AN "INNOCENT INFRINGER." ...........9

CONCLUSION ..............................................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Glaser v. Singer*, No. 92 Civ. 3665 (CSH), 1993 WL 524912 (S.D.N.Y. Dec. 14, 1993) ...............7

*Latin American Music Co. v. Archdiocese of San Juan*, 194 F. Supp. 2d 30 (D.P.R. 2001)...........5

**STATUTES AND RULES**

17 U.S.C. § 504(c)(2)..............................................................................................................1, 9

Defendant Spanish Broadcasting System, Inc. ("SBS") respectfully submits this reply memorandum of law in further support of its Motion for Partial Summary Judgment ("Motion").

## PRELIMINARY STATEMENT

SBS's Motion unequivocally demonstrates that its licenses with BMI and ASCAP provide a valid and complete defense to Plaintiffs' claims with respect to eight of the thirteen works (the "Covered Works") that were allegedly infringed. Plaintiffs do not raise any material facts sufficient to defeat partial summary judgment, but instead attempt to confuse the issues by asserting arguments that are patently incorrect and legally irrelevant.

Plaintiffs first argue that SBS entered into license agreements with BMI and ASCAP ("License Agreements") only *after* some of the alleged infringements. This argument is demonstrably false—and disproven by publicly available orders from this Court. In fact, SBS paid license fees and was licensed to perform works in the BMI and ASCAP repertoires pursuant to interim fee orders issued by the United States District Court for the Southern District of New York in 2010—well before any alleged infringement.

Next, Plaintiffs, without providing any viable evidence of their own, unsuccessfully attempt to question the validity of BMI and ASCAP's rights to license the Covered Works. The undisputed evidence demonstrates that BMI and ASCAP possess affiliation agreements with the publishers and writers of the Covered Works, and have paid royalties to the publishers and writers for public performances of the Covered Works for decades.

Finally, even if the Court were to find that the License Agreements are not a complete defense to Plaintiffs' infringement claims, they fully support a finding that SBS is an "innocent infringer" within the meaning of section 504(c)(2) of the Copyright Act.

**ARGUMENT**

I.  **SBS INDISPUTABLY POSSESSED VALID BMI AND ASCAP LICENSES WELL BEFORE THE ALLEGED INFRINGEMENTS.**

Plaintiffs' primary argument that SBS purportedly was licensed by BMI and ASCAP only *after* some of the alleged infringements simply is incorrect. The License Agreements that SBS submitted with its Motion are its most recent with BMI and ASCAP, and they cover the relevant period. Those documents do not, however, mean that SBS was unlicensed by BMI and ASCAP prior to their execution. In fact, SBS obtained valid BMI and ASCAP licenses long before the alleged infringements in this case occurred, and those licenses continued in effect until the License Agreements were executed.

BMI and ASCAP have long operated pursuant to consent decrees. (Richard A. Garza Reply Decl., Feb. 27, 2015 ("Garza Reply Decl.") ¶ 3 & Ex. 1; Richard H. Reimer Reply Decl., Feb. 25, 2015 ("Reimer Reply Decl.") ¶¶ 7-12.) The terms of those consent decrees empower the Southern District of New York to act as "Rate Court" in the event that music users cannot agree to license terms with BMI and ASCAP. (*Id.*) Judge Louis L. Stanton presides over BMI cases, and Judge Denise L. Cote presides over ASCAP cases. (*Id.*)

In 2010, litigation commenced in both the BMI and ASCAP rate courts concerning licenses for most of the radio industry, and the SBS stations were bound by those proceedings. (Garza Reply Decl. ¶ 4.) In the BMI rate court, Judge Stanton entered an interim fee order on July 1, 2010, providing that all of the bound stations, including the SBS stations, were to pay license fees and were licensed to perform works in the BMI repertoire. (*Id.* ¶ 4 & Ex. 2.) This was well before the earliest of the alleged infringements in this case (*i.e.*, January 24, 2012). Later, on August 28, 2012, Judge Stanton entered a final order, immediately binding the SBS stations to the BMI license that commenced as of January 1, 2010. SBS and BMI subsequently

executed the license agreement covering the period January 1, 2010 through December 31, 2016. (*Id*. ¶ 5 & Ex. 3; Richard A. Garza Decl., Nov. 12, 2014 ("Garza Decl.") Ex. A.)

In the ASCAP rate court, Judge Cote entered an interim fee order on May 25, 2010, also providing that the bound stations, including the SBS stations, were to pay license fees and were licensed to perform music in the ASCAP repertoire. (Reimer Reply Decl. ¶ 8 & Ex. C.) This, too, was well before any of the alleged infringements in this case. Subsequently, on January 27, 2012, Judge Cote entered a final order (*id*. ¶ 10 & Ex. E), and SBS and ASCAP executed a final license agreement covering January 1, 2010 through December 31, 2016 (*id*. ¶ 11).

## II. THERE IS NO DISPUTE THAT BMI HAD THE RIGHT TO LICENSE THE PERFORMANCE OF THE BMI WORKS AT ALL RELEVANT TIMES.

Plaintiffs next attempt to raise questions about BMI's right to license the BMI works, but Plaintiffs' unsupported speculations are not sufficient to defeat summary judgment. The undisputed facts show that BMI's rights are valid and that, for decades, BMI has distributed royalties for performances of the works in question to the affiliated publisher and songwriters.

### A. Fania Music Granted BMI the Rights to License Five of the BMI Works.

SBS's Motion demonstrated that Fania Music is a BMI-affiliated publisher, and that Fania Music granted BMI the rights to license the performance of five BMI works[1] (the "Fania Works") during all times relevant to this case. Plaintiffs' sole argument to counter this dispositive point is to question, without any supporting evidence, BMI's relationship with the various Fania entities. For the avoidance of any doubt, the relevant chronology of Fania entities and agreements is set forth below.

In 1967, a company called Fania Publishing Co., Inc. ("Fania Publishing") entered into an affiliation agreement with BMI. (Garza Reply Decl. ¶ 7 & Ex. 4.) Fania Publishing

---

[1] *Soy Sensacional*, *Ausencia*, *Abuelita*, *Aguanile*, and *Arroz Con Bacalao*.

3

subsequently entered into additional affiliation agreements with BMI, including a 1976 agreement (the "1976 Fania Affiliation Agreement"). (*Id.* ¶ 7 & Ex. 5.) Ten years later, on March 5, 1986, a company called FAF Publishing, a Division of F Publ., Inc. ("FAF Publishing I") acquired the rights and obligations of Fania Publishing under the 1976 Fania Affiliation Agreement. (*Id.* ¶ 8 & Ex. 6.) FAF Publishing I also entered into an affiliation agreement with BMI on the next day (the "1986 FAF Publishing I Affiliation Agreement"), which superseded the 1976 Fania Affiliation Agreement. (*Id.* ¶ 9; Garza Decl. Ex. B.)

Six years later, on November 18, 1992, an entity known as Sonido Inc. d/b/a FAF Publishing ("FAF Publishing II") acquired the relevant rights and obligations from FAF Publishing I. (Garza Reply Decl. ¶ 10 & Ex. 7.) About thirteen years later, on October 13, 2005, FAF Publishing II provided a signed letter to BMI stating that it was transferring all of its rights to an entity known as Emusica Publishing LLC d/b/a FANIA Music ("Fania Music"), and BMI subsequently entered into a letter agreement with Fania Music confirming this on March 30, 2006. (*Id.* ¶ 11 & Ex. 8.) For ease of reference, these facts are depicted in the following chart:

|  | 1967 | 1976 | 1986 | 1992 | 2005/06 |
|---|---|---|---|---|---|
| **Fania Entity** | Fania Publishing | Fania Publishing | FAF Publishing I | FAF Publishing II | Fania Music |
| **Relevant Agreements** | First Fania Publishing Agreement with BMI (Garza Reply Decl. Ex. 4) | 1976 Fania Publishing Agreement with BMI (Garza Reply Decl. Ex. 5) | March 5, 1986 letter: FAF Publishing I acquires rights from Fania Publishing (Garza Reply Decl. Ex. 6); March 6, 1986: FAF Publishing I Agreement with BMI (Garza Decl. Ex. B) | November 18, 1992 letter: FAF Publishing II acquires rights from FAF Publishing I (Garza Reply Decl. Ex. 7) | October 13, 2205 and March 30, 2006 letters: Fania Music acquires rights from FAF Publishing II and confirms this in agreement with BMI (Garza Reply Decl. Ex. 8) |

Thus, contrary to Plaintiffs' assertions, there can be no dispute that (1) Fania Music is a BMI affiliate, and (2) Fania Music has, and gave to BMI, the rights to license the works of all of the relevant prior Fania entities.

4

Plaintiffs also note the absence of Publisher Clearance Forms for two of the Fania Works: *Ausencia* and *Abuelita*. This is immaterial, however, because the record establishes, by the declaration of a BMI witness with knowledge based on a review of BMI records, that Fania Music is the publisher of these songs, and that BMI has been distributing royalties to Fania Music for performances of these songs for decades. (Garza Decl. ¶¶ 18-23.) Plaintiffs have nothing to contradict this evidence.[2]

Consequently, Plaintiffs fail to create any factual disputes with respect to Fania, and this alone is sufficient to entitle SBS to summary judgment on the five Fania Works.

### B. BMI's Affiliated Songwriters Gave BMI the Rights to License the BMI Works.

<u>*Soy Sensacional*</u>: SBS's Motion demonstrated that BMI had the right to license *Soy Sensacional* because, <u>in addition to BMI's affiliation with Fania Music</u>, both Larry Harlow Kahn and Jenaro Alvarez, Jr., the co-writers of the song, granted BMI that right. BMI also has been distributing royalties to Mr. Kahn for performances of *Soy Sensacional* for years, and is holding royalties for the late Mr. Alvarez's estate. Plaintiffs do not dispute these facts.[3]

<u>*Aguanile*, *Ausencia*, **and** *Abuelita*</u>: SBS's Motion similarly demonstrated that BMI had the right to license *Aguanile*, *Ausencia*, and *Abuelita* because, <u>in addition to its affiliation with</u>

---

[2] On this point, and throughout their opposition, Plaintiffs assert that SBS's evidence is inadmissible hearsay, but this is patently incorrect. SBS properly relies upon declarations from Richard A. Garza, an Assistant Vice President, Legal and Business Affairs, Performing Rights, of BMI and Richard H. Reimer, ASCAP's Senior Vice President of Legal Services, who attest to matters based on their personal knowledge and review of the authenticated agreements attached thereto. *See Latin American Music Co. v. Archdiocese of San Juan*, 194 F. Supp. 2d 30 (D.P.R. 2001) (granting partial summary judgment in favor of ASCAP based on the submission of near-identical documentary evidence by way of affidavit).

[3] Not only is BMI's affiliation with Fania alone sufficient to provide a complete defense to Plaintiffs' infringement claim as to *Soy Sensacional*, its affiliation with either of the co-writers alone also is sufficient—here, BMI has all three.

5

Fania Music, both Willie Colon and the estate of Hector Perez Lavoe, the co-writers of the songs, granted BMI that right.  BMI also has been distributing royalties to Mr. Colon and Hector Perez Lavoe's heirs for performances of these works for years.  In their attempt to raise a fact issue, Plaintiffs offer only their counsel's personal belief that the signatures of Willie Colon and Hector Perez Lavoe's son, Jose A. Perez, on their respective affiliation agreements with BMI might be forgeries.  This is speculation, not evidence.  Plaintiffs have provided no testimony from the signatories or anyone else that the signatures are invalid.  Further, Plaintiffs' unfounded speculation is immaterial, as Plaintiffs have not challenged BMI's affiliation with Hector Perez Lavoe's other heir, his daughter Leslie F. Perez Roman, which alone is sufficient to grant BMI the necessary rights.

    **_Arroz Con Bacalao_**:  SBS's Motion demonstrated that BMI had the right to license *Arroz Con Bacalao* because, in addition to its affiliation with Fania Music, Johnny Alvarez, the writer of the song, granted BMI that right.  BMI also has been distributing royalties, first to Johnny Alvarez, and later, to his heir, Amelia Colon Ruiz, for performances of *Arroz Con Bacalao* for years.  Plaintiffs' only argument here is that Jenaro Alvarez, and not Johnny Alvarez, wrote the song.  This does not create a fact issue for several reasons.  First, SBS provided with its Motion evidence from outside sources establishing that Johnny Alvarez wrote the song.  (Garza Decl. ¶ 28 & Ex. J.)  Second, BMI's distribution of royalties for *Arroz Con Bacalao* to Johnny Alvarez and his heirs for decades—without complaint from Jenaro Alvarez or anyone else—shows that Plaintiffs' claim is specious.  By contrast, Plaintiffs have provided no evidence that they ever distributed any royalties to Jenaro Alvarez for performances of *Arroz Con Bacalao*.  Finally, even if Jenaro Alvarez were the writer of *Arroz Con Bacalao*, Jenaro Alvarez also is a BMI

6

affiliate—with signed affiliation agreements—so BMI's rights to license *Arroz Con Bacalao* would be unchanged. (Garza Decl. ¶¶ 15-16; Garza Reply Decl. ¶ 12 & Exs. 9 & 10.)

*La Malanga a/k/a Malanga Brava*: SBS's Motion demonstrated that BMI had the right to license *La Malanga a/k/a Malanga Brava* because James Sabater, the writer of the song, and later, his heirs, granted BMI that right. Indeed, BMI also has been distributing royalties to James Sabater and his heirs for performances of the song for years, while Plaintiffs have come forth with no evidence that they have ever distributed royalties to Mr. Sabater.

Plaintiffs claim that James Sabater's 2007 affiliation agreement with BMI does not include the rights to *La Malanga* because, they argue, Mr. Sabater transferred all rights in *La Malanga* to ACEMLA and LAMCO in 1997. Plaintiffs' argument fails for several reasons. First, Plaintiffs have not submitted an agreement between Mr. Sabater and ACEMLA, and the only such agreement that has been produced granted a non-exclusive license that expired prior to Mr. Sabater's affiliation with BMI. (*See* Mot. at 18 n.10.) Second, the agreement between Mr. Sabater and LAMCO that Plaintiffs have submitted is a foreign language document unaccompanied by a certified translation, which is inadmissible. *See Glaser v. Singer*, No. 92 Civ. 3665 (CSH), 1993 WL 524912, at *6 (S.D.N.Y. Dec. 14, 1993) (uncertified translation inadmissible).

### III. THERE IS NO DISPUTE THAT ASCAP HAD THE RIGHT TO LICENSE THE PERFORMANCE OF THE ASCAP SONGS AT ALL RELEVANT TIMES.

The evidence submitted by SBS indisputably establishes that ASCAP possesses the right to license the public performances of *Aniversario* and *Toro Mata*.

*Aniversario*: SBS's Motion demonstrated that Cartagena Enterprises, Inc. has at all relevant times been an ASCAP member, and that Tommy Sanchez, the writer of *Aniversario*, conveyed the copyright in that work to Cartagena Publishing (Reimer Decl. ¶ 11 & Ex. D (¶ 1)),

7

and that, in turn, Cartagena Publishing transferred the copyright to Cartagena Enterprises, Inc. (*Id.* ¶ 11 & Ex. E.) Plaintiffs cannot dispute these facts. Instead, first they argue that the relevant membership agreements make no reference to *Aniversario* or the writer of the song, Tommy Sanchez. This is immaterial, however, because the membership agreements clearly grant to ASCAP the right to license performances of every musical work owned or copyrighted by Cartagena at the time the membership agreements were entered or anytime thereafter. (*Id*. Ex. B.) Next, Plaintiffs attempt to rely on two agreements that, according to Plaintiffs, evidence "Mr. Sanchez's assignment of rights to ACEMLA and LAMCO." (Pls.' Mem. of Law, 13 & Raul Bernard Decl., Feb. 13, 2015 ("Bernard Decl.") Ex. 10). Again, the agreements Plaintiffs have submitted are foreign language documents unaccompanied by a certified translation, which are inadmissible. But even if the Court were to consider these documents, Plaintiffs notably lack any evidence that as of the date the two agreements were executed, April 11, 1986, Mr. Sanchez had re-acquired his rights in *Aniversario* from his original assignee, Cartagena Publishing. Without those rights, the agreements executed between Mr. Sanchez and Plaintiffs were, at best, a nullity as to *Aniversario*, and Plaintiffs' subsequent recordation of the agreements and registration of their claim to copyright are equally unavailing and of no probative value.[4]

*Toro Mata*: Plaintiffs make similar meritless and unsupported arguments with respect to *Toro Mata*. After accurately describing each of the agreements comprising the links in the chain of title, Plaintiffs incorrectly assert that "None [of the agreements] refer to Toro Mata." (Pls.' Mem. of Law, 13.) But the agreement by which Pedro Carlos Soto de la Colina, the writer of

---

[4] Plaintiffs' argument that they could not find *Aniversario* listed in ASCAP's "ACE" online database of works in its repertoire has no bearing on ASCAP's rights in and to the work. Regardless, sometime after SBS's Motion, *Aniversario* was removed from ASCAP's database by a computer systems error, but ASCAP's records confirm that the song has been in the ASCAP repertoire since Cartagena Publishing joined ASCAP in June 1982. (Reimer Reply Decl. ¶¶ 13-15.)

*Toro Mata*, assigned his rights in the song to Manuel Lopez-Quiroga y Claver d/b/a Ediciones Quiroga clearly states that Mr. de la Colina "is the composer of the composition entitled: "TORO MATA," and that he "grants to PUBLISHER the exclusive right of . . . public performance . . ." (Reimer Decl. Ex. G (¶¶ 1 & 2).)  Likewise, the agreement between Ediciones Quiroga and Sociedad Espanola de Ediciones Musicales, S.A. ("SEEMSA") refers specifically to *Toro Mata*. (*Id.* Ex. H (¶ 7).)  The succeeding administration agreements between SEEMSA and Hadem Music Corp., and between Hadem and ASCAP member Spirit Two Music, Inc. encompassed the assignees' entire catalog of works.  (*Id.* Exs. I &  J.)  Finally, the agreement between LAMCO and a Peruvian entity, Consorcio de Editoras (CONEDISA)  (Bernard Decl. Ex. 10), cannot support Plaintiffs' infringement claim.  The agreement apparently was executed in 1981, long after Mr. de la Colina granted exclusive performance rights in *Toro Mata* to Ediciones Quiroga, and there simply is no evidence that Mr. de la Colina re-acquired his rights in *Toro Mata*, or that CONEDISA acquired any rights in the song from Ediciones Quiroga.  Therefore, Plaintiffs' agreement is a nullity as to *Toro Mata*, and their 1986 registration of their claim to copyright is of no probative value.

### IV. EVEN IF THERE WERE A QUESTION AS TO BMI AND ASCAP'S RIGHTS TO LICENSE, SBS AT WORST WOULD BE AN "INNOCENT INFRINGER."

Even if the Court were to find that the BMI and ASCAP licenses are not a complete defense to Plaintiffs' infringement claims, then SBS would qualify as an "innocent infringer" under section 504(c)(2) of the Copyright Act.  SBS specifically sought licenses from, and has paid significant license fees to, BMI and ASCAP, and BMI and ASCAP listed the Covered Works as part of their repertoires.  The fact that BMI and ASCAP have distributed royalties to the publishers and writers based on performances of the Covered Works for decades further

evidences the reasonableness of their belief that they had the rights to license the Covered Works, and in turn, the reasonableness of SBS's reliance on the License Agreements.

To counter SBS's innocent infringer defense, Plaintiffs appear to argue that SBS acted "willfully" because it attempted to secure retroactive licenses. As discussed above in section I, this argument simply is wrong. Plaintiffs next appear to argue that a lawsuit that Plaintiffs filed against SBS more than two decades ago, related to different musical works, somehow bears on SBS's good faith belief that the Covered Works fall within the scope of their BMI and ASCAP licenses. This is meritless, particularly because the pertinent inquiry for a copyright infringement claim is not whether Plaintiffs possessed rights to *some* works, but whether they possessed the rights to the specific works at issue. The fact that Plaintiffs made no demand on SBS for close to twenty years only underscores the reasonableness of SBS's belief.

## CONCLUSION

For all of the above reasons, SBS's motion for partial summary judgment should be granted.

Dated: New York, New York
February 27, 2015

| STROOCK & STROOCK & LAVAN LLP | HUGHES HUBBARD & REED LLP |
|---|---|
| By: /s/ James G. Sammataro<br>    James G. Sammataro | By: /s/ James C. Fitzpatrick<br>    James C. Fitzpatrick<br>    Meaghan C. Gragg |
| Southeast Financial Center<br>200 South Biscayne Blvd. Suite 3100<br>Miami, Florida 33131<br>Telephone: 305-358-9900<br>Fax: 305-416-2888<br>jsammataro@stroock.com | One Battery Park Plaza<br>New York, New York 10004-1482<br>Telephone:  212-837-6000<br>Fax:  212-422-4726<br>james.fitzpatrick@hugheshubbard.com<br>meaghan.gragg@hugheshubbard.com |
| *Attorneys for Defendant*<br>*Spanish Broadcasting System, Inc.* | *Attorneys for Defendant*<br>*Spanish Broadcasting System, Inc.* |