**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

LATIN AMERICAN MUSIC COMPANY, INC.,
*a/k/a* LAMCO, and ASOCIACIÓN DE
COMPOSITORES Y EDITORES DE MUSICA
LATINOAMERICANA *a/k/a* ACEMLA,

                       Plaintiffs,

    vs.

SPANISH BROADCASTING SYSTEM, INC. AND
RAÚL ALARCÓN, JR.,

                       Defendants.

Civil Action No.  13 CV 1526-RJS

**ORAL ARGUMENT REQUESTED**

---

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT SPANISH BROADCASTING SYSTEM, INC.'S**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

James C. Fitzpatrick
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004-1482
212-837-6000

*Attorneys for Defendant Spanish Broadcasting*
*System, Inc.*

James G. Sammataro
STROOCK & STROOCK & LAVAN, LLP
Southeast Financial Center
200 South Biscayne Blvd. Suite 3100
Miami, Florida 33131
305-358-9900

*Attorneys for Defendant Spanish Broadcasting*
*System, Inc.*

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

STATEMENT OF FACTS .......................................................................................................2

      A.    The Seven Works at Issue from the Fania Catalogue. ............................................2

      B.    BMI's Longstanding License to the Seven Works at Issue From the Fania
            Catalog. ................................................................................................................5

      C.    SBS's License From BMI. ....................................................................................6

ARGUMENT ...........................................................................................................................6

I.      Summary Judgment Standard. ............................................................................................6

II.     Plaintiffs Do Not Own Copyrights in the BMI/Fania Works ..............................................7

      A.    Fania's Prior Registrations Trump Plaintiffs' Claims of Ownership.......................7

            1.    The BMI/Fania Works Were Originally Registered by Fania
                 Publishing and Are Part of the Fania Catalogue. ........................................8

            2.    The Fania Registration Certificates Create a Statutory Presumption
                 that Fania Owned the Copyrights in the BMI/Fania Works. .......................9

            3.    Plaintiffs Have Failed to Rebut the Statutory Presumption that
                 Fania Publishing Owned the Copyrights in the BMI/Fania Works. ..........10

                 a.    Plaintiffs Were on Constructive Notice of Fania's
                      Ownership. .....................................................................................10

                 b.    Plaintiffs' Purported Disputes About Authorship Are
                      Barred by the Statute of Limitations...............................................11

      B.    Plaintiffs Also Cannot Establish Ownership of Abuelita, Aguanile,
            Ausencia, or Mi Gente Because, As Other Courts Have Held, They Did
            Not Acquire Any Rights From Hector Lavoe's Heir...............................................12

             1.    Collateral Estoppel Bars Plaintiffs' Claims That They Acquired
                 Rights to Lavoe's Works From Lavoe's Heir............................................13

             2.    The Purported Assignment From Perez Is Also Invalid Because It
                 Was Not Consented to by Lavoe's Other Surviving Heirs. .......................14

III.    SBS's License to the BMI/Fania Works Defeats Plaintiffs' Infringement Claims. ..........15

i

IV.     There Is No Evidence of Infringement. ...........................................................................16

V.      Plaintiff Are Limited to Statutory Damages. ...................................................................18

        A.      Actual Damages Require Concrete Proof of an Injury to Market Value. ..............18

        B.      Absent Actual Damages Proof, Plaintiffs Can Only Seek Statutory
                Damages........................................................................................................19

        C.      Plaintiffs' Prior Election of Statutory Damages is Irreversible. ...........................20

        D.      Plaintiffs Have Failed to Demonstrate Actual Damages. .....................................21

VI.     Even if SBS's Blanket Licenses with BMI and ASCAP Were Not a Complete
        Defense to Plaintiffs' Infringement Claim, SBS Qualifies as an "Innocent
        Infringer.".....................................................................................................................23

        CONCLUSION...............................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ..................................................................7

*Associated Press v. Meltwater U.S. Holdings, Inc.*, 931 F. Supp. 2d 537 (S.D.N.Y. 2013) .........15

*Baker v. Urban Outfitters, Inc.*, 254 F. Supp.2d 346 (S.D.N.Y. 2003) .......................................19

*Banff Ltd. v. Express, Inc.,* 921 F.Supp. 1065 (S.D.N.Y. 1995) ..................................................19

*Boguslavsky v. Kaplan*, 159 F.3d 715 (2d Cir. 1998) ...................................................................13

*Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514 (4th Cir. 2003) ..........................7

*Estate of Burne Hogarth v. Edgar Rice Burroughs, Inc.*, 342 F.3d 149 (2d Cir. 2003) ...............10

*Carell v. Shubert Org., Inc.*, 104 F. Supp. 2d 236 (S.D.N.Y. 2000)............................................12

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .............................................................................7

*Childress v. Taylor*, 798 F. Supp. 981 (S.D.N.Y. 1992)...............................................................22

*Donovan v. Carls Drug Co.*, 703 F.2d 650 (2d Cir.1983) ............................................................18

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340 (1991) ...................................................7

*Fitzgerald Pub. Co., Inc. v. Baylor Pub. Co., Inc.*, 807 F.2d 1110 (2d Cir. 1986)......................19

*Graham v. James*, 144 F.3d 229 (2d Cir. 1998) ...........................................................................15

*Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539 (1985) ...............................19, 21

*Homkow v. Musika Records, Inc.*, 2008 WL 508597 (S.D.N.Y. Feb. 26, 2008)..........................21

*Jobete Music Co. v. Johnson Commc'ns, Inc.*, 285 F. Supp. 2d 1077 (S.D. Ohio 2003) .............23

*Kwan v. Schlein*, 634 F.3d 224 (2d Cir. 2011)........................................................................11, 12

*Latin Am. Music Co., Inc. v. Archdiocese of San Juan of the Roman Catholic and
  Apostolic Church*, 2005 WL 1847013 (D.P.R. Aug. 2, 2005), *aff'd*, 499 F.3d 32 (1st
  Cir. 2007) .....................................................................................................................................1

*Latin Am. Music Co., Inc. v. Cardenas, Fernandez & Assoc., Inc.*, 60 F. App'x 843 (1st
  Cir. 2003) ...................................................................................................................1, 13, 14, 15

*Latin Am. Music Co., Inc. v. Media Power Group, Inc.*, 705 F.3d 34 (1st Cir. 2013)....................1

*Latin Am. Music Co. Inc. v. Spanish Broadcasting Systems, Inc.*
866 F. Supp. 780 (1994) ................................................................20, 21

*Latin Am. Music Co. v. The Archdiocese of San Juan*, 499 F.3d 32 (1st Cir. 2007) ..............10, 11

*Latin Am. Music Co. v. Cardenas Fernandez & Associates, Inc.*, No. 00-CV-1215, ECF
No. 69 (D.P.R. March 18, 2002), *aff'd*, 60 F. App'x 843 (1st Cir. 2003) ..............................13

*Latin Am. Music Co. v. Cardenas Fernandez & Associates, Inc.*, No. 00-CV-1215, ECF
No. 90 (D.P.R. June 27, 2002), *aff'd*, 60 F. App'x 843 (1st Cir. 2003) ..................................13

*Lottie Joplin Thomas Trust v. Crown Publishers*, 592, F.2d 651, 657 (2d Cir. 1997) .................21

*Mason v. Jamie Music Pub. Co.*, 658 F. Supp. 2d 571 (S.D.N.Y. 2009) ......................................11

*Oboler v. Goldin*, 714 F.2d 211 (2d Cir. 1983) ...........................................................................20

*On Davis v. The Gap, Inc.*, 246 F.3d 152 (2d Cir. 2001)...................................................18, 21, 22

*Ortiz v. Guitian Bros. Music Inc.*, No. 07 CIV. 3897, 2008 WL 4449314 (S.D.N.Y. Sept.
29, 2008) ...................................................................................................................................11

*Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962 ............................................................16

*Saenger Org., Inc. v. Nationwide Ins. Licensing Associates, Inc.*, 119 F.3d 55 (1st Cir.
1997) ........................................................................................................................................11

*S.E.C. v. Batterman*, No. 00 Civ. 4835 (LAP), 2002 WL 31190171, (S.D.N.Y. Sept. 30,
2002) ........................................................................................................................................18

*Semerdjian v. McDougal Littell*, 641 F. Supp.2d 233 (S.D.N.Y. 2009)....................................7, 18

*Stevens Linen Assocs., Inc. v. Mastercraft Corp.*, 656 F.2d 11 (2d Cir. 1981).............................19

*Twin Peaks Productions, Inc. v. Publ'ns, Int'l, Ltd.*, 996 F.2d 1366 (2d Cir. 1993)....................20

*Virga v. Big Apple Const. & Restoration Inc.*, 590 F.Supp.2d 467 (S.D.N.Y. 2008)...................18

## STATUTES AND RULES

17 U.S.C. §§ 101 - 810 ................................................................................................................20

17 U.S.C. § 113..........................................................................................................................11

17 U.S.C. § 201(a) ......................................................................................................................8

17 U.S.C. § 201(d) ......................................................................................................................8

17 U.S.C. § 205(d) ..............................................................................................................10, 11

17 U.S.C. § 209 ................................................................................................................9, 10

17 U.S.C. § 301(a) ..................................................................................................................8

17 U.S.C. § 410(c) ............................................................................................................9, 10

17 U.S.C. § 504(b) ..........................................................................................................18, 19

17 U.S.C. § 504(c) ................................................................................................................19

17 U.S.C. § 504(c)(1) ............................................................................................................20

17 U.S.C. § 504(c)(2) ......................................................................................................23, 24

17 U.S.C. § 507(b) ................................................................................................................11

Fed. R. Civ. P. 36 ..................................................................................................................18

Fed. R. Civ. P 36(a) ..............................................................................................................18

Fed. R. Civ. P. 56 ........................................................................................................1, 7, 18

Fed. R. Civ. P. 56(a) ..............................................................................................................6

## LEGISLATIVE AND ADMINISTRATIVE MATERIALS

1976 U.S. Code Cong. and Admin. News at 5659 ................................................................20

H.R. Rep. No. 1476, 94th Cong., 2d Sess. (1976) .........................................................20, 23

## OTHER AUTHORITIES

*Catalogue of Copyright Entries: Third Series, vol. 24, pt. 5, Number 1, § 1, January-June 1970*, published by the Copyright Office in 1971 ....................................................................3

*Catalogue of Copyright Entries: Third Series, vol. 25, pt. 5, Number 1, § 1, January-June 1971*, published by the Copyright Office in 1972 ....................................................................3

*Catalogue of Copyright Entries: Third Series, vol. 26, pt. 5, Number 1, § 1, January-June 1972*, published by the Copyright Office in 1973 ....................................................................3

*Catalogue of Copyright Entries: Third Series, vol. 27, pt. 5, Number 2, § 2, July-December 1973*, published by the Copyright Office in 1975 .............................................4, 5

*Catalogue of Copyright Entries: Third Series, vol. 29, pt. 5, Number 1, § 2, January-June 1975*, published by the Copyright Office in 1976 ....................................................................4

Defendant Spanish Broadcasting System, Inc. ("SBS") respectfully submits this memorandum of law in support of its motion for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, as well as this Court's March 12, 2016 Order.

## PRELIMINARY STATEMENT

Plaintiffs are infamous for filing vexatious copyright infringement actions based upon fabricated claims of ownership.  *See, e.g.*:

> *Latin Am. Music Co., Inc. v. Cardenas, Fernandez & Assoc., Inc.*, 60 F. App'x 843 (1st Cir. 2003) (affirming summary judgment dismissing Plaintiffs' copyright infringement claims for failure to establish that they had any enforceable rights to the songs at issue);

> *Latin Am. Music Co., Inc. v. Media Power Group, Inc.*, 705 F.3d 34 (1st Cir. 2013) (affirming dismissal of Plaintiffs' copyright infringement claims in which: (a) the court awarded summary judgment on 12 of the 21 songs at issue and (b) the jury determined that Plaintiffs failed to prove ownership of copyrights in the remaining nine songs); and

> *Latin Am. Music Co., Inc. v. Archdiocese of San Juan of the Roman Catholic and Apostolic Church*, 2005 WL 1847013 at *4 (D.P.R. Aug. 2, 2005) (dismissing with prejudice Plaintiffs' claims of infringement of hundreds of musical works that they did not own yet vexatiously litigated: "[t]his sort of meretricious dawdling, uninterruptedly extending for the duration of these cases, can be tolerated no further"), *aff'd*, 499 F.3d 32 (1st Cir. 2007).

This action is no different.  Plaintiffs claim infringement of musical works that they do not own, that SBS properly licensed, and that SBS did not actually play.  Moreover, Plaintiffs persist in their demand for actual damages despite producing zero evidence of actual harm and despite irreversibly electing statutory damages.  In the absence of a genuine dispute about the non-infringement of specific musical works, and in the absence of proof of actual damages, partial summary judgment should be granted.

## STATEMENT OF FACTS[1]

### A.      The Seven Works at Issue from the Fania Catalogue.

Seven of the allegedly infringed musical works in this case—*Abuelita*, *Aguanile*, *Ausencia*, *Mi Gente*, *Soy Sensacional*, *Arroz con Bacalao*, and *Mandecadito* (the "BMI/Fania Works")—are part of a legendary catalogue of Latin hits known as the Fania Catalogue.  SF at ¶ 6.   The original owner of the Catalogue was Fania Publishing, Inc. ("Fania" or "Fania Publishing"), and the current owner is Código Music, LLC ("Código" or "Código Music") (formerly SE Music Acquisitions, LLC).  SF at ¶ 44.  The chain of title from Fania Publishing to Código Music is as follows:

- Fania Publishing obtained the rights to the BMI/Fania works directly from the songwriters, and registered each of the works with the Copyright Office.  SF at ¶ 45.

- On July 1, 1985, Fania Publishing transferred ownership of the catalogue to FAF Publishing, a Division of F Publ., Inc. ("FAF Publishing I").  SF at ¶ 46.

- On July 1, 1992, FAF Publishing I transferred ownership of the catalogue to Sonido Inc. d/b/a FAF Publishing ("FAF Publishing II").  SF at ¶ 47.

- On July 22, 2005, FAF Publishing II transferred ownership of the catalogue to Emusica Publishing LLC d/b/a Fania Music.  SF at ¶ 48.

- On April 23, 2009, Código Music acquired the catalogue by acquiring the assets of Emusica Publishing, LLC d/b/a Fania Music.  SF at ¶ 49.

Each of the BMI/Fania Works is part of the Fania Catalogue, as set forth below.

***Abuelita***:  Fania Publishing registered *Abuelita* with the Copyright Office in 1971.  The registration certificate lists "Fania Publishing Co., Inc." as the copyright claimant and "Willie

---

1.  The parties and the basic facts underlying this dispute were described in the Court's previous summary judgment order.  [ECF No. 78].

Colon" and "Hector Perez 'Lavoe'" as co-authors.[2]  The *Catalogue of Copyright Entries: Third Series, Volume 25, Part 5, Number 1, Section 1, January-June 1971*, published by the Copyright Office in 1972, contains the copyright registration entry for *Abuelita*.  Fania Publishing also had songwriter agreements with Mr. Colon and Mr. Lavoe.[3]  SF at ¶¶ 8-11.

*Aguanile*:  Fania Publishing registered *Aguanile* with the Copyright Office in 1972.  The registration certificate lists "Fania Publishing Co., Inc." as the copyright claimant and "Willie Colon" and "Hector Perez a/k/a Hector Lavoe" as co-authors.  The *Catalogue of Copyright Entries: Third Series, Volume 26, Part 5, Number 1, Section 1, January-June 1972*, published by the Copyright Office in 1973, contains the copyright registration entry for *Aguanile*.  SF at ¶¶ 13-15.

*Ausencia*:  Fania Publishing registered *Ausencia* with the Copyright Office in 1970.  The registration certificate lists "Fania Publishing Co., Inc." as the copyright claimant and "Willie Colon" and "Hector Lavoe Perez" as co-authors.  The *Catalogue of Copyright Entries: Third Series, Volume 24, Part 5, Number 1, Section 1, January-June 1970*, published by the Copyright Office in 1971, contains the copyright registration entry for *Ausencia*.  SF at ¶¶ 17-19.

*Mi Gente*:  Fania Publishing registered *Mi Gente* with the Copyright Office in 1975.  The Fania Registration Certificate for *Mi Gente* lists "Fania Publishing Co., Inc." as the copyright

---

2.  Plaintiffs do not dispute that Hector Lavoe wrote or co-wrote *Abuelita*, *Aguanile*, and *Ausencia*.  *See* SF at ¶ 62.  Instead, Plaintiffs claim that they own the rights to these works because of an agreement with one of Lavoe's heirs in 1999 and a subsequent recordation and registration.  *See* SF at ¶ 61.  As discussed below, Plaintiffs' claims based upon Lavoe's heir are incorrect.  *See infra* Section II.

3.  The agreements, which were entered into in 1972 (Lavoe) and 1974 (Colon), grant Fania Publishing ownership of works authored by Mr. Lavoe and Mr. Colon during or prior to the term of the agreement (provided they were not previously transferred to anyone else).  *See* SF at ¶ 11.

claimant and "Johnny Pacheco" as the author.[4]   The *Catalogue of Copyright Entries: Third Series, Volume 29, Part 5, Number 1, Section 2, January-June 1975*, published by the Copyright Office in 1976, contains the copyright registration entry for *Mi Gente*.   Fania and subsequent owners of the Catalogue entered into songwriter agreements with Mr. Pacheco over the years. SF at ¶¶ 21-24.

**Soy Sensacional**:  Fania Publishing registered *Soy Sensacional* with the Copyright Office in 1973.  The registration certificate lists "Fania Records, Inc."[5] as the copyright claimant and "Larry Harlow a/k/a Larry Kahn" and "Jenaro Alvarez a/k/a Heny Alvarez" as co-authors.[6]  The *Catalogue of Copyright Entries: Third Series, Volume 27, Part 5, Number 2, Section 2, July-December 1973*, published by the Copyright Office in 1975, contains the copyright registration

---

4.  Plaintiffs appear to allege that *Mi Gente* was written by Hector Lavoe—not Johnny Pacheco—and that Plaintiffs obtained the rights to *Mi Gente* as the result of the same assignment from Jose A. Perez, one of Lavoe's heirs, discussed above.  *See* SF at ¶¶ 61, 63. It is not clear on what basis Plaintiffs' assertion about Mr. Lavoe's authorship rests; even the agreements Plaintiffs recorded with the Copyright Office on November 26, 1999 include Johnny Pacheco's name next to *Mi Gente*, *see* SF at ¶ 64 [LAM100205], and Mr. Lavoe's 1993 New York Times obituary and a 2006 New York Times article about the Fania Catalogue both identify Mr. Pacheco as the author.  *See* SF at ¶¶ 25-26.  Also, while Plaintiffs have filed an application to register *Mi Gente*, they admit that the application remains pending.  SF at ¶ 65.  In any event, as described below, Plaintiffs did not receive any rights to Lavoe's works from Lavoe's heir, so this purported dispute does not affect Defendant's right to summary judgment with respect to *Mi Gente*.

5.  The references to Fania Records rather than its related company Fania Publishing here and in the certificates for *Mantecadito* and *Hommy* were likely clerical errors.  Fania Publishing is referenced in other places in the certificates.  *See* SF at ¶¶ 29-30.

6.  Plaintiffs apparently dispute that Larry Harlow Kahn co-wrote the work, as they registered the work many years later in 2003 listing only Jenaro Alvarez as the author.  SF at ¶ 66.  The basis of Plaintiffs' contention is unclear; two 2014 New York Times articles identify both Alvarez and Harlow Kahn as co-authors of *Hommy*, the Latin opera that includes *Soy Sensacional*.  *See* SF at ¶ 37.  In any event, as described below Fania's prior registration of the work invalidates Plaintiffs' subsequent alleged acquisition of the rights, so this purported dispute does not affect Defendant's right to summary judgment.

entry for *Soy Sensacional*.  Fania Publishing has a songwriter agreement with Mr. Harlow Kahn.  SF at ¶¶ 31-32, 35-36.

    ***Mantecadito***:  Fania Publishing registered *Mantecadito* with the Copyright Office in 1973.  The registration certificate lists "Fania Records, Inc." as the copyright claimant and "Larry Kahn a/k/a Larry Harlow" and "Jenaro Alvarez a/k/a Heny Alvarez" as co-authors.  The *Catalogue of Copyright Entries: Third Series, Volume 27, Part 5, Number 2, Section 2, July-December 1973*, published by the Copyright Office in 1975, contains the copyright registration entry for *Mantecadito*.[7]  SF at ¶¶ 33-35.

    ***Arroz con Bacalao***:  Fania Publishing registered *Arroz con Bacalao* in 1979.  The registration certificate lists "Fania Publishing Co., Inc." as the copyright claimant and "Johnny Alvarez" as the author.[8]  The *Copyright Catalogue (1978-Present)* contains the copyright registration entry for *Arroz con Bacalao*.  Fania Publishing has a songwriter agreement with Johnny Alvarez, pursuant to which Johnny Alvarez conveyed the rights to *Arroz con Bacalao*.  SF at ¶¶ 39-41, 42-43.

## B.   BMI's Longstanding License to the Seven Works at Issue From the Fania Catalog.

    BMI[9] has had the right to license the performing rights in the Fania Catalogue for decades, including at the times of the alleged infringements in this case.[10]

---

7.  Plaintiffs apparently dispute that Larry Harlow Kahn co-wrote this work as well.  Again, Plaintiffs have produced no evidence to support their contention.  *See supra* n. 6.

8.  Plaintiffs appear to claim that Jenaro (Heny) Alvarez (Domenech)—not Johnny Alvarez—authored *Arroz con Bacalao*.  *See* SF at ¶ 67.  Fania's registration of the work invalidates the subsequent purported transfer to Plaintiffs and entitles Defendant to summary judgment on this work.  *See* SF at ¶ 39; *see also infra* Section II.A.1 & 2.

9.  BMI is a performing rights organization as described in the Court's previous summary judgment order.  [ECF No. 78].

Fania Publishing affiliated with BMI in 1976.  SF at ¶ 50.  In 1986, when the rights to the Fania Catalogue were conveyed to FAF Publishing I, FAF Publishing I entered into its own affiliation agreement with BMI that superseded the 1976 agreement between BMI and Fania Publishing.  SF at ¶ 51.  The 1986 affiliation agreement with BMI and FAF Publishing I provided that FAF Publishing I.

> hereby sells, assigns and transfers to BMI, its successors or assigns, for the term of this agreement . . .  all the rights which [FAF Publishing I] owns or acquires publicly to perform, and to license others to perform, for profit or otherwise, anywhere in the world, any part or all of the works, such rights being granted exclusively to BMI except to the extent of any prior grant listed on clearance sheets or cue sheets submitted pursuant to subparagraph A of paragraph TENTH with respect to works heretofore acquired by [FAF Publishing I].  SF at ¶ 52.

The rights and obligations under this agreement were subsequently transferred by FAF Publishing I, and they passed along with the chain of title to the Fania Catalogue.  *See* SF at ¶¶ 52-53.  BMI also has affiliation agreements with the songwriters of six of the seven BMI/Fania Works (all except *Mi Gente*, whose author, Mr. Pacheco, is an ASCAP affiliate).  *See* SF at ¶ 57.

### C.    SBS's License From BMI.

This Court has previously determined that "Defendant received licenses from BMI and ASCAP beginning in 2010 and continuing through the relevant period."  (Memorandum and Order, No. 13-cv-1526 (RJS), ECF No. 78 (Sept. 23, 2015) at 6.)

## ARGUMENT

### I.    Summary Judgment Standard.

Summary judgment should be granted where "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

---

10. BMI has collected royalties and made distributions to Fania and its successors and each of the BMI-affiliated songwriters for performances of each of the BMI/Fania Works.  *See* SF at ¶ 56.

Civ. P. 56(a); *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  No dispute as to a fact is genuine unless "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and no fact is material unless its existence "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment on the issue of damages in copyright cases also comports "with the basic tenets of our Rule 56 jurisprudence," as it both narrows the scope of issues at trial and ensures that a finding of liability does not result in an unfounded windfall.  *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 520 (4th Cir. 2003); *Semerdjian v. McDougal Littell*, 641 F. Supp.2d 233, 246 (S.D.N.Y. 2009).

**II.    Plaintiffs Do Not Own Copyrights in the BMI/Fania Works**

    **A.    Fania's Prior Registrations Trump Plaintiffs' Claims of Ownership.**

To succeed on a claim of copyright infringement, Plaintiffs must prove their ownership of the copyright that was allegedly infringed.  *See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).  Here, Plaintiffs' claims with regard to the BMI/Fania Works fail because their ownership claims are invalid as a matter of law:[11]  Fania established its ownership rights when it registered the BMI/Fania Works with the Copyright Office.  Thus, the later purported acquisitions of the rights by Plaintiffs fail, because Plaintiffs were on notice of the prior ownership claim.  Moreover, to the extent Plaintiffs contest the actual authorship of the works, those claims have been barred by the applicable statute of limitations for decades.  Fania's ownership claims prevail over Plaintiffs', so Plaintiffs cannot sue for infringement.

---

11. As the Court noted in its prior summary judgment decision, it is not all clear that ACEMLA even purports to have an exclusive ownership interest in any of the works.  However, for purpose of the motion only, Defendant will not distinguish between the Plaintiffs.

1.       **The BMI/Fania Works Were Originally Registered by Fania Publishing and Are Part of the Fania Catalogue.**

Ownership of the copyrights in the BMI/Fania Works is governed by the 1909 Copyright Act (the "1909 Act") and the 1976 Copyright Act (the "1976 Act").  Works that were created and became subject to statutory copyright protection before January 1, 1978 are governed by the 1909 Act, whereas works created on or after January 1, 1978 are governed by the 1976 Act.  17 U.S.C. § 301(a).

Under the 1909 Act, pre-1978 works could gain statutory copyright protection either through publication of the work with proper copyright notice or through registration of the work. 1 Nimmer on Copyright § 5.01.  Where an assignee obtained an assignment of the common law copyright in an unpublished work from a composer and, before January 1, 1978, registered it in its name as claimant or published it with notice in its name as claimant, the assignee automatically became the initial owner of the statutory copyright.  *See* 2 Nimmer on Copyright § 7.16[A][2][b] (publishing a pre-1978 work with notice was sufficient to obtain statutory copyright under the 1909 Act but Section 13 of the 1909 Act required that the work be "promptly" registered with the Copyright Office once it had been published); 2 Nimmer on Copyright § 7.16[A][2][c][i].  Under the 1976 Act, statutory protection in post-1978 works vests initially and automatically in the author(s) of the works, 17 U.S.C. § 201(a), and can be freely transferred by the author(s).  17 U.S.C. § 201(d).  Although registration is not required to obtain statutory copyright protection, "it is still useful as a means of giving actual notice of copyright to those who search the Copyright Office records."  2 Nimmer on Copyright § 7.16[H].[12]

---

12. Additionally, a work must be registered before its owner can sue for infringement, obtain statutory damages, or receive attorney's fees.  *See* 2 Nimmer on Copyright § 7.16[B]-[D].

Six of the BMI/Fania Works were created and published or registered before January 1, 1978 (*Abuelita*, *Ausencia*, *Aguanile*, *Soy Sensacional*, *Mandecadito*, and *Mi Gente*).  *See* SF at ¶¶ 8, 13, 17, 21, 31, 33.  Copyright protection in those works is therefore governed by the 1909 Act.  Fania Publishing obtained the common law rights to these works directly from the authors in the 1970s and, upon registering the works with the Copyright Office (or publishing them with notice), Fania Publishing became the initial owner of the statutory copyrights in the works.

One of the BMI/Fania Works (*Arroz con Bacalao*) was created and registered after January 1, 1978, so that work is governed by the 1976 Act.  *See* SF at ¶ 39.  Accordingly, statutory copyright protection for *Arroz con Bacalao* vested initially and automatically in the author, Johnny Alvarez[13], who subsequently assigned all rights in the work to Fania Publishing, which was the first to register the work with the Copyright Office.  *See* SF at ¶ 43.

### 2. The Fania Registration Certificates Create a Statutory Presumption that Fania Owned the Copyrights in the BMI/Fania Works.

The Fania registration certificates, serve as *prima facie* evidence that (a) Fania Publishing owned the copyrights at the time the works were registered, and (b) the works were written by the author(s) listed on the certificates.  *See* 17 U.S.C. § 410(c) (1976 Act); 17 U.S.C. § 209 (1909 Act, as amended).  Under the 1976 Act, a "certificate of a registration made before or within five years after first publication of the work" constitutes "prima facie evidence of the validity of the copyright and of the facts stated in the certificate."  17 U.S.C. § 410(c).  A certificate of registration obtained under the 1909 act creates the same presumption regardless of how long

---

13. Plaintiffs assert that *Arroz con Bacalao* was written by Jenaro (Heny) Alvarez (Domenech) although, as discussed above, the basis for that assertion is unclear and Plaintiffs have produced no evidence other than an invalid registration certificate to support that contention. In any event, as discussed below, any claim that the work was authored by anyone other than Johnny Alvarez is barred by the statute of limitations.  *See infra* Section II.A.3.b.

after publication the work was registered.  *See Estate of Burne Hogarth v. Edgar Rice Burroughs, Inc.*, 342 F.3d 149, 165 (2d Cir. 2003).

The Fania registration certificates for the six pre-1978 BMI/Fania Works satisfy the requirements of 17 U.S.C. § 209 and the Fania registration certificate for the only post-1978 BMI/Fania Work at issue satisfies the requirements of 17 U.S.C. § 410(c).[14]  SF at ¶¶ 10, 19, 23, 35, 42.   Therefore, the Fania registration certificates create a statutory presumption that the works are part of the Fania Catalogue and written by the authors listed on the Fania Registration Certificates.  *See id.*

### 3.   Plaintiffs Have Failed to Rebut the Statutory Presumption that Fania Publishing Owned the Copyrights in the BMI/Fania Works.

Plaintiffs have come forth with no evidence to rebut the presumptions created by the Fania registration certificates.   Although Plaintiffs have proffered later-in-time copyright registration certificates and/or recordations of purported transfer agreements for the BMI/Fania Works, SF at ¶ 59, those documents cannot prevail over the Fania registration certificates as a matter of law.  *See* 17 U.S.C. § 205(d); *see also Latin Am. Music Co. v. The Archdiocese of San Juan*, 499 F.3d 32, 40-41, 43 (1st Cir. 2007).

### a.   Plaintiffs Were on Constructive Notice of Fania's Ownership.

Where there are conflicting transfers of rights, a subsequent transferee can prevail over a prior transferee *only* if the subsequent transferee accepted the rights "in good faith . . . and without notice of the prior transfer."   17 U.S.C.A. § 205(d) (emphasis added).   The Fania registration certificates put Plaintiffs on constructive notice that Fania Publishing owned all of the BMI/Fania Works.  *Archdiocese of San Juan*, 499 F.3d at 40 ("A copyright registration

---

14. Fania's registration of the works is also corroborated by the corresponding entries in the contemporaneous Catalogues of Copyright Entries.  *See* SF at ¶¶ 10, 19, 23, 35, 42.

69503814_2

certificate in the Copyright Office provides constructive notice as to the ownership of the copyright and the facts stated in the registration certificate.").   Therefore, Plaintiffs' purported receipts of rights were not "in good faith . . . and without notice" under Section 205(d).   *See Archdiocese of San Juan*, 499 F.3d at 40-41, 43; *Saenger Org., Inc. v. Nationwide Ins. Licensing Associates, Inc.*, 119 F.3d 55, 66 (1st Cir. 1997); *Mason v. Jamie Music Pub. Co.*, 658 F. Supp. 2d 571, 588 (S.D.N.Y. 2009).   Accordingly, Fania's registration certificates trump any subsequent transfers to Plaintiffs.

> **b.     Plaintiffs' Purported Disputes About Authorship Are Barred by the Statute of Limitations.**

Plaintiffs cannot get around this dispositive fact by claiming to dispute the authorship of the works.[15]   Any claims that the BMI/Fania works were authored by individuals different than those listed in the Fania registration certificates are barred by the Copyright Act's three-year statute of limitations.   *See* 17 U.S.C. § 507(b) (1976 Act); 17 U.S.C. § 113 (1909 Act, as amended in 1957 by P.L. 85-313).   Under both the 1909 and 1976 Copyright Acts, failure to sue within three years from accrual of an authorship claim requires dismissal of that claim and any rights or remedies that would flow from that claim.   *Id.*; *see also Ortiz v. Guitian Bros. Music Inc.*, No. 07 CIV. 3897, 2008 WL 4449314, at *3 (S.D.N.Y. Sept. 29, 2008).   An authorship or ownership claim accrues "when a reasonably diligent plaintiff would have been put on inquiry as to the existence of a right. . . . [A]ny number of events can trigger the accrual of an ownership claim, including an express assertion of sole authorship or ownership."   *Kwan v. Schlein*, 634 F.3d 224, 228 (2d Cir. 2011) (citations and quotations omitted).   Where the ownership claim is time barred, any attendant infringement claims that rest on that ownership claim must also fail. *See Kwan*, 634 F.3d at 230.

---

15. As noted above, Plaintiffs do not dispute that Lavoe wrote *Abuelita*, *Aguanile*, and *Ausencia*.

Plaintiffs' claims of conflicting authorship with respect to the BMI/Fania Works accrued and expired decades ago.  First, the BMI/Fania Works were first registered and published in the 1970s.  *See* SF at ¶¶ 8, 13, 21, 28, 31, 33, 39.  The Fania registration certificates and corresponding pages of the *Catalogue of Copyright Entries*, which were all published in the 1970s, put the world on notice of the authorship claims they contain, and any claim of purportedly different ownership accrued at the time of registration.  *See Kwan*, 634 F.3d at 230. Second, Plaintiffs have put forth no evidence that their alleged authors ever received any royalties for the works—another independent trigger for the accrual of an authorship claim.  *See Carell v. Shubert Org., Inc.*, 104 F. Supp. 2d 236, 249 (S.D.N.Y. 2000) ("non-payment of royalties should have put [the claimant] on notice" that she was not considered an author). Third, numerous public sources proclaimed that the BMI/Fania Works were authored by the individuals listed in the Fania registration certificates.  *See, e.g.*, SF at ¶¶ 25, 26, 37. Accordingly, Plaintiffs cannot now claim that the works were actually authored by people different than those listed in the Fania registration certificates.  *See Kwan*, 634 F.3d at 230.

Thus, Plaintiffs have failed to rebut the prima facie evidence of ownership established by the Fania registration certificates, and therefore cannot prove the essential element of copyright ownership.  Accordingly, their infringement claims as to BMI/Fania Works must fail.

**B.      Plaintiffs Also Cannot Establish Ownership of *Abuelita*, *Aguanile*, *Ausencia*, or *Mi Gente* Because, As Other Courts Have Held, They Did Not Acquire Any Rights From Hector Lavoe's Heir.**

Plaintiffs' alleged ownership of rights to *Abuelita*, *Aguanile*, *Ausencia*, and *Mi Gente* stems from a purported agreement they entered into with one of Hector Lavoe's heirs in 1999, decades after the songs had been published and registered.  *See* SF at ¶ 59.  Plaintiffs have tried this tactic in litigation regarding other Hector Lavoe works in the past, and lost.  The result should be the same here.

1.      **Collateral Estoppel Bars Plaintiffs' Claims That They Acquired Rights to Lavoe's Works From Lavoe's Heir.**

Collateral estoppel bars "a party from relitigating in a subsequent proceeding an issue of law or fact that has already been decided in a prior proceeding." *Boguslavsky v. Kaplan*, 159 F.3d 715, 719-20 (2d Cir. 1998).   In 2000, LAMCO filed suit against various defendants involved in producing a play called "Quien Mató a Hector Lavoe?" which included seven of Lavoe's musical works. *Latin Am. Music Co. v. Cardenas Fernandez & Associates, Inc.*, No. 00-CV-1215, ECF No. 69 (D.P.R. March 18, 2002) at 2-3, *aff'd*, 60 F. App'x 843 (1st Cir. 2003).[16]  As it has in this lawsuit, LAMCO alleged it owned the copyrights in the works because one of Lavoe's heirs, Jose A. Perez, had registered them and then assigned them to LAMCO. *Id.*

On March 18, 2002, the district granted the defendants' motion for summary judgment and concluded that LAMCO did not control the copyrights at issue. *Id.* at 14-15.  The court concluded that Lavoe, along with his co-author in some of the works, Willie Colon, had assigned the rights to the works in question directly to Fania Publishing in the 1970s and 1980s, and that those pre-existing assignments to Fania were still in effect. *Id.* at 7, 11.  The court held that Lavoe's assignments to Fania meant that Fania—not LAMCO—retained the exclusive rights to the works in question, that Lavoe's estate did not contain any rights to the works, and that Lavoe's heir therefore could not have transferred the rights to LAMCO. *Id.* at 7-12.  The district court also denied a subsequent motion for reconsideration by LAMCO. *Latin Am. Music Co. v. Cardenas Fernandez & Associates, Inc.*, No. 00-CV-1215, ECF No. 90 (D.P.R. June 27, 2002), *aff'd*, 60 F. App'x 843 (1st Cir. 2003).  The First Circuit affirmed the district court's rulings. *Cardenas Fernandez*, 60 F. App'x at 843.

---

16. The Lavoe works at issue in *Cardenas Fernandez* were different from the Lavoe works at issue here, but the purported agreement with Lavoe's heir that Plaintiffs rely upon is the same.

The situation in this case is no different.  All of the works that Plaintiffs claim to own based on an alleged transfer from Lavoe's heir were transferred to and registered by Fania Publishing more than a decade earlier.  SF at ¶¶ 8, 13, 17, 21, 28, 31, 33.  The songwriter agreement between Fania Publishing and Lavoe incorporated standard songwriter agreements that contained the standard mutual written termination requirement referenced by the courts in *Cardenas Fernandez*.[17]  SF at ¶¶ 68-69.  Plaintiffs have produced no evidence that the assignments to Fania were ever terminated.  Thus, Lavoe's estate did not contain any of the copyrights at issue, and Plaintiffs should be estopped from arguing yet again that they obtained rights to Lavoe's works from Lavoe's heir.[18]

### 2. The Purported Assignment From Perez Is Also Invalid Because It Was Not Consented to by Lavoe's Other Surviving Heirs.

Even if the rights to *Abuelita*, *Aguanile*, *Ausencia*, or *Mi Gente* were part of the Lavoe estate (which they were not), their purported assignment from Lavoe's heir to Plaintiffs, without the consent of Lavoe's two other heirs, would still have been invalid as a matter of law.[19]

It is black letter law that where more than one person hold joint undivided interests in a copyright, one of the owners cannot transfer the copyright or grant an exclusive license without

---

17. Although the documents obtained from the current owner of the Fania Catalogue do not include individual songwriter agreements for each of the Lavoe works at issue, the master agreement makes clear the parties' intent that the terms of that songwriter agreement would govern with respect to each of Lavoe's works.

18. Perez himself made clear that it was not his intent to transfer rights to LAMCO to the detriment of the owners of the Fania Catalogue when he signed a settlement agreement to resolve a separate action in New York State in 2002 in which he represented that "he never intended to assign, license, or transfer any rights to [LAMCO] in derogation of Sonido's rights" and agreed to "fully cooperate with and assist Sonido in protecting Sonido's rights to the recordings and compositions of Lavoe . . . ."  *See* SF at ¶ 73.

19. The District of Puerto Rico addressed this issue in *Cardenas Fernandez* and reached the same conclusion.  No. 00-CV-1215, ECF No. 69 (D.P.R. March 18, 2002) at 12.

the consent of the other owners.  1 Nimmer on Copyright § 6.11 ("one joint owner does not have the power to transfer the interest of another joint owner without the latter's consent").  At the time that Perez purported to transfer rights to LAMCO in 1999, Lavoe had two other surviving heirs—a wife (Nilda Perez Roman), and a daughter (Leslie F. Perez Roman).  *Cardenas Fernandez*, No. 00-CV-1215, ECF No. 90 (D.P.R. June 27, 2002) at 12.  Neither of these heirs consented to the purported transfer, making it invalid as a matter of law.

## III.   <u>SBS's License to the BMI/Fania Works Defeats Plaintiffs' Infringement Claims.</u>

Plaintiffs' infringement claims with respect to the BMI/Fania Works fail for the additional related reason that Defendant had a valid BMI license to perform the works during the relevant period.   This Court has already ruled on the validity of SBS's BMI license.  (Memorandum and Order, No. 13-cv-1526 (RJS), ECF No. 78 (Sept. 23, 2015) at 6.   The undisputed facts show that the BMI/Fania works were and are in the BMI repertoire, and SBS therefore did not infringe because it had a valid license.  *See Associated Press v. Meltwater U.S. Holdings, Inc.*, 931 F. Supp. 2d 537, 561 (S.D.N.Y. 2013) ("It is a defense to copyright infringement that the alleged infringer possessed a license to use the copyrighted work."); *see also Graham v. James*, 144 F.3d 229, 236 (2d Cir. 1998); 4 Nimmer on Copyright § 13.04.

First, there is no question that the exclusive copyrights to the Fania Catalogue are currently owned by Código Music, formerly known as SE Music Acquisitions, LLC.  SF at ¶ 44.  Código Music can trace the chain of title to the Fania Catalogue back to the original owner, Fania Publishing, which had acquired rights to the works in its catalogue directly from the authors.

Second, there is no question that Código Music, Inc. and the previous owners of the Fania Catalogue have affiliated with BMI for decades and thereby granted BMI the right to license the performing rights in the BMI/Fania Works.  The relevant affiliation agreement is from 1986 (it

superseded an earlier agreement) and its rights and obligations passed along with the Fania Catalogue to Emusica, and then to Código Music.  *See* SF at ¶ 51.  Código Music was a BMI affiliate at the time of the alleged infringements in this case, and BMI therefore had the right to license the BMI/Fania Works at that time.

Third, there is no question that the BMI/Fania Works are part of the Fania Catalogue.  As set forth above, Fania obtained the rights to the works from the songwriters and then registered those copyrights with the Copyright Office.  These prior registrations defeat all of the later transfers upon which Plaintiffs rely, and any claims by Plaintiffs that the works were in fact authored by different people are barred by the statute of limitations.  *See supra* n.13.  It is therefore undisputed that BMI's right to license the Fania Catalogue included the right to license the BMI/Fania Works.

Thus, BMI has the right to license the performing rights to the BMI/Fania works, and SBS had a valid BMI license at the time of the alleged infringement.  SF at ¶ 58.  This is a complete defense to Plaintiffs' infringement claims with respect to the BMI/Fania Works, and it is another reason that Defendant is entitled to partial summary judgment.[20]  *See* 4 Nimmer on Copyright § 13.04.

## IV.    There Is No Evidence of Infringement.

Plaintiffs bear the burden of establishing that the allegedly infringed works were actually played by Defendants.  *See Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962, 1976 ("a

---

20. For the same reasons Plaintiffs cannot prevail on their claim of ownership of (or the exclusive right to license) the BMI/Fania Works, they similarly cannot demonstrate that they have those rights with respect to the two ASCAP songs, *Aniversario* and *Toro Mata*.  SBS respectfully refers the Court to the facts and arguments set forth in its previously submitted motion for summary judgment, which demonstrate that ASCAP had the right to—and did— license SBS's performances (if any) of those two songs on the dates alleged by Plaintiffs. [*See* ECF Nos. 60, 61, 63, 72 and 73].

copyright plaintiff bears the burden of proving infringement").   Discovery has closed without any evidence that seven of the thirteen works were ever played.[21]

Throughout discovery, Plaintiffs repeatedly alleged possession of but failed to produce evidence of unauthorized broadcasts.  In both their Initial Disclosures and their Corrected Initial Disclosures, Plaintiffs represented that Raul Bernard, their President and Chief Executive Officer "possesses recordings of actual broadcasts of the songs by SBS and/or its stations upon which the [sic] this copyright infringement action is based."  *See* SF at ¶ 74.  In these same documents Plaintiff represented that they possessed: "Audio recordings of unauthorized broadcasts by defendants and/or their stations of the works specified in the Third Amended Complaint."  *See* SF at ¶ 75.[22]

Despite requests to produce all evidence of the "purported instances of broadcasting, playing and/or streaming the Musical Works . . . including but not limited all logs, notes or other materials that you claim show that the Musical Works were broadcast, played or streamed at the times you allege," such demanded recordings were ***never*** produced.  Plaintiffs similarly failed to produce ***any*** other evidence that the seven works were ever broadcast by SBS.

Further, Plaintiffs failed to provide ***any*** response to SBS's First Request for Admissions. Request Nos. 16 through 27 and 30 through 31 requested that Plaintiffs admit that the Non-Broadcasted Works were never played on the relevant radio stations, and that the Plaintiffs lacked any evidence that the Non-Broadcasted Works were played on those stations.  *See* SF at ¶

---

21. The seven works for which there is no evidence of broadcast are: *Aniversario*, *Soy Sensacional*, *Arroz con Bacalao*, *Ausensia*; *La Malanga a/k/a La Malanga Brava*; *Omi Opera a/k/a Hommy (Mantecadito)*; and *Chumalacantela / Maquinolandera* (collectively, the "Non-Broadcasted Works").

22. Plaintiffs either never possessed the audio recordings, failed to preserve them (and are, thus, responsible for spoliation), or consciously elected not to produce the recordings.

76.  Plaintiffs' failure to timely respond to these Admission Requests are admissions fatal to their

claims.  *See* Fed. R. Civ. P 36(a) ("The matter is admitted unless, within 30 days after service of

the request ... the party to whom the request is directed serves upon the party requesting the

admission a written answer or objection addressed to the matter...."); *S.E.C. v. Batterman*, No. 00

Civ. 4835 (LAP), 2002 WL 31190171, at *5 (S.D.N.Y. Sept. 30, 2002), ("Rule 36 admissions

may be used for  Rule 56  summary judgment."); *Virga v. Big Apple Const. & Restoration Inc.*,

590 F.Supp.2d 467, 471 (S.D.N.Y. 2008) (citing *Donovan v. Carls Drug Co.*, 703 F.2d 650, 651

(2d Cir.1983)).

Thus, Plaintiffs have admitted that the Non-Broadcasted Works were not played on the

stations, and there is no record evidence to the contrary.  Summary judgment should be granted

as to the Non-Broadcasted Works.

**V.    Plaintiff Are Limited to Statutory Damages.**

A plaintiff claiming copyright infringement may demand an award of actual damages or

statutory damages, but not both.  In this case, Defendant is entitled to summary judgment that

Plaintiffs may not pursue actual damages.

**A.    Actual Damages Require Concrete Proof of an Injury to Market Value.**

The Copyright Act entitles a successful copyright owner to claim: (1) actual damages

suffered by him or her as a result of the infringement; and (2) any profits of the infringer that are

attributable to the infringement and are not taken into account in computing actual damages.  *See*

17 U.S.C. § 504(b).  Actual damages include "the fair market value of a license covering the

defendant's infringing use."  *On Davis v. The Gap, Inc.,* 246 F.3d 152, 172 (2d Cir. 2001).  This

is an objective valuation of the "reasonable license fee on which a willing buyer and a willing

seller would have agreed for the use taken by the infringer."  *Semerdjian*, 641 F. Supp.2d at 246

(citing *On Davis*, 246 F.3d at 167).  Actual damages are measured from "an *ex ante*, or pre-

infringement, perspective" and are typically measured by the revenue that the plaintiff lost as a result of the infringement, "lost sales, lost opportunities to license and diminution in the value of the copyright," plus profits that can be apportioned from the use of the copyrighted work.  *See Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 567 (1985); *Baker v. Urban Outfitters, Inc.*, 254 F. Supp.2d 346, (S.D.N.Y. 2003).  *See generally, Fitzgerald Pub. Co., Inc. v. Baylor Pub. Co., Inc.*, 807 F.2d 1110 (2d Cir. 1986) (the primary measure of recovery is "the extent to which the market value of the copyrighted work at the time of the infringement has been injured or destroyed by the infringement.").

Section 504(b) makes actual damages available only if there is a causal connection between the infringement and the copyright owner's losses.  Plaintiff bears the burden of establishing with reasonable probability that it would have made the revenue in question ***but for*** the infringing activity.  *See Stevens Linen Assocs., Inc. v. Mastercraft Corp.*, 656 F.2d 11, 15 (2d Cir. 1981) (the inquiry focuses on "what sales probably would have been made without the infringement"); *Banff Ltd. v. Express, Inc.,* 921 F.Supp. 1065, 1068 (S.D.N.Y. 1995) ("In general, a copyright owner's actual damages are equal to the profits she would have accrued but for defendant's infringement.").  As discussed below, Plaintiff produced no evidence to meet their burden.

### B.      Absent Actual Damages Proof, Plaintiffs Can Only Seek Statutory Damages.

Alternatively, a copyright owner may pursue statutory damages—damages specially authorized by Congress that may be obtained even in the absence of evidence of the harm suffered by the plaintiff or the profit reaped by the defendant.  Section 504(c) of the Copyright Act authorizes an award of damages of $750 to $30,000 per each infringement.  The award can be reduced to $200 per infringement in the Court's discretion based in the event of a finding of innocent infringement.  *See* 17 U.S.C. § 504(c).  Critically, the infringement of a musical work

results in only *one* statutory damage award regardless of the number of times the work was played.  *See Latin Am. Music Co. Inc. v. Spanish Broadcasting Systems, Inc.*, 866 F. Supp. 780, 782 (1994) ("*LAMCO v. SBS*"); 4 Nimmer on Copyright § 14.04.[23]

### C.   Plaintiffs' Prior Election of Statutory Damages is *Irreversible*.

Under the Copyright Act, a copyright owner that prevails in an infringement action is entitled to recover either actual or statutory damages, not both.  "[A]lthough the election may be made at any time before final judgment is rendered, once a plaintiff elects statutory damages he may no longer seek actual damages."  *See LAMCO v. SBS*, 866 F. Supp. at 782; *see also Twin Peaks Productions, Inc. v. Publ'ns, Int'l, Ltd.*, 996 F.2d 1366, 1380 (2d Cir. 1993); *Oboler v. Goldin*, 714 F.2d 211, 213 (2d Cir. 1983) ("Election of statutory damages precludes recovery of actual damages and profits").

Plaintiffs elected to pursue statutory damages at the outset of this matter.  In their January 10, 2014 Initial Disclosures, Plaintiffs provided:

> Plaintiffs will seek *statutory damages* for willful [sic] infringement provided by U.S. Copyright Act, 17 U.S.C. §§ 101-810, as amended, in an amount to be determined by the Court.

*See* SF at ¶ 78 (emphasis added).  Shortly thereafter, Plaintiffs provided a "Corrected" Initial Disclosure, in which it attempted to reverse its irreversible election:

> Plaintiffs will seek actual damages for willful [sic] infringement to be calculated as at least twice the unpaid licensing fees for the period of the three years prior to the filing of this action through the date of judgment.

*See* SF at ¶ 79.  The "Corrected" Initial Disclosure is void because Plaintiffs cannot reverse their

---

23. *See* 17 U.S.C. § 504(c)(1) (court may make "an award of statutory damages for all infringements involved in the action, with respect to any one work"); *see also* H.R. Rep. No. 1476, 94th Cong., 2d Sess. at 162 (1976), *reprinted in* 1976 U.S. Code Cong. and Admin. News at 5659, 5778 ("A single infringer of a single work is liable for a single amount . . . no matter how many acts of infringement are involved in the action.").

prior election for statutory damages.  *See Homkow v. Musika Records, Inc.*, 2008 WL 508597, at

*3 (S.D.N.Y. Feb. 26, 2008) ("Plaintiff cannot recover actual damages.  Although Plaintiff

sought actual damages in the Second Inquest Submission . . . Plaintiff's earlier decision to pursue

statutory damages precluded his pursuit of actual damages.").

Even if reversal were permitted, Plaintiffs' inability to marshal any record evidence of

actual damages limits them to statutory damages.

### D.       Plaintiffs Have Failed to Demonstrate Actual Damages.

To establish actual damages, Plaintiffs must establish concrete evidence of lost sales, lost

opportunities to license, or a diminution in the value of the Works.  *See Harper & Row*, 471 U.S.

at 567; *On Davis*, 246 F.3d at 167.  Plaintiffs are incapable of meeting their burden, as they

failed to tender ***any*** evidence of actual damages.[24]  *See Lottie Joplin Thomas Trust v. Crown

Publishers*, 592, F.2d 651, 657 (2d Cir. 1997) ("[I]f a plaintiff is unable to demonstrate actual

damages, he is restricted to an award of statutory damages."); *LAMCO v. SBS*, 866 F. Supp. at

782.  By way of example, during discovery, SBS propounded Interrogatories requesting that

Plaintiffs identify:

> "the total amount of income earned for each of the past five years in connection
> with licensing the musical works in its repertory" (Interrogatory Request No. 19);

> "all license agreements for the past ten years" (Interrogatory Request at No. 20);
> and

> "All revenue lost due to SBS's alleged infringement" (Interrogatory Request at
> No. 21) (collectively, the "Requests") SF at ¶ 80.

After initially objecting these Requests, Plaintiffs agreed to voluntarily provide amended

responses ("Amended Answers") to the Requests, as well as to provide supporting

---

24. Plaintiffs never requested ***any*** discovery of revenues generated by SBS and attributable to the
     alleged infringement.  (*See* Plaintiffs' First Request for Production, Requests Nos. 1-6).

documentation.  SF at ¶ 80; [ECF No. 85].  On January 14, 2016, the Court entered an order

granting Plaintiffs until January 19, 2016 to both furnish the Amended Answers, and supplement

its document production.  [ECF No. 86].  Plaintiffs **failed** to timely comply with the Court's

Order, and the Court subsequently rejected Plaintiff's belated request to further extend its

deadline to provide the Amended Answers and Responsive Documents.  [ECF No. 90].

Consequently, the discovery period closed with the record barren of **any** evidence of

Plaintiffs' alleged damages.  Specifically, there is no record evidence—either in the form of

interrogatory responses, sworn testimony or documents—of any lost sales, lost licensing

opportunities or any diminution in the value of the copyright.[25]

The sole "evidence" on which Plaintiffs apparently rely is a nuisance value 1994

settlement agreement that SBS entered to end a prior litigation initiated by Plaintiff.  Pursuant to

this settlement agreement, SBS agreed to pay a total of $12,000 for two of its radio stations to

acquire a blanket license to perform LAMCO's alleged repertory.  A forced settlement does not

constitute evidence of "what a willing licensee would have voluntarily paid to either license the

Works."  Further, in that SBS consciously elected not to renew this license, it does not constitute

a lost licensing opportunity.  *See On Davis*, 246 F.3d at 171-72 (the fair market value of a license

does not depend on what the copyright infringer was "willing to negotiate for a license");

*Childress v. Taylor*, 798 F. Supp. 981, 991 (S.D.N.Y. 1992) ("The history of failed negotiations

between [the parties] undermines the assumption upon which [plaintiff] calculates actual

damages.").

---

25. In that by its own admission, LAMCO "does not license its songs for broadcast on a song-by-song basis; rather, it issues blanket licenses to its entire catalog," [ECF No. 97] no reasoned claim can be made that an alleged infringement of a specific work would result in a lost licensing opportunity or diminution in the value of the copyright.  LAMCO's licensees only receive non-exclusive licenses with full knowledge that other users may also exploit the works.

Plaintiffs' failure to produce a single license agreement involving the works (or comparable works) leaves the record barren of any proof their fair market value, and mandates summary judgment on the issue of actual damages.

**VI.    Even if SBS's Blanket Licenses with BMI and ASCAP Were Not a Complete Defense to Plaintiffs' Infringement Claim, SBS Qualifies as an "Innocent Infringer."**

Under section 504(c)(2) of the Copyright Act, where an infringer "was not aware and had no reason to believe that his or her acts constituted an infringement of copyright, the court in its discretion may reduce the award of statutory damages to a sum of not less than $200.00."  17 U.S.C. § 504(c)(2).   An infringer may be "innocent," and therefore entitled to a reduction in statutory damages under section 504(c)(2) where the infringer has a license from a performing rights organization, such as BMI or ASCAP.  *See Jobete Music Co. v. Johnson Commc'ns, Inc.*, 285 F. Supp. 2d 1077, 1086-88 (S.D. Ohio 2003) (finding that, where the infringing radio station had a license agreement with BMI,  the radio station's reliance on an erroneous affirmative statement in a record label that the infringed song was in the BMI repertory might be reasonable).  The purpose of the Copyright Act's "innocent infringer" provision is to "[insulate] users, such as broadcasters . . ., who are particularly vulnerable to this type of infringement suit." *See* Notes of Committee on the Judiciary, House Report No. 94-1476 (1976 Acts).

SBS is precisely the type of user that the "innocent infringer" provision is intended to protect.  This Court has *already ruled* that SBS possessed valid licenses from BMI and ASCAP and that these licenses authorize the SBS stations to perform publicly any musical work in the BMI and ASCAP repertoires, SF at ¶¶ 69-70, and *already noted* that SBS's "evidence of the BMI and ASCAP website listings at the time of the alleged infringement is likely to go a long

way towards establishing Defendant's innocent infringement defense with respect to damages" pending depositions.  [ECF No. 78].[26]

Thus, even if the BMI and ASCAP licenses were not a complete defense to Plaintiffs' claims of copyright infringement with respect to at least nine (9) works,[27] SBS's justifiable reliance on these licenses—as well as a third blanket license from SESAC—qualifies it as an "innocent infringer" under section 504(c)(2) of the Copyright Act and eligible, subject to the Court's discretion, to a downward modification of statutory damages award of $200 per work.

SBS's innocent infringement rationale is not at all undermined by Plaintiffs' reference to a 1989 lawsuit and resulting 1994 settlement agreement pursuant to which SBS paid license fees in connection with unidentified musical works for roughly a year.  Setting aside SBS's motives for entering into a nuisance-value $12,000 settlement, the fact that Plaintiffs filed a lawsuit nearly two decades ago in connection with different musical works does not, in any way, vitiate SBS's good-faith belief, in 2012, that its performances fell within the scope of its BMI and ASCAP licenses.[28]

Moreover, Plaintiffs refused—prior to the initiation of this lawsuit—to provide Defendant with information about what songs were in their alleged catalogue.  SF at ¶ 77.  This made it impossible for Defendant to determine whether it might in fact require a license from Plaintiffs, or, in the alternative, to simply avoid broadcasting the relevant works. For these

---

26. Of course, Plaintiffs did not take any depositions or otherwise come forward with any evidence that Defendant's alleged infringements were anything other than innocent.

27. SBS reserves all rights to raise the innocent infringement defense for the non-BMI or ASCAP works.

28. Indeed, that Plaintiffs—serial litigants—had not made so much as a demand on SBS for close to twenty years only underscores the reasonableness of SBS's belief.

reasons, Defendant is entitled to summary judgment that even if it infringed any of the BMI/Fania or ASCAP works, it is an innocent infringer.

## CONCLUSION

For the foregoing reasons, partial summary judgment should be granted to declare: Non-infringement as to BMI/Fania Works; Non-infringement as to the Non-Broadcasted Works, because Plaintiffs have failed to enter into the record any evidence that SBS ever played those musical works; No actual damages because the record is devoid of any evidence of actual harm and because Plaintiffs irreversibly elected statutory damages in lieu of actual damages; and SBS qualifies as an innocent infringer because of its reliance on BMI and ASCAP's website listings at the time of the alleged infringement.

HUGHES HUBBARD & REED LLP

By:     /s/ James C. Fitzpatrick
        James C. Fitzpatrick
        One Battery Park Plaza
        New York, New York 10004-1482
        Telephone:  212-837-6000
        james.fitzpatrick@hugheshubbard.com

        James G. Sammataro
        STROOCK & STROOCK & LEVINE LLP
        Southeast Financial Center
        200 South Biscayne Blvd. Suite 3100
        Miami, Florida 33131
        Telephone:  305-358-9900
        jsammataro@stroock.com

        *Attorneys for Defendant*
        *Spanish Broadcasting System, Inc.*