**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK_____**

LATIN AMERICAN MUSIC COMPANY, INC.,
a/k/a LAMCO, and ASOCIACIÓN DE
COMPOSITORES Y EDITORES DE MUSICA
LATINOAMERICANA a/k/a ACEMLA,                                   13 CV 1526-RJS

                                    Plaintiffs,

vs.

SPANISH BROADCASTING SYSTEM, INC. AND
RAÚL ALARCÓN, JR.,

                                    Defendants.
_____


**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION**
**TO DEFENDANT SPANISH BROADCASTING SYSTEM INC.'S**
**SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT**


                                              Kelly D. Talcott
                                         The Talcott Law Firm, PC
                                          200 Sea Cliff Ave. #43
                                         Sea Cliff, New York 11579
                                          kelly@kdtalcott.com
                                            v. 516.515.1545
                                            f. 516.871.0682
                                          Attorney for Plaintiffs

# Contents

I. PRELIMINARY STATEMENT ......................................................................................................1

II. STATEMENT OF FACTS...........................................................................................................2

A.     Codigo Music LLC Claims Rights to Seven Titles Here at Issue .......................................2

B.     The Chain of Title from Fania Publishing Co. Inc. to Codigo Music LLC is Broken  in at Least Two Places ...................................................................................................................................3

C.     There are Material Issues of Fact Concerning Codigo's Claimed Chain of Title ............................4

D.     There are Material Issues of Fact Concerning Codigo's Claimed Rights to  Individual Titles ........5

E.     Earlier Lawsuits do not Bar any of Plaintiffs' Claims in this Suit...................................................11

F.     Codigo's Failure to Support its Claims to the Codigo Claimed Works Means SBS's  License with BMI is Irrelevant to this Motion. ...................................................................................................11

G.     Raul Bernard, Plaintiffs' Founder and CEO, Will Testify as to Infringement................................12

H.     Plaintiffs Are Not Precluded from Seeking Actual Damages .........................................................13

I.     SBS is not an "Innocent Infringer." .............................................................................................13

III. ARGUMENT ...........................................................................................................................14

A.  There are Material Questions of Fact Concerning SBS's Claims That it has Acquired Rights to Broadcast the Songs Here at Issue .....................................................................................................14

B.  The Earlier Court Proceedings Relating to Titles Authored by Hector Lavoe Did Not Cover Any Titles at Issue in This Lawsuit ............................................................................................................17

C. There Are Substantial Questions of Material Fact as to Every Song Covered by SBS's Motion .........18

D. There is Evidence of SBS's Infringement.......................................................................................18

E. Plaintiffs Have not Made Their Damages Election .........................................................................19

F. SBS is not an Innocent Infringer....................................................................................................20

IV. CONCLUSION.........................................................................................................................21

Plaintiffs Latin American Music Company, Inc. ("LAMCO") and Asociacion de Compositores y Editores de Musica Latinoamericana ("ACEMLA") respectfully submit this memorandum of law in opposition to defendant Spanish Broadcasting System, Inc.'s ("SBS") second motion for partial summary judgment.

## I. PRELIMINARY STATEMENT

Defendant SBS's second motion for partial summary judgment addresses only seven of the thirteen songs at issue in this lawsuit. Six of those seven were among those that were the subject of SBS's first motion for summary judgment. The present motion depends in large part on a chain of title that extends from a company called Fania Publishing Co., Inc. in the 1980s to the present-day rights claimant, a company called Codigo Music LLC. There are, however, at least two broken links in this chain that SBS's motion fails to address, much less mend.

SBS also claims that there is no evidence of its infringement, despite the fact that plaintiffs' founder and president personally listened to and made record of the instances when SBS stations broadcast the songs at issue in this suit, and listed those instances in the third amended complaint filed in this case. He remains prepared to testify to that effect at trial. SBS, of course, is in the best position to disclose what its own stations broadcast on any given day, but to date has failed and refused to do so.

SBS further argues that plaintiffs are limited in their remedy to statutory damages when, in fact, plaintiffs have not yet made that election and retain the right to seek compensatory damages at trial.

Finally, SBS seeks ruling that it is an "innocent infringer" of plaintiffs' rights, despite the fact that SBS and plaintiffs previously litigated SBS's infringement of plaintiffs' rights and

ended that dispute with a license from ACEMLA to SBS.  SBS was thus on notice of plaintiffs'

claims many years before being sued again in this action, and so cannot now claim "innocent

infringer" status.

## II. STATEMENT OF FACTS[1]

As correctly noted in SBS's motion, LAMCO is a music publisher that administers

copyrighted musical works of Puerto Rican and foreign composers, and ACEMLA is a music

performance licensing organization, competing with BMI and ASCAP, that licenses and

administers the performance rights in its repertory. SMF 1, 2. SBS is a radio broadcaster that

owns and operates commercial radio and television stations across the United States and in

Puerto Rico. SMF 3. To date, two of SBS's radio stations have been identified as having

broadcast songs that are at issue in this lawsuit. SMF 4.  Both are at issue in this motion.

### A.    Codigo Music LLC Claims Rights to Seven Titles Here at Issue

Codigo Music LLC ("Codigo") claims to be at the end of a chain of title to seven of the

songs at issue in this lawsuit: Abuelita, Aguanile, Mi Gente, Soy Sensacional, Mantecadito, and

Arroz con Bacalao (the "Claimed Codigo Titles").  SMF 6.  According to Codigo's current

president, Stuart Livingston, that chain begins prior to 1985 with a company called Fania

Publishing Co. Inc.  SMF 5.  According to Mr. Livingston, all of the Claimed Codigo Titles were

first owned by Fania Publishing Co. Inc.  SMF 8 (Abuelita), 13 (Aguanile), 17 (Ausencia), 21

---

[1] Plaintiffs incorporate by reference their responses to SBS's Statement of Material Facts pursuant to Local Civil Rule 56.1 ("SMF" referring to SBS's statements, and "Response" referring to plaintiffs' responses thereto), as well as plaintiffs' Counterstatement of Material Facts ("Counterstatement").

(Mi Gente), 31 (Soy Sensacional), 33 (Mantecadito), and 39 (Arroz con Bacalao).  Mr.
Livingston asserts that these titles are now part of Codigo's catalog and have been licensed by
Codigo to BMI for administration.  SMF 6, 44-57.

**B.     The Chain of Title from Fania Publishing Co. Inc. to Codigo Music LLC is Broken
         in at Least Two Places**

Mr. Livingston describes the following transactions that he asserts give Codigo the rights
to the Claimed Codigo Titles:

-- 7/1/85 transfer from Fania Publishing Co. Inc. to FAF Publishing, a division of F Publ.
Inc.  SMF 46.

-- 7/1/92 transfer from FAF Publishing/F Publ. Inc. to Sonido Inc d/b/a FAF Publsihing.
SMF 47.

-- 7/22/05 transfer from Sonido Inc./FAF Publishing to Emusica Publishing LLC d/b/a
Fania Music. SMF 48.

-- 4/23/09 transfer from Emusica Publishing LLC d/b/a Fania Music to SE Music
Acquisition, LLC.  SMF 49.

-- 8/31/09 change of name: SE Music Acquisition, LLC changed its corporate name to
Codigo Music, LLC.  Livingston Decl. para. 4.

There are problems with this chain of title, however.  Notably, it appears that Fania
Publishing Co. Inc. was not in existence at the time of the first purported transfer – the July 1,
1985 transfer from Fania Publishing Co. Inc. to FAF Publishing, a division of F Publ. Inc.
According to the New York Department of State, Fania Publishing Co. Inc. was dissolved on
December 5, 1980, some five years before the purported transfer to FAF Publishing/F Publ. Inc.
Talcott Decl. para. 1 Exh. A.  Response 7.

3

There is a similar problem with the second claimed transfer – the July 1, 1992 transfer from FAF Publishing/F Publ. Inc. to Sonido  Inc.  New York Department of State records reflect that F Publ. Inc. was dissolved on June 26, 1991, over a year before the purported transfer from F Publ. Inc. to Sonido Inc.  Talcott Dec. para. 2 Exh. B.  Response 7.

Given that the first two transferring entities in Codigo's claimed chain of title appear not to have been in existence at the time of their respective claimed transfers, it is difficult to understand how Codigo can now claim to own the rights to titles Codigo says it acquired via those (nonexistent) entities.

Similarly, because Codigo's present affiliation agreement with BMI is traced by Mr. Livingston back to a purported 2006 modification of a 1986 affiliation agreement between BMI and FAF Publishing[2], a division of F Publ. Inc., the fact that F Publ. Inc. dissolved in 1991 renders the present state of Codigo's relationship with BMI questionable to say the least.  Response 7, 52.

**C.      There are Material Issues of Fact Concerning Codigo's Claimed Chain of Title**

Putting aside the two broken links links in Codigo's five-link chain of title, there is a lack of admissible support for Codigo's claims to the seven titles here at issue.  Mr. Livingston does not allege that he was employed by any of the entities in the chain except for Codigo, nor does he say that he has personal knowledge of those earlier transactions.  In his declaration he also fails to state that any of the transfer documents that SBS relies on came from Codigo's books and records as maintained in the ordinary course of its business.  Instead, it appears that SBS and Mr. Livingston may rely on documents provided by BMI, since instead of the actual transactional

---

[2] Livingston Decl. paras. 11-12; Statement 51-54.

documents that typically memorialize a rights transfer such as the ones Mr. Livingston says occurred, he provides third-party letter agreements, on BMI letterhead, that do not describe the terms of the transactions or list any of the titles included as part of the purported transfers.  See Livingston Exhs. 3, 4, and 5, all of which are BMI letters as opposed to original transaction documents; Response 46-48, 51, 54.

Further, the final transfer in the chain – from Emusica Publishing LLC d/b/a Fania Music to SE Music Acquisition (Livingston Decl. para. 5 and Exh. 2) -- has similar defects.  Mr. Livingston does not state that his Exhibit 2 came from Codigo's books and records as maintained in the ordinary course of its business.  In addition, the document includes numerous significant redactions and appears to be only two pages long before the signature page, though it could be longer – there is no way of knowing, because the signature pages are not page-numbered. Further calling the final transfer into question, what little of the agreement we are allowed to see mentions that there are "Excluded Assets" (Livingston Exh. 2 para. 1.1) but does not list those Excluded Assets; and it fails to include the "Acquired Assets" that were supposedly set forth in the agreement's Schedules 1.1(a) and 1.1(b) (Livingston Exh. 2 para. 1.1(a) and 1.1(b)), both of which are missing.  Response 7.

**D.     There are Material Issues of Fact Concerning Codigo's Claimed Rights to Individual Titles**

The foregoing significant deficiencies permeate the analysis of each of the seven titles Codigo claims it controls.  There are other problems in addition to these that are more specific to individual titles.

**Abuelita, Aguanile, and Ausencia**

Mr. Livingston cites to two agreements that he says were between Fania Publishing Co. Inc. and Hector Lavoe and Willie Colon, respectively.  SMF 11; Livingston Decl. para. 11; Exh. 11 (Lavoe) and 12 (Colon); Response 7, 11.  The two songwriters are claimed by Codigo as being the authors of Abuelita, Aguanile, and Ausencia.  There are multiple problems with each of these agreements.

First, Mr. Livingston is not competent to authenticate either of these purported agreements.   Notably, Mr. Livingston does not declare that either document came from Codigo's files as maintained in the ordinary course of its business, and each document on its face predates Mr. Livingston's (and Codigo's) alleged ownership of the Fania Catalog.  (Indeed, both exhibits were produced in discovery by BMI, and each bears its own "BMI" document production numbers.)  SMF 11; Response 7, 11.

In addition, the purported Lavoe agreement (Livingston Exh. 11) is not with Fania Publishing, as Mr. Livingston asserts, but with a different entity called "Fania Records, Co." Dated October 17, 1972, it has a one-year term going forward.  It does not, as SBS claims, give Fania *Publishing* anything, much less "ownership of works authored by Mr. Lavoe . . . during or prior to the term of the agreement."  SMF 11.  Mr. Livingston also asserts that Fania Publishing Co., Inc. (not Fania Records, Co.) registered the copyright to Abuelita in 1971, which was the year *before* the date of the purported 1972 agreement between Fania Records, Co. and Hector Lavoe.  SMF 11; Response 7, 11.

Similarly, the purported Colon agreement (Livingston Exh. 12) also is not with Fania Publishing, as SBS asserts, but with a different entity called "Fania Records, Co."  It is dated February 21, 1974 and is for a one-year term going forward (and like the Lavoe agreement, gives

no backward-looking rights). SBS and Mr. Livingston ignore the fact that, according to Mr. Livingston, Fania Publishing Co., Inc. (not Fania Records, Co.) registered the copyright to Abuelita in 1971, some three years *before* the 1974 date of the purported agreement between Fania Records, Co. and Mr. Colon.  SMF 11; Response 7, 11.

Compounding this are the agreements that plaintiffs entered into with Jose Alberto Perez Castro, heir to Hector Perez, a/k/a Hector Lavoe, in 1999, which transferred to ACEMLA and LAMCO a broad range of rights to license and exploit Mr. Lavoe's compositions, including Aguanile, Abuelita, and Ausencia. ACEMLA promptly recorded those agreements with the United States Copyright Office. Counterstatement 6. In addition, based on those agreements, LAMCO registered the copyrights to all three compositions in November of 1999. Counterstatement 7.

SBS again (as it did in the first summary judgment motion) claims that Willie Colon was a co-author with Mr. Lavoe of Aguanile, Abuelita, and Ausencia.  In the first motion, SBS claimed that Mr. Colon had an affiliation agreement with BMI that gave BMI the right to license works written or co-written by Mr. Colon. First SMF 41. As noted in plaintiffs' response to the first motion, the documents SBS cited in support of this claim actually called its claim  into serious question. A simple visual comparison of the signature on the purported Colon Affiliation Agreement at Garza Exh. F with the signature on the "no exception" letter, also at Garza Exh. F, reveals the two are significantly different. One or both of the signatures is thus likely a forgery. First Response 41.

SBS has a similar problem with the purported agreement with the heirs of Mr. Lavoe, who SBS claimed in its first motion entered into a posthumous affiliation agreement with BMI as to all of Mr. Lavoe's works. Here too, however, there were substantial differences between the

signature of one "Jose A. Perez" in the un-notarized BMI affiliation agreement and the notarized

signature of  Jose Alberto Perez Castro on the ACEMLA and LAMCO agreement. Compare

Garza Exh. G with Bernard Exh. 6.

Finally, plaintiffs recorded the agreements that provide them with their rights to these

three titles, as well as Mi Gente (discussed below) in 1999 and 2000.  Counterstatement 6-7.

There are thus many questions of material fact the prevent entry of summary judgment in

SBS's favor as to Aguanile, Abuelita, and Ausencia.

**Mi Gente**

Mr. Livingston asserts that "Fania had multiple songwriter agreements with" Johnny

Pacheo, the claimed author of Mi Gente.  SMF 24; Livingston Decl. para. 16.  The document he

relies upon for this statement, however, makes no reference whatsoever to any past agreement

between Mr. Pacheo and Fania Publishing Co. Inc. – though it does refer to Fania Records, Inc.

Livingston Exh. 19.  It is from Fania Publishing, however, not Fania Records, that Codigo claims

to have acquired its interest in the Codigo Claimed Titles.  SMF 44-49; Response 24, 44-49.

Furthermore, Mr. Livingston is not competent to authenticate this purported assignment

document from Mr. Pacheco.  Notably, he does not declare that the document came from

Codigo's files as maintained in the ordinary course of its business, and the document on its face

predates Mr. Livingston's (and Codigo's) alleged 2009 ownership of the Fania Catalog.  (Indeed,

the exhibit bears "BMI" document production numbers, suggesting that Codigo relied on BMI to

locate and produce the document.)  Livingston Decl. para. 16; Response 24.

As noted above, plaintiffs recorded the agreements that provide them with their rights to

Mi Gente in 1999 and 2000.  Counterstatement 6-7.  \

**Soy Sensacional/Mantecadito**

The Latin opera titled Hommy included two songs at issue in this case, Soy Sensacional and Mantecadito.  Mr. Livingston notes that the1973 registration certificate for Hommy lists Fania Records, Inc. and not Fania Publishing Co. Inc. as the copyright claimant. He attempts to overcome this problem with Codigo's chain of title (which he earlier claimed devolved from Fania Publishing) by claiming that "Both Fania Publishing and Fania Records had common ownership at the time," though he offers no written proof for that statement and fails to indicate the source of this information.  SMF 30; Livingston Decl. para. 18; Response 30.  Given that he was neither employed by nor associated with either Fania Publishing or Fania Records in 1973, Mr. Livingston is not competent to testify as to their corporate status relative to one another, and his declaration otherwise should be ignored.  Response 28-30.

Mr. Livingston is briefly joined by SBS's attorney, Mr. Fitzpatrick, in claiming Codigo's rights to Mantecadito.  Mr. Fitzpatrick asserts that Fania Publishing Co. registered Mantecadito even though the accompanying documents state that Fania Records was the registrant.  SMF 33; Fitzpatrick Exh. 3.  Mr. Livingston then goes on to claim that the Catalog of Copyright Entries "contains the registrations for Soy Sensaiional and Mantecadito," though he does not claim that they are in the name of Fania Publishing Co. Inc. – indeed, they are not.  SMF 35; Response 31-35; Livingston Exh. 23.

Codigo's claims to Soy Sensacional and Mantecadito are also called into question by two sets of documents from plaintiffs' files; agreements between the composer Jenaro Alvarez Domenech transferring rights in and to Soy Sensacional and other compositions to plaintiffs in 1996, and LAMCO's registration of the copyright to Soy Sensacional in 2003. Counterstatement 4-5 and exhibits referenced therein.

**Arroz con Bacalao**

Mr. Livingston claims that Fania Publishing Co. Inc. had an agreement with Johnny Alvarez that granted Fania Publishing rights to the song Arroz con Bacalao. SMF 43; Livingston Decl. para. 21 and Exh. 30. Here again, however, Mr. Livingston is not competent to authenticate the purported agreement between Fania Publishing Co., Inc. and Johnny Alvarez. Notably, he does not declare that the document came from Codigo's files as maintained in the ordinary course of its business, and the document on its face predates Mr. Livingston's (and Codigo's) alleged 2009 ownership of the Fania Catalog. (Indeed, the document bears "BMI" document production numbers.) Response 43.

Further, while SBS claims that Arroz Con Bacalao was written by "Johnny Alvarez," Copyright office records for Arroz Con Bacalao as well as documents maintained by LAMCO and ACEMLA reflect that Jenar Alvarez Domenech, was the writer. Counterstatement 3, 4, 5 and exhibits referenced therein. In addition, while SBS earlier argued that Fania Music is the publisher of Arroz Con Bacalao, now it claims that Codigo Music is the actual publisher. First SMF 52[3]. There are thus significant discrepancies between the entity appearing on the Publisher Clearance Form ("Fania Publishing Co. Inc."); the one claiming rights in the first motion ("Fania Music"); and the one claiming rights in this second motion ("Codigo Music LLC").

Even without the breaks in the chain of title and the lack of admissible support for Codigo's claims that it owns all seven titles at issue in this motion, SBS and Codigo have problems proving that their rights to those titles are superior to those claimed by plaintiffs in this case. Plaintiffs, on the other hand, recorded their interest in Arroz Con Bacalao with the U.S. Copyright Office in November of 2003. Counterstatement 6-7

---

[3] "First SMF" refers to the SBS's Rule 56.1 Statement of Undisputed Facts filed in support of its first motion for summary judgment in this case (Docket entry 61).

**E.**     **Earlier Lawsuits do not Bar any of Plaintiffs' Claims in this Suit**

SBS claims that an earlier suit in Puerto Rico involving works by Hector Lavoe – but not any of the works presently at issue – bars plaintiffs from claiming rights to the Lavoe works at issue in this suit.  The fact that this lawsuit bears little resemblance to that one – the two suits have no titles in common – shows the infirmity of SBS's position

The New York State case supposedly involving Mr. Lavoe's purported heirs is yet another instance where Mr. Livingston expects this Court to assume that he is competent to authenticate and testify about a document that was created decades before Codigo even existed. Once again, he is not.  The document and his claims concerning its provenance and meaning should be disregarded.  SMF 72; Response 72; Livingston Dec. para. 27 and Exh. 34.

**F.**     **Codigo's Failure to Support its Claims to the Codigo Claimed Works Means SBS's License with BMI is Irrelevant to this Motion.**

SBS argues that it has entered into a license with BMI that defeats plaintiffs' claims with respect to the titles at issue in this motion.  The strength of this position, however, relies entirely on the strength of Codigo's claims to those titles, since Codigo asserts that it controls the rights to the titles and has licensed BMI to administer them.

As has been shown above, there are many problems with Codigo's position, not the least of which are the two breaks in the five-link chain of title that stretches from Codigo today all the way back to Fania Publishing Co. Inc. in the 1970s.  The Fania Publishing dissolution in 1980, the Fania Records dissolution in 1981, and the F Publ. Inc. dissolution in 1991 all create significant roadblocks to Codigo's claimed rights that affect all of the titles at issue in this

11

motion.  This, of course, adversely impacts BMI's ability to assure SBS that it has the authority to license SBS to perform these works.

Complicating matters further, in its first summary judgment motion in this case, SBS argued that an entity known as Fania Music held rights to five of the titles at issue in this motion: Soy Sensacional, Aguanile, Ausencia, Abuelita, and Arroz Con Bacalao. First SMF 15.  Now, however, SBS claims that Codigo owns these titles.  As plaintiffs pointed out in plaintiffs' response to SBS's first motion, there is no signed affiliation agreement between Fania Music and BMI. The 1986 license agreement found at Garza Exh. B submitted in support of SBS's first motion was between BMI and "FAF PUBLISHING, a Division of F PUBL. INC.," and not BMI and Fania Music. Furthermore, there is no record of a transfer of that agreement from "FAF PUBLISHING, a Division of F PUBL. INC." to any other entity, let alone "Fania Music." (As noted above, F Publ. Inc. was dissolved in 1991, the year before it supposedly transferred the titles at issue to Sonido, Inc.)

Even if F Publ. Inc. had not dissolved the year before the purported transfer to Sonida, Sonida's supposed subsequent transfer to "Fania Music" (see last page of Garza Decl. Exh. B, submitted in support of SBS's first summary judgment motion) has its own problems; notably, Sonida failed to sign the transfer document.  Given the lack of a signed agreement between Fania Music and BMI, as well as the breaks in the chain of title, there is a question of material fact as to whether Fania Music (or Codigo) has any agreement in place with BMI under which BMI in turn has rights to license any Fania Music (or Codigo) songs. Response 15, 18, 19, 20, 52.


**G.    Raul Bernard, Plaintiffs' Founder and CEO, Will Testify as to Infringement**

SBS disingenuously argues that, despite the fact that it is in the best position to determine what songs it has broadcast on which station at what time, plaintiffs are precluded from claiming infringement in this case.  As set forth in the accompanying declaration of Raul Bernard, however, Mr. Bernard personally listened to each of the songs at issue in this suit, and diligently set down the date, time, and SBS-owned station on which the songs were broadcast.  He is prepared to so testify at trial, where presumably SBS's counsel would have an opportunity to cross-examine him.  Counterstatement 9; Bernard Decl. para. 12.

### H.    Plaintiffs Are Not Precluded from Seeking Actual Damages

While plaintiffs at one early point in this case indicated that they would pursue statutory damages, they quickly amended that statement, to no objection by defendants.  SBS is well aware of the annual license fees that ACEMLA demands for radio stations, given that SBS itself was once a licensee in good standing.  There is thus no impediment to plaintiffs seeking actual damages from SBS in this case in the event plaintiffs choose to do so.

### I.    SBS is not an "Innocent Infringer."

Given SBS's prior knowledge of plaintiffs' rights, and its earlier litigation with plaintiffs that resulted in the parties entering into a license, it is difficult to see how SBS can now claim that is it an "innocent infringer" who should receive the benefit of such status.  As noted in the first summary judgment motion, SBS's license with BMI was retroactive, indicating that even with BMI, SBS knew that it had unlicensed  uses of others' copyrighted works that it needed to cover with a license

# III. ARGUMENT

When "ruling on a summary judgment motion, the district court must '"resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment"' and determine whether there is a genuine dispute as to a material fact, raising an issue for trial. *Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199, 206 (2d Cir.2006) (*quoting Cifra v. Gen. Elec. Co.*, 252 F.3d 205, 216 (2d Cir.2001)). A fact is 'material' when it '"might affect the outcome of the suit under governing law."' *Jeffreys v. City of N.Y.*, 426 F.3d 549, 553 (2d Cir. 2005) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). An issue of fact is 'genuine' if '"the evidence is such that a reasonable jury could return a verdict for the nonmoving party."' *Id.* (*quoting Anderson*, 477 U.S. at 248.) *McCarthy v. Dun & Bradstreet Corp.*, 482 F. 3d 184, 202 (2d Cir. 2007).

The Supreme Court has emphasized that "all that is required [from a nonmoving party] is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968); *see also Hunt v. Cromartie*, 526 U.S. 541, 552 (1999). "Credibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment." *Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir.1997).

## A.  There are Material Questions of Fact Concerning SBS's Claims That it has Acquired Rights to Broadcast the Songs Here at Issue

Here, as with SBS's first motion for partial summary judgment, it is important to keep in mind that "[a]ffidavits submitted in support of or in opposition to the summary judgment motion

must 'be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.'" *Patterson v. County of Oneida, NY*, 375 F.3d 206, 219 (2d Cir. 2004), *citing Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 160 (2d Cir.1999); *H. Sand & Co. v. Airtemp Corp.*, 934 F.2d 450, 454 (2d Cir.1991); 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 2738, at 328 (3d ed.1998).  As noted above, there are a many assertions made in the Livingston declaration (on which SBS's present motion is based) that cannot have been made based on Mr. Livingston's personal knowledge, and a number of key unauthenticated documents that are not admissible in evidence because no party having actual knowledge of the document has testified as to its authenticity.

SBS argues that the purported copyright registrations in the name of one or another dissolved Fania entities "trump" plaintiffs' ownership of those titles.  Def. Mem. at 7.  In so doing, SBS ignores the significant infirmities suffered by each of those registrations as described above.  These include registrations that predate any purported agreements with the songwriters, as well as the two subsequent breaks in the chain of title leading to present-day Codigo Music LLC that call into serious question both the original validity and the present state of those purported registrations.  See Response paras. 7, 11, 14, 15, 16, 17, 18, 19, 24, 28, 29, 30, 31, 32, 33, 34, 35, 36, 39, 40, 41, 42, 43.

Indeed, "a certificate of registration creates no irrebuttable presumption of copyright validity. Where other evidence in the record casts doubt on the question, validity will not be assumed." *Durham Industries, Inc. v Tomy Corp.*, 630 F. 2d 905, 908 (2d Cir. 1980).  Extending a presumption of validity to a certificate of copyright registration "merely orders the burdens of proof. The plaintiff should not ordinarily be forced in the first instance to prove all of the

multitude of facts that underline the validity of the copyright unless the defendant, by effectively challenging them, shifts the burden of doing so to the plaintiff." H.Rep. No. 1476, 94th Cong., 2d Sess. 157, reprinted in 1976 U.S.Code Cong. & Ad.News 5659, 5773. *See also Oboler v. Goldin*, 714 F.2d 211, 212 (2d Cir.1983); 3 M. Nimmer, Nimmer on Copyright § 12.11[B], at 12-79 to 12-80 (1985).

In this case, plaintiffs have identified a number of significant infirmities with each of the purported copyright registrations upon which SBS relies.  Though SBS claims that BMI has affiliation agreements with songwriters whose titles are at issue in this motion, there are also serious questions (raised in the first summary judgment motion) as to the validity of several of those purported agreements. Response 57.

Further, while SBS claims it has the right to broadcast the Claimed Codigo Titles because of its (retroactive) license with BMI; and that BMI has the right to license SBS to do so because of its affiliation agreement with Codigo Music LLC, there is no affiliation agreement between Codigo and BMI covering these titles.  SMF 52-55 and Responses thereto.  Codigo's claim that it is covered by an earlier agreement between BMI and Sonido, Inc. is hampered by the fact that the supposed transfer letter is not signed by the purported transferor, Sonido, Inc.  Further, as with a number of documents he presents in support of SBS's motion, Mr. Livingston utterly fails to authenticate the underlying exhibit.  Response 52.

SBS thus relies on (a) purported copyright registrations, a number of which were filed before the claimants could arguably show they had rights to the underlying compositions; (b) incomplete and unauthenticated agreements with composers; (c)  purported unrecorded rights transfers by entities that were not in existence at the time the transfers supposedly occurred; and (d) the questionable status of another entity's BMI affiliation agreement that Codigo Music LLC

seeks to claim the benefit of, since it apparently has no direct agreement with BMI in place. Given all of this, the presumptions that normally might accompany the registration certificates presented by SBS in support of this motion should be disregarded, and SBS's motion for partial summary judgment should be denied with respect to each of the songs at issue.

There are other problems with each of the purported transfers of rights in the chain of title described by Mr. Livingston; in particular, neither Mr. Livingston nor SBS claim that any of those transfers were ever recorded with the U.S. Copyright Office. As such, plaintiffs could not have had notice, constructive or otherwise, of any of the claimed changes in ownership over the years. 17 U.S.C. 205(a), (c). Indeed, as between the transfers that SBS and Codigo rely upon, which were not recorded with the Copyright Office, and those that plaintiffs rely upon, which were, plaintiffs' recorded transfers must prevail. 17 U.S.C. 205(e).

Finally, given the dissolution of three of the entities making up links in the chain of title that supposedly ends with Codigo Music LLC, it is entirely possible that any rights legitimately granted to those entities by any of the composers whose songs are at issue in this motion reverted back to those composers. *See, e.g*., Livingston Exhs. 11 and 12 at section 10.


**B. The Earlier Court Proceedings Relating to Titles Authored by Hector Lavoe Did Not Cover Any Titles at Issue in This Lawsuit**

SBS argues that a 2002 District Court decision relating to songs that were part of a play titled "Quien Mato a Hector Lavoe?" collaterally estops plaintiffs from pursuing their claims with respect to all of Lavoe's titles in this suit. SBS Memorandum of Law at 13-14. There are a number of problems with this argument, however.

First, the titles at issue in this case are different than those that were at issue in 2002, a fact that SBS admits, albeit in a footnote.  Second, there is no indication in the earlier decisions that the Courts were given an opportunity to consider the effect that the dissolutions of Fania Publishing Co. Inc., Fania Records, Inc., or F Publ. Inc. had on the rights claimed by plaintiffs or the licenses the defendants claimed to have secured from Sonido, Inc.  Finally, the courts in that case refused to apply 17 U.S.C. 205 to transfers there at issue; as noted above, the failure of Codigo Music LLC or any of its purported predecessors to record their claimed transfers means that plaintiffs' recorded agreements prevail.

## C. There Are Substantial Questions of Material Fact as to Every Song Covered by SBS's Motion

As set forth in detail in the facts section above, each and every song at issue in this motion brings with it substantial fact questions that prevent a ruling in SBS's favor. There are a number of chain-of-title questions; plaintiffs have agreements for each one of the songs at issue; SBS relies on inadmissible documentation and hearsay statements to support its claims; and each song has its peculiar set of disputed facts that prevent SBS from securing the partial summary judgment it seeks.

## D.  There is Evidence of SBS's Infringement

SBS argues that there is no evidence that it ever broadcast seven of the 13 works at issue in this lawsuit.  Def. Mem. at 17.  This ignores the very specific descriptions set forth in the Third Amended Complaint at paragraph 23 that identify the stations, dates, and times of broadcast for each of the titles at issue.  SBS claims that it served a First Request for Admissions

that went unanswered; however, it appears that the requests were not received by plaintiffs'

counsel, nor did SBS's counsel make any good faith effort to confirm that plaintiffs' counsel

received the requests.  Talcott Decl. para. 4.  Further as noted in the accompanying declaration of

Raul Bernard, Mr. Bernard is prepared to testify as to the accuracy of the information set forth in

paragraph 23 of the Third Amended Complaint. Bernard Decl. para. 12; Counterstatement 9.


**E.  Plaintiffs Have not Made Their Damages Election**

SBS claims that the statement made by plaintiffs in their first initial disclosures during

the pre-discovery phase of this case constitutes the "election" of damages contemplated by the

Copyright Act, and that the "election" made at such an early stage of the proceedings is

irreversible.  First, there is no dispute that plaintiffs modified their damages statement "shortly"

after serving their initial statement, and SBS does not argue that it was prejudiced in any way by

the corrected initial disclosure.

Second, none of the cases cited by SBS consider such a situation, where a statement was

made in an initial disclosure and then corrected a short time thereafter.  While there is of course

some point at which a plaintiff must make such an election and expect it to be treated as final, the

initial disclosure stage of the proceedings is not that point.

Finally, until it filed this motion SBS never objected to or otherwise disputed any portion

of plaintiffs' corrected initial disclosures, much less the revision to their damages statement.

In addition, the best evidence of plaintiffs' actual damages is the 1994 license agreement

with SBS, a copy of which SBS has had for the past 22 years.  While SBS dismisses this as a

"nuisance value" agreement that was a result of a "forced settlement," it nevertheless performed

under the agreement during its term and for some time after the agreement expired.

19

**F. SBS is not an Innocent Infringer**

There are a number of facts that together combine to defeat SBS's claim that it is an innocent infringer. First, and as set forth in the third amended complaint, in late 1994, SBS entered into a license agreement with plaintiffs. The license agreement was "pursuant to an informal settlement" following a suit against SBS filed by LAMCO and ACEMLA arising out of SBS's broadcast of musical compositions for which LAMCO and ACEMLA claimed rights. 3rd Amended Complaint para. 18. SBS thus had actual knowledge that plaintiffs possessed rights to compositions that SBS was likely to use in the course of radio broadcasts from one or more of its stations. Second, SBS took retroactive licenses from both BMI and ASCAP, both of which followed plaintiffs' attempts to secure a renewal of the 1994 license after its expiration. 3rd Amended Complaint para. 20; Garza Decl. Exh. A; Reimer Decl. Exh. A[4]. By these retroactive licenses, SBS showed that it was anything but an innocent infringer. Indeed, given that the present motion, like the first motion, seeks to dispose of only a portion of the songs at issue in this suit, it is difficult to see how SBS can justify its request for a declaration of "innocent infringer" status. The facts on the ground once again support a finding of willfulness, not innocence.

When seeking to establish that it acted as an "innocent infringer" under 17 U.S.C. 504(c)(2), the defendant must show "that it was not aware and had no reason to know it was infringing. The defendant shoulders the burden of proving this good faith and that its belief was a

---

[4] Both Mr. Garza's and Mr. Reimer's declarations were submitted in support of SBS's first motion for partial summary judgment.  See docket entries 62 and 63, respectively.

reasonable one." *Basic Books, Inc. v. Kinko's Graphics Corp.*, 758 F.Supp. 1522, 1544 (S.D.N.Y. 1991)(citation omitted). As set forth above, the facts in this case show SBS's awareness of its infringing activity, not its innocence. Given the prior history between the parties, it is a significant stretch to argue that SBS "was not aware and had no reason to believe" that its acts were infringing. 17 USC 504(c)(2).

"It is clear, however, that a certificate of registration creates no irrebuttable presumption of copyright validity. Where other evidence in the record casts doubt on the question, validity will not be assumed." Durham Industries, Inc. v Tomy Corp., 630 F. 2d 905, 908 (2d Cir. 1980). Extending a presumption of validity to a certificate of copyright registration "merely orders the burdens of proof. The plaintiff should not ordinarily be forced in the first instance to prove all of the multitude of facts that underline the validity of the copyright unless the defendant, by effectively challenging them, shifts the burden of doing so to the plaintiff." H.Rep. No. 1476, 94th Cong., 2d Sess. 157, reprinted in 1976 U.S.Code Cong. & Ad.News 5659, 5773. See also Oboler v. Goldin, 714 F.2d 211, 212 (2d Cir.1983); 3 M. Nimmer, Nimmer on Copyright § 12.11[B], at 12-79 to 12-80 (1985).

## IV. CONCLUSION

Because for each song at issue there are substantial questions of material fact that prevent the Court from ruling in SBS's favor, SBS's motion for partial summary judgment should be denied as to all seven of the songs.  Further, SBS's motion with respect to allegedly "unplayed" songs should be dismissed as well because plaintiffs will be able to prove at trial that the songs were played on stations, dates, and times set forth in the complaint.  In addition, plaintiffs have not yet elected their damages theory, though they will of course do so prior to trial.  Finally,

SBS, as a former infringer of plaintiffs' rights, is not by any stretch of the imagination an innocent infringer, and the Court should decline to so label it.

Dated: May 23, 2016

/s/ _____

Kelly D. Talcott
The Law Offices of Kelly D. Talcott
34 Grove Street, PO Box 43
Sea Cliff, New York 11579
kelly@kdtalcott.com
v. 516.515.1545
f. 516.871.0682
