UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LATIN AMERICAN MUSIC COMPANY, INC., *a/k/a* LAMCO, and ASOCIACIÓN DE COMPOSITORES Y EDITORES DE MUSICA LATINOAMERICANA *a/k/a* ACEMLA,<br><br>Plaintiffs,<br><br>vs.<br><br>SPANISH BROADCASTING SYSTEM, INC. and RAÚL ALARCÓN, JR.,<br>Defendants. | Civil Action No. 13 CV 1526-RJS<br><br>ORAL ARGUMENT REQUESTED |

### REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT SPANISH BROADCASTING SYSTEM, INC.'S <u>MOTION FOR PARTIAL SUMMARY JUDGMENT</u>

James C. Fitzpatrick
HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004-1482
212-837-6000

*Attorneys for Defendant Spanish Broadcasting System, Inc.*

James G. Sammataro
STROOCK & STROOCK & LAVAN, LLP
Southeast Financial Center
200 South Biscayne Blvd. Suite 3100
Miami, Florida 33131
305-358-9900

*Attorneys for Defendant Spanish Broadcasting System, Inc.*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT ..................................................................................................................................2

    I.    The Fania Copyright Registration Certificates On Their Own Demonstrate that Plaintiffs Were Not Good-Faith Purchasers Without Notice of a Prior Transfer. ..................................................................................................................2

    II.    Plaintiffs Fail to Address the Statute of Limitations Bar to Their Claims. ...............3

    III.    Plaintiffs Did Not Obtain Any Rights from Hector Lavoe's Heir. ..........................4

    IV.    SBS Had a Valid License to Perform the Fania Works at All Relevant Times ........................................................................................................................5

        A.    Plaintiffs' questions about Código's chain of title do not raise a material factual dispute. ..........................................................................6

        B.    All relevant documents submitted with Defendant's motion are admissible. ....................................................................................................6

    V.    There Is No Evidence that Seven of the Works Were Infringed. ............................7

    VI.    Plaintiffs Elected and Are Limited to Statutory Damages. .....................................9

    VII.    If There Was Any Infringement, It Was Innocent. ................................................10

CONCLUSION ..............................................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Broadcast Music, Inc. v. Havana Madrid Restaurant Corp.*, 175 F.2d 77 (2d Cir. 1949) .............. 8

*Complex Sys., Inc. v. ABN Ambro Bank N.V.*, 979 F. Supp. 2d 456 (S.D.N.Y. 2013) ..................... 3

*Hagner v. U.S.*, 52 U.S. 427 (1932) ............................................................................................... 9

*Homkow v. Musika Records, Inc.*, 2008 WL 508597 (S.D.N.Y. Feb. 26, 2008) ............................ 9

*Jordan v. Sony BMG Music Entm't Inc.*, 354 F. App'x 942 (5th Cir. 2009) ............................... 3, 4

*Kwan v. Schlein*, 634 F.3d 224 (2d Cir. 2011) ........................................................................... 3, 4

*LAMCO v. The Archdiocese of San Juan*, 499 F.3d 32 (1st Cir. 2007) .......................................... 2

*LAMCO v. Spanish Broad. Systems, Inc.*, 866 F. Supp. 780 (S.D.N.Y. 1994) ............................... 9

*Marano v. Aaboe*, 2010 WL 6350785 (S.D.N.Y. Oct. 20, 2010) .................................................. 9

*Tempo Music, Inc. v. Myers*, 407 F.2d 503 (4th Cir. 1969) ........................................................ 10

**STATUTES AND RULES**

17 U.S.C. § 205 ........................................................................................................................ 2, 5

17 U.S.C. § 410 ............................................................................................................................. 7

17 U.S.C. § 504(c)(1) .................................................................................................................... 9

N.Y. Bus. Corp. Law § 1005 ........................................................................................................ 6

**TREATISES AND PERIODICAL MATERIALS**

30 A.L.R.2d 938 ............................................................................................................................ 6

1 MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT § 6.11 (2016) ...................... 4

CHARLES T. MCCORMICK, 2 MCCORMICK ON EVIDENCE § 249 (7th ed. 2013) ............................. 7

# PRELIMINARY STATEMENT

Plaintiffs' opposition to Defendant's summary judgment motion is a smokescreen designed to conceal the very point that entitles Defendant to summary judgment—no matter how many questions Plaintiffs purport to raise about ownership of the Fania Works[1] by Código Music ("Código"), the undisputed facts cannot support ownership of the works by *Plaintiffs*. Because Plaintiffs must prove ownership to prove infringement, their infringement claims with respect to the Fania Works fail.

Plaintiffs' brief completely fails to respond to two of the arguments that show that Plaintiffs cannot prove ownership—specifically: (i) that the statute of limitations bars Plaintiffs' claims with respect to the Fania Works, and (ii) that it is legally impossible for a single heir of Hector Lavoe to transfer ownership of Lavoe's works to Plaintiffs without the consent of Lavoe's other surviving heirs.[2] Thus, Defendant is entitled to summary judgment because of these undisputed points.

Finally, Plaintiffs' excuses notwithstanding, their failure to respond to requests to admit constitutes an admission that there is no evidence of infringement for seven of the works.[3] It is time for Plaintiffs' repeated discovery failures to have some consequences, and this is yet another reason that summary judgment is appropriate.

---

1. The Fania Works are *Abuelita*, *Aguanile*, *Ausencia*, *Mi Gente*, *Soy Sensacional*, *Mantecadito*, and *Arroz Con Bacalao*.

2. The works to which Plaintiffs claim title because of a purported transfer from Lavoe's heir are a subset of the Fania Works, specifically: *Abuelita*, *Aguanile*, *Ausencia*, and *Mi Gente*.

3. The works for which there is no evidence of performances (the "Non-Broadcasted Works") are *Aniversario*, *Soy Sensacional*, *Arroz Con Bacalao*, *Ausensia*; *La Malanga a/k/a La Malanga Brava*; *Mantecadito*; and *Chumalacantela / Maquinolandera*

# ARGUMENT

I. **The Fania Copyright Registration Certificates On Their Own Demonstrate that Plaintiffs Were Not Good-Faith Purchasers Without Notice of a Prior Transfer.**

Plaintiffs do not dispute—nor can they—that the Fania copyright registration certificates predate their purported acquisitions of the rights to the Fania Works by decades. It is therefore undisputed that Plaintiffs' purported acquisitions of the copyrights were *not* without notice of an earlier transfer, as required by 17 U.S.C. § 205(d), and Plaintiffs therefore cannot demonstrate ownership of the copyrights. *See* Def.'s Mem. of Law, ECF No. 116 ("Def. Br.") at 10-11; *LAMCO v. The Archdiocese of San Juan*, 499 F.3d 32 (1st Cir. 2007).

Plaintiffs' only arguments in response—(1) speculation that perhaps something unspecified happened to the copyrights during purported gaps in the chain of title from Fania to Código, and (2) questions about whether the songwriters really transferred their rights to Fania— are completely off-point. *See* Pl.'s Mem. of Law, ECF No. 124 ("Pl. Br.") at 3-4, 14-17. First, even if there were material questions about the chain of title from Fania to Código (which, as discussed in Section IV, *infra*, there are not), they would be irrelevant here because there is no evidence that the copyrights somehow made their way from Fania to *Plaintiffs*. Second, questions about the underlying songwriter agreements are immaterial because the copyright registration certificates on their own create a presumption that a Fania company was the original owner of each copyright, and Plaintiffs have not presented any evidence to rebut that presumption.[4] *See* Def. Br. 8-12. Thus, Plaintiffs cannot prove the ownership element of their infringement claim, and summary judgment is therefore appropriate as to the Fania Works.

---

4. Although Plaintiffs have produced their own copyright registration certificates from decades later, those certificates do not meet the requirements to create any presumption of validity, *see* Def. Br. 9-10, nor are they sufficient to rebut the presumption of validity established by Defendant's earlier-filed registration certificates. *See* Def. Br. 10-12. Moreover, to the extent Plaintiffs' attempts to rebut the validity of the Fania registration certificates depend on

## II. Plaintiffs Fail to Address the Statute of Limitations Bar to Their Claims.

Defendant is also entitled to summary judgment because Plaintiffs' infringement claims involving the Fania Works hinge on purported authorship disputes, which are time-barred. Def. Br. 11-12. Plaintiffs conspicuously fail to address this argument.

The claims are time-barred because the decades-old copyright registration certificates (along with other publicly available materials) put the world on notice of the authorship claims listed therein, and anyone who wished to make a contrary authorship claim (specifically the authors from whom Plaintiffs purportedly obtained the copyrights) needed to act long ago. *See* Def. Br. 11-12; *see also Complex Sys., Inc. v. ABN Ambro Bank N.V.*, 979 F. Supp. 2d 456, 472 (S.D.N.Y. 2013) ("Here, the duly issued copyright registration put the world on constructive notice of CSI's copyright in BankTrade 8.0. . . . Thus, as of 2008 when CSI obtained its copyright registration for BankTrade 8.0, IT was on constructive notice that if it intended to assert rights to ownership, it needed to act."); *Jordan v. Sony BMG Music Entm't Inc.*, 354 F. App'x 942, 946-47 (5th Cir. 2009) (plaintiffs' claim is time-barred due to constructive notice provided by earlier registration certificate).

The statute of limitations bars *all* of Plaintiffs' claims of ownership of the Fania Works (which are necessary to this infringement action), because they all depend on authorship that differs from the authorship listed in the original copyright registration certificates. Specifically,

- Plaintiffs' claims to *Arroz Con Bacalao* and *Mi Gente* rely on the purported authorship of Jenaro (Heny) Alvarez (Domenech) and Hector Lavoe, respectively, and neither is listed on the original certificates for those works; and

---

arguments that a Fania entity did not in fact own the copyrights at the time the registration certificates were issued, such claims are barred by the statute of limitations. *See Kwan v. Schlein*, 634 F.3d 224, 230 (2d Cir. 2011) (where a dispositive issue of ownership is time-barred, any attendant infringement claims fail).

3

- Plaintiffs' claims to the rest of the Fania Works depend on the purported *exclusive* authorship of Hector Lavoe (for *Abuelita*, *Aguanile*, and *Ausencia*), and Jenaro (Heny) Alvarez (Domenech) (for *Soy Sensacional* and *Mantecadito*), but the copyright registration certificates list Lavoe and Alvarez (Domenech) as *co-authors* with other songwriters. Plaintiffs cannot demonstrate ownership of the copyrights based on a purported transfer from only one of two co-authors listed. *See* 1 MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT § 6.11 (2016) ("one joint owner does not have the power to transfer the interest of another joint owner without the latter's consent").

Because Plaintiffs need to prove ownership of the Fania Works to prove infringement, and because Plaintiffs' claims of ownership depend on time-barred claims that the authors are not the same as those listed in the original registration certificates, Plaintiffs' claims must fail. *Kwan*, 634 F.3d at 230 ("Where . . . the ownership claim is time-barred, and ownership is the dispositive issue, any attendant infringement claims must fail.").

### III. Plaintiffs Did Not Obtain Any Rights from Hector Lavoe's Heir.

Plaintiffs' claims of ownership of *Abuelita*, *Aguanile*, *Ausencia*, and *Mi Gente*, which are based on a purported agreement with one of Hector Lavoe's heirs, also fail for reasons articulated in prior court rulings. First, as the District Court for the District of Puerto Rico held in 2002, one of Hector Lavoe's heirs could not have transferred ownership of Lavoe's works to Plaintiffs without the consent of Lavoe's other surviving heirs. Def. Br. 14-15. Plaintiffs did not even attempt to rebut this point.

4

70550909_1

Second, as the First Circuit held in 2003, reliance on a purported agreement with one of Lavoe's heirs fails where the works at issue had previously been transferred to Fania. Def. Br. 12-14. Although this case involves different Lavoe works than the First Circuit case, it involves the *exact same* purported transfer from Lavoe's heir to Plaintiffs. Plaintiffs have not pointed to any differences in the facts that would compel a different legal result.[5] Although they speculate about purported gaps in the chain of title, they point to nothing to explain how those purported gaps resulted in the transfer of the copyrights to *Plaintiffs*.[6]

Defendant is therefore entitled to summary judgment as to *Abuelita*, *Aguanile*, *Ausencia*, and *Mi Gente* on both of these independent grounds as well.

### IV. SBS Had a Valid License to Perform the Fania Works at All Relevant Times.

Defendant is also entitled to summary judgment as to the Fania Works for the independent reason that it had a valid license to perform the works from BMI (which has the right to license the works from Código). Plaintiffs' only arguments to the contrary are their speculation about the purported gaps in Código's chain of title, and questions about the admissibility of certain documents.[7] Both arguments are unavailing.

---

5. Plaintiffs note that the First Circuit in *Cardenas Fernandez* did not apply 17 U.S.C. § 205 (presumably because that argument was not raised by Plaintiffs in that case), but that statute does not help them for the reasons set forth in Section I, *supra*: Plaintiffs are *not* good-faith transferees without notice of a prior transfer.

6. As discussed further in Section IV, *infra*, Plaintiffs' theory that the works might possibly have reverted to the authors is completely unsupported and contrary to New York law. Moreover, the alleged gaps noted by Plaintiffs precede the *Cardenas Fernandez* litigation.

7. Although Plaintiffs apparently question whether Código is in fact a BMI affiliate, both *Código and BMI agree* that Código is and was a BMI affiliate during the relevant time. *See* Def.'s Statement of Facts, ECF No. 115 ("SF") ¶¶ 51-55. Plaintiffs cannot create a fact issue by speculating that BMI and Código are wrong about their own agreement.

**A. Plaintiffs' questions about Código's chain of title do not raise a material factual dispute.**

Plaintiffs claim that the dissolutions of certain Fania entities create gaps in the chain of title, but there is no legal support for their position. It is not unusual for a New York corporation to sell assets post-dissolution as part of the process of winding up its affairs. *See* N.Y. Bus. Corp. Law § 1005 (McKinney) ("After dissolution . . . [t]he corporation shall proceed to wind up its affairs, with power to . . . sell its assets for cash at public or private sale . . . ."). Thus, whether the transfers of the Fania Catalogue occurred before or after the dissolutions of the transferring entities does not affect the validity of the transfers.[8]

Moreover, regardless of *which* Fania entities owned the copyrights in the Fania Works decades ago, there is no question that the Fania Works were part of the Fania Catalogue, which was acquired by Emusica, and then by Código. *See* Livingston Reply Decl. ¶ 3. Thus, the questions Plaintiffs purport to raise regarding the chain of title to the Fania Works do not affect Defendant's right to summary judgment.[9]

**B. All relevant documents submitted with Defendant's motion are admissible.**

Plaintiffs' questioning of the admissibility of the documents submitted with the Declaration of Stuart Livingston and supporting summary judgment is also without merit.

---

8. Plaintiffs' suggestion that perhaps the copyrights reverted back to the songwriters is fanciful and unsupported. Even if the post-dissolution transfers did not occur, the assets of the dissolved companies would become the property of the companies' owner(s)—not the authors or Plaintiffs. *See* 30 A.L.R.2d 938 ("There is no question that, [upon dissolution], the remaining assets of the corporation belong to the stockholders in proportion to their stock interests.").

9. As discussed in Section I, *supra*, Plaintiffs' questions about the Fania songwriter agreements are immaterial because the copyright registration certificates alone are sufficient to show a Fania company as the original owner of the copyright. As for the fact that Fania Publishing appears on some documents while Fania Records appears on others, there is no dispute that the companies were commonly owned, and the variations on the certificates are not sufficient to call into question the inclusion of these works in the Fania Catalogue, which was later transferred to Código. *See* Livingston Decl. ¶ 18; Livingston Reply Decl. ¶ 3.

6
70550909_1

Mr. Livingston has extensive experience with and knowledge about the Fania Catalogue,[10] and he properly authenticated the documents that came from Código's business records. *See* Livingston Decl. (ECF No. 118) ¶ 2. The documents that came from BMI's business records were already properly authenticated by a BMI declarant, Mr. Garza. *See* Garza Reply Decl. (ECF No. 74) ¶¶ 7-11.

In addition, the documents are not hearsay. The Copyright Act itself provides that the registration certificates are automatically admissible. *See* 17 U.S.C. § 410. The agreements are offered for their legal effect and are not hearsay. *See* CHARLES T. MCCORMICK, 2 MCCORMICK ON EVIDENCE § 249 (7th ed. 2013). The other publicly available documents are offered not for their truth but to show that Plaintiffs were on notice of conflicting claims of ownership.[11]

These **admissible** documents show that there is no material dispute that Defendant had a valid license to perform the Fania Works, and summary judgment is therefore appropriate on this independent ground as well.

## V. There Is No Evidence that Seven of the Works Were Infringed.

As a result of Plaintiffs' violation of this Court's discovery order (ECF No. 90) and repeated failures to comply with their discovery obligations, the factual record is incapable of supporting their claim that the "Non-Broadcasted Works" were infringed. Despite the lack of

---

10. Prior to his role as President of Código, Mr. Livingston was employed by Emusica Publishing LLC d/b/a Fania Music ("Emusica"), which acquired the rights to the Fania Catalogue in 2005. *See* Livingston Reply Decl. ¶ 3. Mr. Livingston led Emusica's due diligence efforts with respect to the Fania Catalogue and the works that it contained. *Id.* Mr. Livingston later joined SE Music Acquisition, LLC, which became Código, and was President of that company at the time that it acquired the Fania Catalogue from Emusica. *Id.*

11. Plaintiffs also question one of the contracts—the asset purchase agreement pursuant to which Código purchased the Fania Catalogue, because it included only relevant excerpts and not a schedule of excluded assets. As Mr. Livingston has confirmed, however, the schedule contained no musical works and is irrelevant to the issues here. *See* Livingston Reply Decl. ¶ 5.

7

any actual record evidence that SBS played any of the Non-Broadcasted Works, Plaintiffs assert that summary judgment is improper because Raul Bernard, their founder and president, "personally listened to" and "diligently set down the date, time and SBS-owned station on which the [Non-Broadcasted Works] were broadcast," and is prepared to testify at trial. Pl. Br. 13. Even if such testimony were legally sufficient (it is not[12]), this begs two questions. First, where are the audio recordings of the actual broadcasts that Plaintiffs previously and repeatedly alleged to possess? *See* Def. Br. 17. Second, where are the alleged notes in which Mr. Bernard claims to have fastidiously logged the specific dates and times that the thirteen works were played over a nineteen-month period?[13] Neither was produced despite being specifically requested. Nor did Plaintiffs produce any other evidence to satisfy their burden of proving infringement.[14]

Plaintiffs also failed to provide *any* response to SBS's First Request for Admissions. The Admission Request specifically requested that Plaintiffs admit that each of the Non-Broadcasted Works was "never played on" SBS radio stations, and the Plaintiffs possessed "no evidence" that the Non-Broadcasted Works were played. Plaintiffs admit that they did not respond, but claim that the requests were never received, despite having been sent by email and U.S. Mail. *See*

---

12. *See Broadcast Music, Inc. v. Havana Madrid Restaurant Corp.*, 175 F.2d 77 (2d Cir. 1949) (refusing to accept the trial testimony of an "interested witness" in a copyright infringement action, whose original notes itemizing the alleged songs played were destroyed).

13. Plaintiffs had to amend their complaint twice to remove songs that they admitted were not actually played and the initial complaint (ECF No. 1) listed only 5 of the 13 works contained in the Third Amended Complaint (ECF No. 24). If Mr. Bernard's notes were as fastidious as claimed, Plaintiffs should have been able to identify the songs at the start of this action.

14. In an attempt to divert the Court's attention from their discovery misdeeds and lack of evidence, Plaintiffs endeavor to shift the burden of proof, arguing that SBS is "in the best position to determine what songs it has broadcast on which station at what time." Pl. Br. 13. Worse, Plaintiffs falsely claim that SBS "failed and refused to" disclose the play history of the Non-Broadcasted Works. *Id.* In truth, SBS produced records, but those records do not contain any evidence that the Non-Broadcasted Works were played.

Garcia-Tuñon Decl. ¶¶ 8-9.[15] Plaintiffs' failure to respond constitutes a binding admission that the Non-Broadcasted Works were never played.

Having had years to produce evidence, Plaintiffs cannot now rely solely on Mr. Bernard's "interested" testimony to overcome their evidentiary shortcomings, especially when SBS was unable to depose him as a result of Plaintiffs' failure to timely produce documents.

## VI. Plaintiffs Elected and Are Limited to Statutory Damages.

Although a plaintiff may elect to recover statutory damages instead of actual damages "at any time before final judgment is rendered," *see* 17 U.S.C. § 504(c)(1), once made, the election is irreversible. *LAMCO v. Spanish Broad. Systems, Inc.*, 866 F. Supp. 780, 782 (S.D.N.Y. 1994). Plaintiffs concede that they elected to pursue statutory damages at the outset of this matter, yet claim that: (a) this "early stage" election is non-binding, and (b) their subsequent amendment erased their election. These arguments are unavailing. There is no early stage exception to the rule against reversal.[16] Further, even if reversal were permitted, Plaintiffs failed to produce *any evidence* of actual damages during discovery despite numerous demands to do so. Plaintiffs claim that ACEMLA issues annual blanket licenses to radio stations. Pl. Br. 13. Yet, by their own admission, they did not produce a single one of those alleged licenses. Instead, Plaintiffs rely on a settlement agreement that SBS entered into *in 1994* in order to resolve a prior litigation

---

15. *See Hagner v. U.S.*, 52 U.S. 427, 429 (1932) ("The rule is well settled that proof that a letter properly directed was placed in a post office creates a presumption that it reached its designation in usual time and was actually received by the person to whom it was addressed.").

16. The statute expressly provides that the election may be made "at any time." Moreover, Plaintiffs' assertion that "none of the cases cited by SBS" involve an attempt to reverse a prior election with a corrected disclosure is incorrect. In *Homkow v. Musika Records, Inc.*, this Court held that the plaintiff was bound by a demand for statutory damages in his complaint. 2008 WL 508597, at *3-4 (S.D.N.Y. Feb. 26, 2008); *see also Marano v. Aaboe*, 2010 WL 6350785, at *3 (S.D.N.Y. Oct. 20, 2010) (plaintiff had no right to "revise its election after it is clearly made").

with Plaintiffs. The 1994 settlement is not evidence of actual damages, as it reflects neither what a willing licensee would pay nor the current fair market value. *See* Def. Br. 22.

## VII. If There Was Any Infringement, It Was Innocent.

Without any legal support, Plaintiffs claim that the parties' 1989 lawsuit, as well as SBS's general knowledge that Plaintiffs claim to possess rights in Spanish-language musical works preclude SBS from being an innocent infringer. Plaintiffs' argument misses the mark. SBS's reliance on its blanket licenses with BMI and ASCAP, whose websites collectively listed nine of the thirteen works as being part of their repertories, was justifiable. SBS had no knowledge that Plaintiffs claimed to possess rights in the specific works at issue, particularly given Plaintiffs' refusal to respond to SBS's repeated requests to identify the alleged musical works that were purportedly in Plaintiffs' catalogue. Having kept SBS in the dark, Plaintiffs cannot now claim SBS should have known better. *See Tempo Music, Inc. v. Myers*, 407 F.2d 503, 507 (4th Cir. 1969) (similar conduct constituted "unclean hands," warranting dismissal).

## CONCLUSION

For the foregoing reasons, partial summary judgment should be granted.

Respectfully submitted,

By: /s/ James C. Fitzpatrick

| | |
|---|---|
| James G. Sammataro | James C. Fitzpatrick |
| STROOCK & STROOCK & LEVINE LLP | HUGHES HUBBARD & REED LLP |
| Southeast Financial Center | One Battery Park Plaza |
| 200 South Biscayne Blvd. Suite 3100 | New York, New York 10004-1482 |
| Miami, Florida 33131 | Telephone: 212-837-6000 |
| Telephone: 305-358-9900 | james.fitzpatrick@hugheshubbard.com |
| jsammataro@stroock.com | |

*Attorneys for Defendant Spanish Broadcasting System, Inc.*