UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

LATIN AMERICAN MUSIC COMPANY,
INC., also known as LAMCO, and
ASOCIACIÓN DE COMPOSITORES Y
EDITORES DE MUSICA
LATINOAMERICANA, also known as
ACEMLA,

                        Plaintiffs,

     -v-

SPANISH BROADCASTING SYSTEM,
INC., and RAUL ALARCON, JR.,

                      Defendants.

No. 13-cv-1526 (RJS)
<u>OPINION AND ORDER</u>

---

<u>RICHARD J. SULLIVAN</u>, District Judge:

     Plaintiffs Latin American Music Company, Inc. ("LAMCO") and Asociación de Compositores y Editores de Musica Latinoamericana de Puerto Rico, Inc. ("ACEMLA") bring this action for copyright infringement against Defendant Spanish Broadcasting System, Inc. ("SBS").[1] Specifically, Plaintiffs allege that Defendant improperly broadcast thirteen songs owned by Plaintiffs on its Spanish-language radio stations without first obtaining licenses from Plaintiffs. On September 23, 2015, the Court denied Defendant's motion for partial summary judgment, which was filed prior to the completion of discovery, finding that genuine issues of material fact existed as to Defendant's contention that it had valid licenses to play certain of the songs. (Doc. No. 78.) On March 1, 2016, discovery in this matter closed. (Doc. No. 83.) Now before the Court

---

[1] By order dated June 17, 2014, the Court dismissed all claims against Defendant Raul Alarcon, Jr. (Doc. No. 44.)

is Defendant's second motion for partial summary judgment.   For the reasons that follow, Defendant's motion is granted in part and denied in part.

I. BACKGROUND

A.  Facts

Plaintiff LAMCO is a music publisher that administers copyrighted musical works of Puerto Rican and foreign composers; Plaintiff ACEMLA is an organization that licenses performance rights to musical works; and Defendant SBS is a radio broadcaster that owns and operates commercial radio and television stations across the United States and Puerto Rico.[2]  (Def. 56.1 ¶¶ 1–3.)  Background information on the parties and the basic facts underlying their dispute were set forth in the Court's September 23, 2015 opinion, and need not be repeated here.  (*See* Doc. No. 78.)  Accordingly, the following section focuses on the songs at issue on the instant motion, first discussing the songs as to which the parties dispute ownership, and second discussing those for which Defendant contends there is no evidence of infringement.

1.  Disputes Over Ownership

As to seven of the songs addressed by Defendant's motion – *Abuelita*, *Aguanile*, *Ausencia*, *Mi Gente*, *Soy Sensacional*, *Mantecadito*, and *Arroz con Bacalao* – the parties dispute whether Plaintiffs currently own the rights to these songs.  However, there is no dispute that one of two entities other than Plaintiffs – Fania Publishing Co., Inc. ("Fania Publishing") or Fania Records, Co. ("Fania Records") – registered copyrights for each of these songs in the 1970s, decades before

---

[2] The facts herein are drawn from the parties' Local Civil Rule 56.1 statements.  (Doc. No. 115 ("Def. 56.1"); Doc. No. 123 ("Pl. Counter 56.1").)  Unless otherwise noted, where only one party's 56.1 statement is cited, the other party does not dispute the fact asserted, has offered no admissible evidence to refute that fact, or merely objects to inferences drawn from that fact.  In resolving Defendant's motion, the Court has also considered Defendant's memorandum of law in support of its motion (Doc. No. 116 ("Mem.")), Plaintiffs' memorandum of law in opposition (Doc. No. 124 ("Opp'n")), Defendant's reply brief (Doc. No. 127 ("Reply")), and the documents submitted in support thereof.

any purported transfer of copyright ownership to Plaintiffs.  (Def. 56.1 ¶ 59.)  For convenience, the Court will refer to these seven songs as the "Fania Works."

### a. *Abuelita*, *Aguanile*, and *Ausencia*

In 1970 and 1971, Fania Publishing registered *Abuelita*, *Aguanile*, and *Ausencia* with the Copyright Office.  (Def. 56.1 ¶¶ 8, 13, 17.)  The registration certificate for each of these songs identifies Willie Colon and Hector Perez (sometimes under his pseudonym, Hector Lavoe) as the co-authors.  (*Id.* ¶¶ 9, 14, 18.)

Decades later, in 1999 and 2000, Plaintiffs recorded agreements pursuant to which one of Hector Lavoe's heirs purportedly transferred the rights in *Abuelita*, *Aguanile*, and *Ausencia* to Plaintiffs.  (Def. 56.1 ¶ 61; Pl. Counter 56.1 ¶ 6.)  Also in 1999, Plaintiffs registered copyrights for these three songs.  (Pl. Counter 56.1 ¶ 7.)

### b. *Mi Gente*

In 1975, Fania Publishing registered *Mi Gente* with the Copyright Office.  (Def. 56.1 ¶ 21.) The registration certificate lists "Johnny Pacheco" as the author of the work.  (*Id.* ¶ 22.)

Plaintiffs' alleged ownership of the rights to *Mi Gente* stems from the same agreements with the Lavoe heir discussed above.  (Def. 56.1 ¶ 61; Pl. Counter 56.1 ¶ 6.)  Plaintiffs recorded these agreements in 1999 and 2000, naming Hector Lavoe as the author of *Mi Gente* instead of Pacheco.  (Def. 56.1 ¶ 63; Pl. Counter 56.1 ¶ 6.)  As of Plaintiffs' response to Defendant's 56.1 statement, Plaintiffs' application to register *Mi Gente* remains pending.  (Def. 56.1 ¶ 65.)

### c. *Soy Sensacional* and *Mantecadito*

In 1973, Fania Records registered *Hommy* – a Latin opera that includes both *Soy Sensacional* and *Mantecadito* – with the Copyright Office.  (Def. 56.1 ¶¶ 27–28.)  The registration certificate lists "Larry Kahn a/k/a Larry Harlow" and "Jenaro Alvarez a/k/a Heny Alvarez" as the

co-authors of the work.  (*Id.* ¶ 29.)  In the same year, Fania Records registered *Soy Sensacional* and *Mantecadito* individually with the Copyright Office.  (*Id.* ¶¶ 31, 33.)

In 1996, Plaintiffs recorded with the Copyright Office agreements between themselves and "Jenaro Alvarez Domenech," pursuant to which Plaintiffs purportedly obtained rights to a number of Jenaro Alvarez Domenech's songs, including *Soy Sensacional* and *Mantecadito*.  (Pl. Counter 56.1 ¶ 1.)  In 2003, Plaintiffs registered copyrights to *Soy Sensacional* and *Mantecadito*, listing only Jenaro Alvarez Domenech as the author.  (Def. 56.1 ¶ 66; Pl. Counter 56.1 ¶ 2.)

### d. *Arroz con Bacalao*

In 1979, Fania Publishing registered *Arroz con Bacalao* with the Copyright Office.  (Def. 56.1 ¶ 39.)  The registration certificate lists "Johnny Alvarez" as the author of the work and indicates that Fania Publishing obtained ownership of the copyright via a songwriter's agreement with Alvarez.  (*Id.* ¶¶ 40–41.)

In 2003, Plaintiffs recorded purported transfers of *Arroz con Bacalao* from "Jenaro Alvarez Domenech" (also listed as "Genaro Alvarez Domenech" and "Jenaro Heny Alvarez").  (Pl. Counter 56.1 ¶ 3.)  The same year, Plaintiffs registered a copyright in *Arroz con Bacalao*; the certificate lists Jenaro Heny Alvarez as author.  (*Id.* ¶ 4.)

### 2. Alleged Infringing Activity

The parties also dispute whether there is any evidence that Defendant infringed four of the Fania Works – *Ausencia*, *Soy Sensacional*, *Mantecadito*, and *Arroz con Bacalao* – along with three other songs – *Aniversario*, *La Malanga* a/k/a *La Malanga Brava*, and *Chumalacantela / Maquinolandera*.  Plaintiffs allege that Defendant's radio stations played these songs, relying exclusively on the personal recollection of their president, Raul Bernard, who has submitted a declaration under penalty of perjury in which he states:

4

> In connection with my personal investigation of SBS in advance of filing the present lawsuit, I listened to SBS stations in an effort to determine whether SBS was broadcasting songs that were part of ACEMLA's catalog.   Paragraph 23 of the Third Amended Complaint in this case lists the dates, times, and SBS stations on which I heard the songs at issue in this lawsuit performed.

(Doc. No. 122, Bernard Decl. ¶ 12.)  Paragraph 23 of the third amended complaint in turn sets forth a list of the radio broadcasts Bernard recalls, identifying the specific dates, times, and radio stations for each. (Doc. No. 24, Third Am. Compl. ¶ 23.)  Bernard's recollections are not supported by any documentary evidence in the record;  although Plaintiffs previously represented to Defendant that they possessed audio recordings of the alleged unauthorized broadcasts, no such recordings were produced during discovery.  (Def. 56.1 ¶¶ 74–75.)

## B.  Procedural History

Plaintiffs initiated this action on March 7, 2013. (Doc. No. 1.)  On September 23, 2015, the Court denied a motion for partial summary judgment by Defendant, which was based on a limited discovery record, finding that genuine issues of material fact existed as to Defendant's contention that it had valid licenses to play the songs at issue. (Doc. No. 78.)  The parties completed discovery on March 1, 2016.  (Doc. No. 83.)

On April 22, 2016, Defendant filed the instant motion for partial summary judgment, in which Defendant argues that (1) Plaintiffs cannot prove infringement of the Fania Works because they cannot prove their ownership of the works and because Defendant possessed valid licenses to perform these songs, (2) Plaintiffs have not introduced any evidence of infringement of certain songs, (3) Plaintiffs are limited to statutory damages, and (4) Defendant qualifies as an "innocent infringer."  (Doc. Nos. 98, 114.)  The motion was fully briefed as of June 9, 2016.  (Doc. No. 127.)

## II.  LEGAL STANDARD

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment should be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  There is "no genuine dispute as to any material fact" where (1) the parties agree on all facts (that is, there are no disputed facts); (2) the parties disagree on some or all facts, but a reasonable fact-finder could never accept the nonmoving party's version of the facts (that is, there are no genuinely disputed facts), *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); or (3) the parties disagree on some or all facts, but even on the nonmoving party's version of the facts, the moving party would win as a matter of law (that is, none of the factual disputes are material), *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In determining whether a fact is genuinely disputed, the court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996).  Nevertheless, to show a genuine dispute, the nonmoving party must provide "hard evidence," *D'Amico v. City of N.Y.*, 132 F.3d 145, 149 (2d Cir. 1998), "from which a reasonable inference in [its] favor may be drawn," *Binder & Binder PC v. Barnhart*, 481 F.3d 141, 148 (2d Cir. 2007) (internal quotation marks omitted).  "Conclusory allegations, conjecture, and speculation," *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998), as well as the existence of a mere "scintilla of evidence in support of the [nonmoving party's] position," *Anderson*, 477 U.S. at 252, are insufficient to create a genuinely disputed fact.  A moving party is "entitled to judgment as a matter of law" on an issue if (1) it bears the burden of proof on the issue and the undisputed facts meet that burden; or (2) the nonmoving party bears the burden of proof on the issue and the moving party "'show[s]' – that is,

point[s] out . . . – that there is an absence of evidence [in the record] to support the nonmoving party's [position]." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

### III. DISCUSSION

#### A. Failure to Establish Ownership of the Fania Works

Defendant argues that, because Plaintiffs' infringement claims as to the Fania Works depend on assertions of ownership that are time-barred, Plaintiffs' corresponding infringement claims fail as a matter of law.  (Mem. at 11–12; Reply at 3–4.)  The Court agrees.[3]

To maintain an action for copyright infringement, "a plaintiff must establish '(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" *Kwan v. Schlein*, 634 F.3d 224, 229 (2d Cir. 2011) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)).  With respect to the first element, "a time-barred ownership claim will bar a claim for copyright infringement where . . . the infringement claim cannot be decided without adjudication of a genuine dispute as to the plaintiff's ownership of the copyright." *Id.* at 226. Specifically, claims under the Copyright Act "must be brought 'within three years after the claim has accrued,'" *id.* at 228 (quoting 17 U.S.C. § 507(b)), and "[a]n ownership claim accrues only once, when 'a reasonably diligent plaintiff would have been put on inquiry [notice] as to the existence of a right,'" *id.* (quoting *Stone v. Williams*, 970 F.2d 1043, 1048 (2d Cir. 1992)).  "Under this rubric, any number of events can trigger the accrual of an ownership claim, including an express assertion of sole authorship or ownership." *Id.* (internal quotation marks and brackets omitted).

---

[3] Because the Court finds that Plaintiffs' infringement claims are barred as a matter of law, it does not reach Defendant's alternative arguments for dismissal of those claims, including that Plaintiffs have submitted insufficient evidence of their ownership of the Fania Works and that Defendant possessed valid licenses to perform those works.

A copyright registration certificate "put[s] the world on constructive notice" of the facts stated in the certificate, including ownership of the copyright. *Complex Sys., Inc. v. ABN Ambro Bank N.V.*, 979 F. Supp. 2d 456, 472 (S.D.N.Y. 2013) (collecting cases); *see also Mason v. Jamie Music Pub. Co.*, 658 F. Supp. 2d 571, 587–88 (S.D.N.Y. 2009) (same).  Applying this rule in the context of the statute of limitations, courts in this District have concluded that a defendant's registration of a copyright in his own name is, at least under certain circumstances, an "express assertion" of adverse ownership that triggers the running of the statute.  *See, e.g.*, *Mahan v. Roc Nation, LLC*, No. 14-cv-5075 (LGS), 2015 WL 1782095, at *3 (S.D.N.Y. Apr. 15, 2015) (plaintiff's claims time-barred three years after defendant registered copyrights without naming plaintiff as a joint copyright holder), *aff'd*, 634 F. App'x 329 (2d Cir. 2016); *Ortiz v. Guitian Bros. Music Inc.*, No. 07-cv-3897 (RWS), 2008 WL 4449314, at *4 (S.D.N.Y. Sept. 29, 2008) (defendants' "act of registration should have put [plaintiff author] on notice of his claim" because plaintiff authored a movie score "with the knowledge that it was going to be used" in the movie and "should reasonably have anticipated that [d]efendants would seek to copyright" the movie); *Margo v. Weiss*, No. 96-cv-3842 (MBM), 1998 WL 2558, at *5 (S.D.N.Y. Jan. 5, 1998) ("Any injury plaintiffs suffered by virtue of not receiving credit as co-authors . . . first occurred . . . the year in which the song was written and the copyright certificate listing the lyricists as authors was filed."), *aff'd*, 213 F.3d 55 (2d Cir. 2000).

Here, there is no dispute that one of two entities other than Plaintiffs – Fania Publishing or Fania Records – registered copyrights for each of the Fania Works in the 1970s, decades before any purported transfer of copyright ownership to Plaintiffs.  (Def. 56.1 ¶ 59.)  Thus, whether the three-year statute of limitations began to run in the 1970s, when the songs at issue were first registered by a Fania entity, or in the late 1990s and early 2000s, when Plaintiffs filed their own

registrations for the same works, Plaintiffs' ownership claims to the Fania Works were clearly time-barred by the time Plaintiffs commenced this action in 2013.  Accordingly, since "a time-barred ownership claim will bar a claim for copyright infringement where . . . the infringement claim cannot be decided without adjudication of a genuine dispute as to the plaintiff's ownership of the copyright," *Kwan*, 634 F.3d at 226, Plaintiffs' claims of infringement with respect to the Fania Works fail as a matter of law.

### B.  Evidence of Infringement

Defendant also argues that it is entitled to summary judgment on Plaintiffs' infringement claims as to three other songs at issue in this litigation – *Aniversario*, *La Malanga* a/k/a *La Malanga Brava*, and *Chumalacantela* / *Maquinolandera* – on the ground that there is no admissible evidence that these works were actually played by Defendant.[4]  (Mem. at 16–18; Reply at 7–9.) The Court disagrees.

As noted above, Plaintiffs' president Raul Bernard has submitted a declaration stating under penalty of perjury that he heard the aforementioned songs played on Defendant's radio stations.  (Doc. No. 122, Bernard Decl. ¶ 12.)  Defendant argues that this testimony is not "legally sufficient" because Bernard has an interest in the litigation.  (Reply at 8.)  But the authority cited by Defendant for this proposition – *Broadcast Music v. Havana Madrid Restaurant Corp.*, 175 F.2d 77 (2d Cir. 1949) – is wholly inapposite.  In *Broadcast Music*, the Second Circuit simply held that a district court is not obligated to accept the truth of *trial testimony* from an "interested" witness merely because the testimony is "uncontradicted, unimpeached by anything appearing in the record, and not inherently improbable."  *Id.* at 79–81.  Obviously, that holding was limited to

---

[4] As noted above, Defendant also argues that there is no admissible evidence that it played four of the Fania Works: *Ausencia*, *Soy Sensacional*, *Mantecadito*, and *Arroz con Bacalao*.  However, the Court need not address that argument in light of its dismissal of Plaintiffs' infringement claims as to those songs.

considerations of trial testimony and does not dictate that a district court *must reject* interested testimony – particularly at the summary judgment stage, where the court must "view the evidence in the light most favorable to the party opposing summary judgment," "draw all reasonable inferences in favor of that party," and "eschew credibility assessments." *Weyant*, 101 F.3d at 854. Accordingly, the Court rejects Defendant's argument that Bernard's testimony is "legally insufficient" merely because Bernard is interested.

The Court also declines to find that Plaintiffs have admitted the absence of infringement by failing to respond to Defendant's request for such an admission served pursuant to Federal Rule of Civil Procedure 36.  While it is true that, under the rule, "[a] matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection," Fed. R. Civ. P. 36(a)(3), the rule also allows the Court to permit the withdrawal or amendment of an admission if (1) "it would promote the presentation of the merits of the action," and (2) "if the court is not persuaded that it would prejudice" the party who requested the admission, *id.* R. 36(b).  In light of the facts that (1) Plaintiffs' principal has offered a declaration that directly contradicts the admission sought by Defendant, (2) Plaintiffs' counsel denies having ever received the requests for admission (Doc. No. 121, Talcott Decl. ¶ 4), and (3) Defendant never asked the Court to compel a response to the requests during the discovery period when the issue could have been addressed in accordance with Rule 2.G of the Court's Individual Rules and Practices, the Court declines to find that Plaintiffs have admitted the absence of infringement for purposes of summary judgment.

Accordingly, since Bernard's testimony constitutes at least some evidence that Defendant played the songs at issue, the Court finds that Plaintiffs have introduced sufficient evidence of infringing activity to defeat summary judgment on this issue.  Defendant's additional challenges

to Bernard's testimony – such as the absence of notes or other documents corroborating Bernard's recollection (Reply at 8) – go to the weight of Bernard's testimony and are thus more appropriately raised at trial on cross examination.[5]

### C. Statutory Damages Versus Actual Damages

With respect to all of Plaintiffs' infringement claims alleged in the third amended complaint, the Court finds that Plaintiffs have elected statutory damages in lieu of actual damages by failing to introduce any evidence of actual damages.  Pursuant to the Copyright Act:

> the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than $750 or more than $30,000 as the court considers just.

17 U.S.C. § 504(c)(1).  Although this election "may be made at any time before final judgment is rendered, once a plaintiff elects statutory damages he may no longer seek actual damages." *Latin Am. Music Co. v. Spanish Broad. Sys., Inc.*, 866 F. Supp. 780, 782 (S.D.N.Y. 1994) (citing *Twin Peaks Prods., Inc. v. Publ'ns, Int'l, Ltd.*, 996 F.2d 1366, 1380 (2d Cir. 1993), and *Oboler v. Goldin*, 714 F.2d 211, 213 (2d Cir. 1983)).  "Additionally, if a plaintiff is unable to demonstrate actual damages, he is restricted to an award of statutory damages." *Id.* (collecting cases); *see also Pers. Publ'ns, Inc. v. Sagittarius Broadcasting Corp.*, No. 95-cv-4333 (DLC), 1996 WL 734902, at *2 (S.D.N.Y. Dec. 24, 1996) (same).

---

[5] Of course, the lack of notes supporting the details of radio plays alleged in the third amended complaint (and affirmed by Bernard under penalty of perjury) – including specific dates, radio stations, and to-the-minute times of thirteen radio broadcasts (*see* Doc. No. 24, Third Am. Compl. ¶ 23) – would require near-photographic memory on the part of Bernard.  Therefore, unless Bernard takes the stand and demonstrates savant-like abilities of recall, it is doubtful that a finder of fact will credit Bernard's testimony regarding when he heard the songs at issue played on Defendant's radio stations.

Defendant argues that Plaintiffs made an "irreversible" election of statutory damages by indicating in their January 10, 2014 initial disclosures that they would seek "statutory damages" (with no mention of actual damages).  (Mem. at 20 (citing Def. 56.1 ¶ 78).)  Although Plaintiffs "corrected" this disclosure a mere five days later (*see* Doc. No. 117-6, Fitzpatrick Decl. Ex. 6), Defendant argues that this purported correction was "void because Plaintiffs cannot reverse their prior election for statutory damages."  (Mem. at 20–21.)  None of the authority cited by Defendant supports a rule so strict that it would bar a plaintiff from recovering actual damages due to an election made in initial disclosures and corrected days later, particularly where Defendant has not articulated any prejudice.  Rather, the closest examples cited by Defendant involve elections made much later in litigation.  *See Marano v. Aaboe*, No. 05-cv-9375 (BSJ) (RLE), 2010 WL 6350785, at *4 (S.D.N.Y. Oct. 20, 2010) (plaintiff "elected to seek statutory damages instead of actual damages in his initial brief" in connection with an inquest on damages, which "came more than one year after a default judgment had been entered and more than six weeks after the conclusion of fact discovery on the issue of damages"), *adopted by* 2011 WL 1157553 (S.D.N.Y. Mar. 28, 2011); *Homkow v. Musika Records, Inc.*, No. 04-cv-3587 (KMW), 2008 WL 508597, at *4 (S.D.N.Y. Feb. 26, 2008) (plaintiff "clearly elected to pursue statutory damages" by requesting such damages in his amended complaint *and* repeating that request in a submission made in connection with an inquest on damages after entry of default judgment).  The Court sees no legal or logical basis for applying the "gotcha" rule envisioned by Defendant, and thus declines to find that Plaintiffs have "irreversibly" elected statutory damages by referencing such damages in their initial disclosures and quickly correcting that reference.

Nevertheless, Plaintiffs' failure to introduce any evidence of actual damages is a de facto election of statutory damages.  *See Latin Am. Music Co.*, 866 F. Supp. at 782.  In response to

Defendant's contention that "the discovery period closed with the record barren of *any* evidence of Plaintiffs' alleged damages" (Mem. at 22), Plaintiffs argue that "the best evidence of [P]laintiffs' actual damages" is a 1994 settlement agreement between the parties pursuant to which Defendant agreed to license broadcast rights to ACEMLA's catalog.  (Opp'n at 19; Pl. Counter 56.1 ¶ 8.)  Other than to note that Defendant complied with the agreement's terms, however, Plaintiffs offer no explanation as to how this settlement agreement demonstrates what a willing licensee (rather than one seeking to resolve a copyright infringement lawsuit) would agree to pay. (*See* Opp'n at 19.)  Significantly, Plaintiffs have submitted no evidence of what other licensees – whether radio stations or record companies – have paid to license the songs at issue.  Defendant, for its part, describes the 1994 settlement as nothing more than a "nuisance value" agreement to end Plaintiffs' lawsuit, pursuant to which Defendant "agreed to pay a total of $12,000 for two of its radio stations to acquire a blanket license to perform LAMCO's alleged repertory."  (Mem. at 22); *see On Davis v. The Gap, Inc.*, 246 F.3d 152, 167 (2d Cir. 2001) (holding that a copyright owner's "actual damages may include in appropriate cases the reasonable license fee on which a *willing* buyer and a willing seller would have agreed for the use taken by the infringer" (emphasis added)).  Because the Court finds that the settlement agreement is not probative of what Plaintiffs' actual damages might be, and because Plaintiffs have not even attempted to introduce additional evidence on this issue, the Court finds that Plaintiffs have elected statutory damages in lieu of actual damages.  *See Latin Am. Music Co.*, 866 F. Supp. at 782.

### D.  Innocent Infringer

Defendant also renews the argument from its last motion for summary judgment that, even if it did infringe Plaintiffs' copyrights, it is an "innocent infringer."  (Mem. at 23–25; Reply at 10.) Under the Copyright Act, when an "infringer sustains the burden of proving . . . that [it] was not aware and had no reason to believe that [its conduct] constituted an infringement of copyright, the

court in its discretion may reduce the award of statutory damages to a sum of not less than $200." 17 U.S.C. § 504(c)(2). "[E]ven for an innocent defendant," however, "the court may still choose to award damages up to the [statutory] maximum amount." 5 *Nimmer on Copyright* § 14.04(B)(2)(a).

As explained in the Court's September 23, 2015 summary judgment opinion, it is the defendant's burden to establish that its infringement was innocent. *D.C. Comics, Inc. v. Mini Gift Shop*, 912 F.2d 29, 35 (2d Cir. 1990). To meet that burden, an infringer must show (1) a subjective good faith belief in the innocence of its conduct that was (2) objectively reasonable under the circumstances. *See* 5 *Nimmer on Copyright* § 14.04(B)(2)(a); *see also John Wiley & Sons, Inc. v. Book Dog Books, LLC*, No. 13-cv-816 (WHP), 2016 WL 5092593, at *4 (S.D.N.Y. Sept. 19, 2016) (citing *D.C. Comics v. Mini Gift Shop*, 912 F.2d 29, 35 (2d Cir. 1990)). Thus "innocent" intent is more than just the absence of willful infringement. As the Second Circuit has stated:

> It is plain that "willfully" infringing and "innocent intent" are not the converse of one another. Thus, it is possible in the same action for a plaintiff not to be able to prove a defendant's willfulness, and, at the same time, for the defendant to be unable to show that it acted innocently.

*Fitzgerald Publ'g Co. v. Baylor Publ'g Co.*, 807 F.2d 1110, 1115 (2d Cir. 1986).

Here, Defendant essentially argues that, because the Court's September 23 opinion held that Defendant possessed valid licenses from BMI and ASCAP (*see* Doc. No. 78 at 6), Defendant is protected as an innocent infringer. But Defendant appears to ignore the Court's determination in the same opinion that it was unable to conclude whether Defendant was an innocent infringer without a fuller record. (*Id.* at 9.) On the instant motion, Defendant points to no additional evidence that would satisfy Defendant's burden to establish its subjective good faith and objective reasonableness. *See* 5 *Nimmer on Copyright* § 14.04(B)(2)(a). Indeed, although the Court's September 23 opinion noted that "evidence of the BMI and ASCAP website listings at the time of

the alleged infringement is likely to go a long way towards establishing Defendant's innocent infringement defense with respect to damages" (Doc. No. 78 at 9), Defendant's motion identifies no evidence in the record regarding listings on the BMI and ASCAP websites. Accordingly, since this is an affirmative defense that Defendant must prove, the Court again rejects Defendant's innocent infringer defense for lack of evidence.

IV. CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED THAT Defendant's motion for partial summary judgment is granted in part and denied in part. Specifically, Plaintiffs' infringement claims as to *Abuelita*, *Aguanile*, *Ausencia*, *Mi Gente*, *Soy Sensacional*, *Mantecadito*, and *Arroz con Bacalao* are dismissed; as to the remaining six songs for which infringement is alleged in the third amended complaint, Plaintiffs may only recover statutory damages for any infringement, and in all other respects, Defendant's motion is denied. The Clerk of the Court is respectfully directed to terminate the motion pending at docket number 114.

Pursuant to the parties' election in the October 13, 2015 case management plan and scheduling order, this case is to be tried by the Court. (Doc. No. 83.) IT IS FURTHER ORDERED THAT a bench trial in this matter shall commence on Monday, April 17, 2017 at 9:30 a.m. in Courtroom 905 of the Thurgood Marshall United States Courthouse, 40 Foley Square, New York, New York. Trial shall begin with the testimony of Raul Bernard. The Court will set deadlines for pretrial submissions in a forthcoming order.

SO ORDERED.

Dated:      February 6, 2017
            New York, New York

RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 2/6/17

15