UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LATIN AMERICA MUSIC COMPANY, INC.,
*et al.*,

                          Plaintiffs,

-v-

SPANISH BROADCASTING SYSTEM, INC.,

                          Defendant.

No. 13-cv-1526 (RJS)
OPINION AND ORDER

RICHARD J. SULLIVAN, District Judge:

    Plaintiffs Latin American Music Company, Inc. ("LAMCO") and Asociación de Compositores y Editores Musica Latinoamericana de Puerto Rico, Inc. ("ACEMLA") bring this action for copyright infringement against Spanish Broadcasting System, Inc. ("SBS"). Having presided over a bench trial, the Court issues the following findings of fact and conclusions of law in accordance with Federal Rules of Civil Procedure 52(a) and (c). For the reasons set forth below and stated on the record at the April 17, 2017 trial, the Court finds that Plaintiffs have failed to meet their burden of proof with respect to all of their claims. Accordingly, the Court enters judgment for Defendant.

I. BACKGROUND AND PROCEDURAL HISTORY

    The Court assumes the parties' familiarity with the facts and procedural history of this case, which are detailed in previous opinions and orders issued by this Court. (*See, e.g.*, Doc. Nos. 44, 78, 130.) On March 7, 2013, Plaintiffs filed a complaint alleging that Defendant improperly broadcast thirteen songs on its Spanish-language radio stations without first obtaining licenses from Plaintiffs. (Doc. No. 1.) On September 23, 2015, the Court denied Defendant's motion for partial summary

judgment, finding that genuine issues of material fact existed as to Defendant's contention that it had valid licenses to play certain of the songs. (Doc. No. 78.) On March 1, 2016, discovery in this matter closed. (Doc. No. 83.) Thereafter, the Court granted in part and denied in part Defendant's second motion for summary judgment, finding that material issues of fact existed with regard to Plaintiffs' allegations of infringement with regard to six songs: *Aniversario*, *Arrecotin-Arrecotan*, *Chumalacantela / Maquinolandera*, *La Malanga a/k/a La Malanga Brava*, *Tora Mata*, and *Vaso en Colores* (the "Songs"). (Doc. No. 130.) The Court noted, however, that the only evidence presented that Defendant had actually played the Songs on its radio stations was an affirmation from Luis Raul Bernard, and that "unless Bernard takes the stand and demonstrates savant-like abilities of recall, it is doubtful that a finder of fact will credit Bernard's testimony regarding when he heard the songs at issue played on Defendant's radio stations." (*Id.* at 11 n.5.) As part of that order, the Court scheduled a trial to commence on April 17, 2017.

On April 4, 2017, the day before the final pre-trial conference, Plaintiffs moved to adjourn the trial and informed the Court that, on March 24, 2017, both Plaintiffs had filed petitions for bankruptcy in the United States Bankruptcy Court for the District of Puerto Rico. (Doc. No. 141.) The Court denied the request, since the automatic stay provision of the United States Bankruptcy Code "'is applicable only to proceedings against' a debtor." (Doc. No. 142 (quoting *Koolik v. Markowitz*, 40 F.3d 567, 568 (2d Cir. 1994)).)

A bench trial commenced on April 17, 2017, and was conducted in accordance with the Court's Individual Rules for non-jury proceedings. Specifically, the parties submitted affidavits containing the direct testimony of their respective witnesses, as well as copies of all exhibits that they intended to offer as evidence at trial. The parties were then invited to call those witnesses whom they wished to cross-examine at trial. In all, eight witnesses submitted affidavits to the Court − one for the Plaintiffs and

seven for the Defendant. After Plaintiffs' sole witness, Bernard, testified and was cross-examined, Plaintiffs rested their case. Defendant then moved for a judgment on partial findings pursuant to Federal Rule of Civil Procedure 52(c), and the Court granted the motion.

## II. LEGAL STANDARD

To prevail on their claims, Plaintiffs were required to present evidence in support of the allegations set forth in the Third Amended Complaint and prove those allegations by a preponderance of the evidence. "The burden of showing something by a preponderance of the evidence . . . simply requires the trier of fact to believe that the existence of a fact is more probable than its nonexistence." *Metro. Stevedore Co. v. Rambo*, 521 U.S. 121, 137 n.9 (1997). As the finder of fact, the Court is entitled to make credibility findings about the witnesses and testimony and to draw reasonable inferences from the evidence presented. *See Merck Eprova AG v. Gnosis S.p.A.*, 901 F. Supp. 2d 436, 448 (S.D.N.Y. 2012), *aff'd*, 760 F.3d 247 (2d Cir. 2014).

Under Rule 52(c), a court presiding over a bench trial may "enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue" if "a party has been fully heard on [that] issue." Fed. R. Civ. P. 52(c). In other words, Rule 52(c) applies where a defendant seeks judgment in a bench trial on the ground that "upon the facts and the law the plaintiff ha[s] not shown any right to relief." *Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.*, 118 F.3d 955, 971 (2d Cir. 1997). A defendant's Rule 52(c) motion may be granted when "the plaintiff has failed to make out a prima facie case or where the plaintiff has made out a prima facie case but the court determines that a preponderance of the evidence goes against the plaintiff's claim." *Wechsler v. Hunt Health Sys., Ltd.*, 330 F. Supp. 2d 383, 433 (S.D.N.Y. 2004) (internal quotation marks omitted). Under Rule 52(c), "'the court does not consider the evidence in the light most favorable to the non-moving party,' but rather weighs the evidence, resolves any conflicts and

3

determines for itself where the preponderance of evidence lies." *Pal v. N.Y. Univ.*, No. 06-cv-5892 (PAC), 2013 WL 4001525, at *7 (S.D.N.Y. Aug. 6, 2013), *aff'd*, 583 F. App'x 7 (2d Cir. 2014) (quoting *Wechsler*, 330 F. Supp. 2d at 433.) Here, in order to maintain an action for copyright infringement, Plaintiffs were required to show "'(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" *Kwan v. Schlein*, 634 F.3d 224, 229 (2d Cir. 2011) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)).

### III. FINDINGS OF FACT[1]

LAMCO is a music publisher incorporated in the State of New York with its principal place of business in San Juan, Puerto Rico. (Bernard Aff. ¶ 2.) ACEMLA is a music performance licensing society incorporated in Puerto Rico with its principal place of business in San Juan, Puerto Rico. (*Id.* ¶ 3.) ACEMLA licenses and administers the performance rights subject to the copyrights owned and registered by LAMCO. (*Id.* ¶ 4.) Luis Raul Bernard is the president of LAMCO and ACEMLA. (*Id.* at ¶ 1.) Defendant SBS is a radio broadcaster incorporated in Delaware with its principal place of business in Florida. (Salas Aff. ¶ 3.) SBS owns various radio stations in New York and Puerto Rico. (*Id.* ¶ 4.)

In his affidavit submitted as direct testimony in this case, Bernard stated that LAMCO is "the owner" of the copyright registrations covering the Songs. (Bernard Aff. ¶¶ 10, 12, 14, 16, 18.) However, during Bernard's cross-examination, he acknowledged that neither LAMCO nor ACEMLA actually owns the rights to the disputed songs. First, Defendant introduced a document filed by LAMCO and ACEMLA in another case, which states that the registered works listed in the LAMCO and ACEMLA catalogue had not been "owned by LAMCO or ACEMLA since June 2003," and that "such non-

---

[1] These factual findings are derived from the Stipulations of Facts listed on pages 1–4 and 5–13 of the parties' Joint Pretrial Order (Doc. No. 147), the April 17, 2017 trial transcript ("Tr."), witness affidavits, and Defendant's exhibits ("DX"). To the extent that any finding of fact reflects a legal conclusion, it shall to that extent be deemed a conclusion of law, and vice versa.

4

exclusive rights are only controlled through [a] sub-publishing agreement." (Defendant Exhibit ("DX") 38 at 6.) Upon reviewing that document, Bernard acknowledged that Dolores Vera, his sister-in-law and a LAMCO employee, actually owns the rights to the songs, not LAMCO. (Tr. 24:17–25:16.) Second, on cross-examination, Bernard authenticated a Certificate of Recordation in the Copyright Office with two attached agreements: a Transfer and Sale of Copyright Assets and a Sub-Publishing Agreement, both bearing Mr. Bernard's signature. (DX 39; Tr. 26:14–27:4.) The transfer agreement indicates that LAMCO transferred its rights in all of the musical compositions and other copyrights that it owned to Ms. Vera on July 7, 2002. (DX 39 at 3; Tr. 24:7–10, 24:15–19.) In his testimony, Bernard again acknowledged that the document transferred all of LAMCO's interests in its copyrights to Ms. Vera. (Tr. 27:8–10.) Third, Defendant introduced filings from LAMCO's bankruptcy in the United States Bankruptcy Court for the District of Puerto Rico, which Bernard authenticated during cross-examination (Tr. 101:24) and which bear his signature, indicating that LAMCO owns no intellectual property beyond its logo, which LAMCO valued at $1.00. (DX 40 at 11.)

On re-direct, Bernard emphasized that paragraph 8 of the Sub-Publishing Agreement grants LAMCO "the non-exclusive right to enforce and protect [Ms. Vera's] rights in the [Songs]." (DX 39 at 8; Tr. 131:17–132:3.) Bernard testified that it was his understanding that, pursuant to Paragraph 8, "after the rights were transferred to Ms. Vera, all of the rights were reassigned again to enable [LAMCO] to actually litigate" copyright claims. (Tr. 132:6–9.) However, as Defendant emphasized during cross-examination, the Sub-Publishing Agreement also provides that if LAMCO "becomes insolvent, or any insolvency, bankruptcy or composition proceeding is commenced against Publisher and not dismissed within thirty (30) days . . . this agreement shall automatically be deemed terminated by [Ms. Vera] for good cause." (DX 39 at 11; Tr. 36:12–37:1.) Bernard testified that, when LAMCO filed for bankruptcy in March of 2014, the bankruptcy lasted for more than 30 days – "almost a year." (Tr. 138:17–21.) The

5

language of the sub-publishing agreement thus further demonstrates that LAMCO did not actually own the copyrights after 2014.

With regard to the actual infringement alleged by Plaintiffs, Bernard's affidavit stated that he personally heard each of the Songs at a particular time and on a particular day on one of SBS's radio stations. (Bernard Aff. ¶¶ 19–24.) Specifically, Bernard stated that he heard the following songs on the following stations on the following dates at the following times:

*Vaso en Colores* on 97.9 FM ("La Mega") on June 18, 2012 at 12:00 a.m.;

*Tora Mata* on Z93-FM ("La Zeta") on August 8, 2013 at 4:34 p.m.;

*Arrecotin-Arrecotan* on La Zeta on August 11, 2013 at 10:15 a.m.;

*Aniversario* on La Zeta on August 11, 2013 at 11:00 a.m.;

*La Malanga a/k/a La Malanga Brava* on La Zeta on August 12, 2013 at 5:40 p.m.; and

*Chumalacantela / Maquinolandera* on La Zeta on August 20, 2013 at 5:12 p.m.

At trial, Bernard testified that it was his practice to "pick and choose" from the 108 radio stations that did not have a license to play LAMCO's music, listen to that radio station, and record instances of infringement with a portable digital audio recorder.[2] (Tr. 42:11–43:21.) Bernard testified that while he does not have the approximately 45,000 songs in the LAMCO catalogue memorized, when he listens to the radio and hears a song he believes to be "our song, we record it, and then we research to see if it's our song." (*Id.* 45:21–22.)

However, during his cross-examination, Bernard could not recall even basic details about the

---

[2] The recordings that Bernard claims to have made of the alleged infringement were never produced in discovery, and Plaintiffs indicated to the Court that they did not exist or were destroyed prior to discovery in this case. (Doc. No. 89, Doc. No. 148 9:21–10:7.) Indeed, it was not until moments before the commencement of trial on April 17, 2017 that Plaintiffs' counsel announced, for the first time, that Bernard had actually retained copies of the recordings in question. Not surprisingly, the Court excluded the admission of these recordings – if they really existed – as evidence at trial for reasons detailed in the Court's separate order to show cause. (*See* Doc. No. 150.)

circumstances under which he heard the Songs. For example, on cross-examination, defense counsel presented Bernard with the operative complaint in this matter, the Third Amended Complaint, which, contrary to Bernard's trial affidavit, lists June 13, 2012, as opposed to June 18, 2012, as the day Bernard allegedly heard La Mega play the song *Vaso en Colores* in New York. (Doc. No. 24 at 8; Tr. 56:9–57:3.) When asked which date he heard the song, Bernard replied that it "could be both." (Tr. 57:6.) When pressed, Bernard testified that he heard and recorded the song being played on La Mega both on June 13 and on June 18 at exactly midnight, but that he did not have a distinct recollection of either day. (*Id.* 57:25–58:11.) Moments later, he claimed to have a distinct recollection that the song was played on La Mega on *both* days. (*Id.* 58: 15–19.) Incredibly, Plaintiffs' counsel willingly conceded that "it is probably open to question whether these songs were recorded on these specific dates and times." (*Id.* 163:13–15.) In addition to his discrepancies with regard to what days he heard the Songs played, Bernard could not recall other important details. For example, he could not say which day of the week he heard each song (*id.* 46:23, 81:13, 82:24), which version of each song he heard (*id.* 47:8–9, 74:11–76:1, 80:10–11, 84:12, 87:13), or even whether the artist he heard performing the song was male or female (*id.* 75:3–76:1). Bernard was also not sure whether he heard the whole song or just a "snippet" of the song being played for promotional purposes. (*Id.* 59:18–19, 62:5–18, 76:20, 79:1–3.)

In sum, Bernard's testimony during cross-examination regarding LAMCO's ownership of the Songs directly contradicted the statements he supplied as direct testimony for trial via sworn affidavit. Bernard also demonstrated considerable difficulty recalling the circumstances of the alleged infringement. Moreover, Bernard answered questions evasively and contradicted himself several times during cross-examination. Bernard also contradicted statements made by his own attorney concerning the existence and preservation of the recordings he claimed to have made. (*See* Tr. 55:1–11, 61:23–62:3, 72:1–13, 149:9–150:14, 154:14–155:1.) Accordingly, the Court has little trouble concluding that

7

none of Bernard's testimony, whether in his affidavit submitted as direct testimony or during cross-examination, is credible, and that Bernard was basically making up his testimony as he went along.

IV. CONCLUSIONS OF LAW

A. Jurisdiction

The Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a). Venue in the Southern District of New York is proper under 28 U.S.C. § 1391.

B. Copyright Infringement

The Copyright Act of 1976 (the "Act") extends copyright protection to "original works of authorship fixed in any tangible medium of expression" such as "musical works, including any accompanying words." 17 U.S.C. § 102(a). Section 501 of the Act provides the owner of a copyright with a cause of action for infringement against "[a]nyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 118." 17 U.S.C. § 501(a). As noted above, in order to sustain a claim for copyright infringement, "a plaintiff must establish '(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" *Kwan v. Schlein*, 634 F.3d 224, 229 (2d Cir. 2011) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)). With regard to the first element, "ownership of a valid copyright," "plaintiffs must prove ownership not only as an element of a copyright infringement claim, but also to assert their standing to bring suit." *Urbont v. Sony Music Entm't*, 831 F.3d 80, 88 n.6 (2d Cir. 2016); *see also Eden Toys, Inc. v. Florelee Undergarment Co.*, 697 F.2d 27, 32 (2d Cir. 1982) (noting that only "(1) owners of copyrights, and (2) persons who have been granted exclusive licenses by owners of copyrights" have standing to sue for copyright infringement (citing 17 U.S.C. § 501(b))); *ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 944 F.2d 971, 980 (2d Cir. 1991) (third parties are not permitted to sue on a copyright holder's behalf).

With regard to the second element of a cause of action for copyright infringement, "copying of constituent elements of the work that are original," "the word 'copying' is shorthand for the infringing of any of the copyright owner's five exclusive rights described" in Section 106 of the Act, namely, to "reproduce, perform publicly, display publicly, prepare derivative works of, and distribute copies of, his copyrighted work." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 117 (2d Cir. 2010) (quoting *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001)). "[A] copyright plaintiff bears the burden of proving infringement." *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962, 1976 (2014); *see also Sorenson v. Wolfson*, 96 F. Supp. 3d 347, 362 (S.D.N.Y. 2015) ("the burden to prove infringement remains with the plaintiff" even when it has produced a valid certificate of registration).

Plaintiffs have not met their burden of proving infringement because they failed to show, by a preponderance of the evidence, either of the elements of copyright infringement: (1) that they are the valid owners or exclusive licensees of the copyrights to the Songs, and (2) that Defendant's radio stations played the Songs on the dates and times alleged. Bernard's testimony that LAMCO is "the owner" of the copyright registrations covering the Songs is the only evidence Plaintiffs introduced to satisfy the first element. (Bernard Aff. ¶¶ 10, 12, 14, 16, 18.) However, Bernard provided only conclusory testimony, which was directly rebutted and acknowledged to be incorrect by Bernard himself on cross-examination. Bernard plainly admitted that his sister-in-law, not LAMCO, owns the rights to the songs, which were transferred to her in 2002. (Tr. 24:17–25:16.) And while Plaintiffs argued that the Sub-Publishing Agreement transferred certain of Ms. Vera's rights back to LAMCO, including the right to sue, they did not prove that the right to sue is equivalent to being an owner or exclusive licensee of the Songs. Either way, Plaintiffs failed to rebut the claim that the Sub-Publishing Agreement automatically terminated in 2014 when LAMCO entered bankruptcy proceedings that lasted for more than 30 days. (*See* DX 39 at 11; Tr. 128:17–21.) Plaintiffs have clearly failed to demonstrate, by a preponderance of

9

the evidence, that they are the valid owners or exclusive licensees of the copyrights to the Songs.

With regard to evidence of infringement, the only evidence Plaintiffs presented that the Defendant actually played the Songs in question was the testimony of Bernard. But, as noted above, the Court rejects Bernard's testimony as incredible, self-contradictory, implausible, and evasive. Bernard's testimony, standing alone, is therefore not sufficient to demonstrate, by a preponderance of the evidence, that Defendant infringed on Plaintiffs' rights under the Act.

Thus, in light of Plaintiff's failure to prove either element of their copyright infringement claim, the Court grants Defendant's motion for a judgment on partial findings pursuant to Rule 52(c).

## V. Conclusion

Accordingly, for the reasons stated above and on the record after Plaintiffs rested at trial, the Court concludes that Plaintiffs have failed to carry their burden of proof and finds in favor of Defendant Spanish Broadcasting System, Inc. The Clerk of the Court is respectfully directed to enter judgment for Defendant and to close this case.

SO ORDERED.

Dated: May 17, 2017
New York, New York

_____
RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE