UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

LATIN AMERICAN MUSIC COMPANY, INC., a/k/a LAMCO, and ASOCIACIÓN DE COMPOSITORES Y EDITORES DE MUSICA LATINOAMERICANA, a/k/a ACEMLA,

Plaintiffs,

-v-

SPANISH BROADCASTING SYSTEM, INC.,

Defendant.

No. 13-cv-1526 (RJS)
ORDER

---

RICHARD J. SULLIVAN, Circuit Judge:

Plaintiffs Latin American Music Company, Inc. ("LAMCO") and Asociación de Compositores y Editores Musica Latinoamericana de Puerto Rico, Inc. ("ACEMLA," and together with LAMCO, "Plaintiffs") brought this action for copyright infringement against Spanish Broadcasting System, Inc. ("SBS" or "Defendant"). On May 17, 2017, after presiding over a bench trial, the Court concluded that Plaintiffs failed to carry their burden of proof and directed entry of judgment in favor of Defendant. (Doc. Nos. 160, 161.) On October 4, 2018, the Second Circuit affirmed the Court's judgment. *See Latin Am. Music Co. v. Spanish Broad. Sys., Inc.*, 738 F. App'x 722, 724 (2d Cir. 2018). Now before the Court is Defendant's motion for attorneys' fees pursuant to 17 U.S.C. § 505, or alternatively pursuant to Federal Rules of Civil Procedure 11, 26, and 37 and the Court's inherent authority. For the reasons set forth below, the Court grants Defendant's motions and concludes that Defendant is entitled to $845,040.95 in attorneys' fees and costs.

I. BACKGROUND

The Court presumes the parties' familiarity with the underlying facts and procedural history of this case, and offers only a short summary of each for purposes of this motion.[1]

Plaintiffs initiated this action on March 7, 2013, alleging that Defendant impermissibly broadcast thirteen copyrighted songs on its Spanish-language radio stations without first obtaining licenses from Plaintiffs. (Doc. No. 1 ("Complaint" or "Compl.").) After discovery, the Court granted in part Defendant's motion for summary judgment, finding that Plaintiffs' infringement claims for seven songs ("the Fania works") were time barred, but that material issues of fact existed with respect to Plaintiffs' allegations of infringement as to six other songs. (Doc. No. 130.) The Court noted that the only evidence suggesting that Defendant had actually played the songs on its radio stations was an affirmation from Plaintiffs' president, Raul Bernard, who claimed to recall the specific times and dates that he heard Defendant's stations broadcasting the songs in question; the Court remarked that "unless Bernard takes the stand and demonstrates savant-like abilities of recall, it is doubtful that a finder of fact will credit Bernard's testimony regarding when he heard the songs at issue played on Defendant's radio stations." (*Id.* at 11 n.5.) The Court scheduled a bench trial to commence on April 17, 2017. (*Id.* at 15.)

Prior to trial, Defendant filed a motion *in limine* to exclude any recordings or logs relating to the dates and times of the alleged infringement. (Doc. No. 137 at 4.) Defendant argued that Plaintiffs claimed in their January 10, 2014 initial disclosures that Plaintiffs possessed recordings Bernard made of Defendant's alleged infringement (the "Recordings"). (*See* Doc. No. 137 at 5;

---

[1] In deciding this motion, the Court has considered Defendant's memorandum of law in support of its motion (Doc. No. 206 ("Def. Mem.")), Plaintiffs' memorandum of law in opposition (Doc. No. 207 ("Pl. Mem."), Defendant's reply (Doc. No. 211 ("Reply")), Defendant's supplemental memorandum of law requesting fees in connection with the appeal (Doc. No. 215 ("Def. Supp.")), Plaintiffs' supplemental memorandum of law in opposition (Doc. No. 218 ("Pl. Supp.")), Defendant's supplemental reply (Doc. No. 219 ("Supp. Reply")), and the exhibits attached thereto.

Doc. Nos. 137-1, 137-2.) Defendant requested production of the Recordings, but they were never produced by Plaintiffs. (*See* Doc. No. 137 at 8.) At the final pretrial conference, the Court heard argument on the motion *in limine*, and Plaintiffs represented that the Recordings had not been produced because they were destroyed by a "ransomware" attack. (Doc. No. 148 ("Final Conf. Tr.") at 9–12; *see* Doc. No. 90.) The Court expressed serious doubts that any such Recordings ever existed, but in any event, granted Defendant's motion to exclude any recordings or logs of the alleged infringement should they in fact exist. (Final Conference Tr. at 12–13; *see also* Doc. No. 144.) On the day of trial, Plaintiffs' then-attorney made a corrective disclosure to the Court in which he revealed for the first time that Bernard did in fact possess the Recordings. (Doc. No. 156 ("Trial Tr.") at 2:16–23.) Plaintiffs' then-attorney nevertheless stated that he did not intend to introduce the Recordings at trial. (*Id.* at 2:20–21.)

After trial, the Court granted Defendant's motion for a judgment on partial findings pursuant to Federal Rule of Civil Procedure 52(c) and entered judgment in favor of Defendant, concluding that Plaintiffs failed to prove ownership of the songs, and that Bernard's testimony – which was the only evidence of infringement – was "incredible, self-contradictory, implausible, and evasive." (Doc. No. 160 at 10.) Defendant subsequently filed a motion for attorneys' fees under 17 U.S.C. § 505. (Doc. No. 170.) The Second Circuit ultimately affirmed this Court's judgment because Plaintiffs failed to challenge the Court's factual findings in its opening brief. *Latin Am. Music Co.*, 738 F. App'x. at 724. On November 30, 2018, Defendant filed a supplemental motion for appellate attorneys' fees. (Doc. No. 215.) Plaintiffs responded on December 14, 2018 (Doc. No. 218), and Defendant filed a reply on December 21, 2018 (Doc. No. 219).

II. ENTITLEMENT TO ATTORNEYS' FEES

A. Legal Standard

Section 505 of the Copyright Act provides that a district court may "award a reasonable attorney's fee to the prevailing party" in a copyright action. 17 U.S.C. § 505. The statute provides "no precise rule or formula" for determining the appropriateness or magnitude of attorneys' fees. *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994) (internal quotation marks omitted). Rather, courts must exercise "equitable discretion." *Id.* However, the Supreme Court has pointed to "several nonexclusive factors" to help govern a court's decision, namely "frivolousness, motivation, objective unreasonableness[,] and the need in particular circumstances to advance considerations of compensation and deterrence." *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1985 (2016) (alteration in original) (quoting *Fogerty*, 510 U.S. at 534 n.19); *see also Manhattan Review LLC v. Yun*, 765 F. App'x 574, 576 (2d Cir. 2019). "Although objective reasonableness carries significant weight, courts must view all the circumstances of a case on their own terms." *Kirtsaeng*, 136 S. Ct. at 1989. Courts may award fees even without a finding of unreasonableness "because of a party's litigation misconduct" or "to deter repeated instances of copyright infringement or overaggressive assertions of copyright claims." *Id.* at 1988–89. A court may also consider other factors so long as they are consistent with the purpose of the Copyright Act to ensure that the public benefits from the production and performance of new creative works. *See Fogerty*, 510 U.S. at 534.

Under section 505, "an award of attorney's fees may be made for services rendered on appeal as well as at the trial level." *Twin Peaks Prods., Inc. v. Publ'ns Int'l, Ltd.*, 996 F.2d 1366, 1383 (2d Cir. 1993) (citing 3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 14.10[E], at 14–129 (1992)); *see also TCA Television Corp. v. McCollum*, No. 15-cv-4325

(GBD) (JCF), 2017 WL 2418751, at *16 (S.D.N.Y. June 5, 2017), *report and recommendation adopted*, No. 15-cv-4325 (GBD) (JCF), 2018 WL 2932724 (S.D.N.Y. June 12, 2018) (awarding fees for appellate work, even where the appellate court had not awarded fees). The award of appellate fees is a distinct inquiry from the award of district court fees, and the Court may reach different conclusions as to the two categories of fees. *See, e.g.*, *Twin Peaks Prods., Inc.*, 996 F.2d at 1383.

### B. Discussion

Defendant seeks fees for both the litigation before this Court and for fees incurred as a result of Plaintiffs' unsuccessful appeal. The Court will address each in turn.

#### 1. Fees in the District Court

Defendant argues that it is entitled to fees pursuant to the Copyright Act on the grounds that Plaintiffs' action was objectively unreasonable and frivolous, Plaintiffs were improperly motivated in bringing the suit, and fees would serve the interests of compensation and deterrence. The Court will address each of these arguments below.

##### a. Objective Unreasonableness

"'Objective unreasonableness' is generally used to describe claims that have no legal or factual support." *Viva Video, Inc. v. Cabrera*, 9 F. App'x. 77, 80 (2d Cir. 2001); *see also Muller v. Twentieth Century Fox Film Corp.*, No. 08-cv-2550 (DC), 2011 WL 3678712, at *1 (S.D.N.Y. Aug. 22, 2011) ("A copyright infringement claim is objectively unreasonable when the claim is clearly without merit or otherwise patently devoid of legal or factual basis." (internal quotation marks omitted)). Moreover, "[a] district court that has ruled on the merits of a copyright case can easily assess whether the losing party advanced an unreasonable claim or defense." *Kirtsaeng*, 136 S. Ct. at 1987. Having already closely examined Plaintiffs' arguments and evidence during

5

the merits stage of this matter, the Court has no difficulty finding that Plaintiffs' claims were objectively unreasonable.

At the outset, the reasonableness of Plaintiffs' claims must be judged against the standard governing copyright infringement claims. In order to sustain a claim for copyright infringement, "a plaintiff must establish '(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" *Kwan v. Schlein*, 634 F.3d 224, 229 (2d Cir. 2011) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)). Here Plaintiffs clearly failed to satisfy the requirements for a successful infringement claim because they did not own the rights to the allegedly infringed songs. At trial, Bernard plainly admitted that his sister-in-law, not LAMCO, owns the rights to the songs, which were transferred to her in 2002. (Trial Tr. 24:17–25:16.) Further undermining the reasonableness of Plaintiffs' claim is Plaintiffs' failure to produce any evidence of copying by Defendants, despite a clear warning from the Court that conclusory testimony from Bernard alone would be insufficient to prove their claims at trial. (*See* Doc. No. 130 at 11 n.5 ("[U]nless Bernard takes the stand and demonstrates savant-like abilities of recall, it is doubtful that a finder of fact will credit Bernard's testimony regarding when he heard the songs at issue played on Defendant's radio stations.").) Plaintiffs' lack of evidence on the two elements of their copyright claim would have put any reasonable litigant on notice that there was no reason to commence suit in the first place. Therefore, the Court can easily conclude that Plaintiffs' claims were objectively unreasonable.

### b. Frivolousness

A lawsuit "is frivolous when there 'is indisputably absent any factual or legal basis'" for it. *Hallford v. Fox Entm't Grp., Inc.*, 12-cv-1806 (WHP), 2013 WL 2124524, at *1 (S.D.N.Y. Apr. 18, 2013) (quoting *Neitzke v. Williams*, 490 U.S. 319, 323 (1989)). Frivolousness is a distinct

factor from objective unreasonableness, and although the line between the two is not always well defined, it is generally considered "a particularly intense form" of objective unreasonableness. *TCA Television Corp.*, 2017 WL 2418751, at *14. This factor also weighs in favor of an attorneys' fees award, particularly because Plaintiffs claimed to own the copyrights to works in question without *any* basis in fact. Bernard's testimony formed the entirety of the evidence presented at trial, and his concession that Plaintiffs had no rights to the works (Doc. No. 160 at 4–6) demonstrates the lack of any factual basis for bringing this suit.

### c. Motivation

Defendant argues that "Plaintiffs' motivation in filing this lawsuit was to coerce SBS into an unwarranted, multi-year retroactive and prospective license agreement." (Def. Mem. at 13.) "[T]he presence of improper motivation in bringing a lawsuit or other bad faith conduct weighs heavily in favor of an award of costs and fees." *Baker v. Urban Outfitters, Inc.*, 431 F. Supp. 2d 351, 357 (S.D.N.Y. 2006). While Plaintiffs' actual motivations were not fully established or necessary to the Court's factfinding at trial, Bernard's testimony and his concession that LAMCO did not own the copyrights in question suggests a knowing desire to roll the dice on costly litigation without evidence. *See Torah Soft Ltd. v. Drosnin*, No. 00-cv-5650 (JCF), 2001 WL 1506013, at *5 (S.D.N.Y. Nov. 27, 2001) ("[A] party that knowingly gambles on an unreasonable legal theory in order to achieve a secondary gain – in this case, the leveraging of a settlement – is indeed improperly motivated."). It is thus fair to infer that Plaintiffs acted in bad faith on this record.

### d. Compensation and Deterrence

Defendant also argues that attorneys' fees would serve the twin interests of compensating them for costs and deterring Plaintiffs in this case – as well as other plaintiffs, more generally – from bringing unreasonable copyright actions in the future. (Def. Mem. at 14.) The Court agrees.

Defendant submitted affidavits indicating that its attorneys incurred approximately one million dollars in fees and expenses defending this case. (*See* Doc. Nos. 171, 171-3, 171-5, 172, 172-1.) Awarding fees here will ensure that Defendant is compensated for the expense of fully litigating these meritless claims. Such compensation serves the Copyright Act's purpose of ensuring that the public benefits from the production and performance of new creative works. *See Fogerty*, 510 U.S. at 527 ("Because copyright law ultimately serves the purpose of enriching the general public through access to creative works, it is peculiarly important that the law's boundaries be demarcated as clearly as possible . . . [and that] defendants who seek to advance a variety of meritorious copyright defenses should be encouraged to litigate them . . . .").

An award of fees would also serve to deter Plaintiffs from bringing meritless infringement cases in the future. The case for specific deterrence is particularly strong here, since Plaintiffs have brought several similar claims in the past. *See, e.g.*, *Latin Am. Music Co. v. Media Power Grp., Inc.*, 705 F.3d 34, 44 (1st Cir. 2013); *Latin Am. Music Co. v. The Archdiocese of San Juan of the Roman Catholic & Apostolic Church*, 499 F.3d 32 , 47 (1st Cir. 2007); *Latin Am. Music Co. v. Cardenas Fernandez & Assocs., Inc.*, 60 F. App'x 843, 847 (1st Cir. 2003). In fact, Plaintiffs have persisted in bringing such claims despite being ordered to pay attorneys' fees under section 505 in the past. (Def. Mem. at 15.) *See Latin Am. Music Co. v. Media Power Grp., Inc.*, 989 F. Supp. 2d 192, 197 (D.P.R. 2013) (awarding attorneys' fees because LAMCO and ACEMLA "did not establish their ownership of the copyright for [certain allegedly infringed] songs"). Accordingly, like the court in Puerto Rico, this Court concludes that the goals of both compensation and deterrence favor awarding attorneys' fees here.

e. Litigation Misconduct

The Court is empowered to consider other factors in its section 505 analysis, and misconduct in the course of litigation may provide a further basis for awarding fees under section 505. *See Matthew Bender & Co. v. W. Publ'g Co.*, 240 F.3d 116, 124 (2d Cir. 2001) ("If a party's conduct is unreasonable, a district court has the discretion to award fees."). Here, Bernard and his counsel failed to produce the Recordings, misled the Court and Defendant into believing that the Recordings had been destroyed by malware, and then – on the eve of trial – claimed that the Recordings actually had been preserved. Although the Court remains highly skeptical as to the authenticity of the newly discovered recordings, even Plaintiffs acknowledge that they "failed to produce [the] recordings in discovery" and then "misled the Court as to their existence." (Pl. Mem. at 6.)

At a hearing conducted to determine who was responsible for the discovery violations and misrepresentations to the Court, Bernard and Plaintiffs' first two attorneys provided conflicting accounts – each pointing the finger at the other. (*See* Doc. Nos. 164, 167, 168.) But what is beyond question, and what Plaintiffs themselves acknowledge, is that Defendant had to endure "unreasonable conduct, including during discovery and through trial, [which] concededly made life more difficult for [Defendant] (and the Court)." (Pl. Mem. at 2 (internal quotation marks omitted).) Given this concession, the Court concludes that Plaintiffs' litigation conduct also weighs in favor of an award of attorneys' fees.

\*   \*   \*

The *Kirtsaeng* factors clearly support an award of attorneys' fees. Accordingly, the Court will award fees and costs for the district court litigation to Defendant.

9

2. Fees on Appeal

Defendant also seeks attorneys' fees incurred during Plaintiffs' unsuccessful appeal. For the same reasons that attorneys' fees are warranted for the district court proceedings, they are warranted on appeal as well. Given Bernard's concession at trial that Plaintiffs did not own the copyrights at issue in this case, and given the lack of evidence of any copying by Defendant, it is hard to imagine how Plaintiffs could have brought an appeal in good faith. Moreover, as the Second Circuit noted in affirming the Court's judgment, Plaintiffs did not even challenge the Court's factual findings in its opening brief. *See Latin Am. Music Co.*, 738 F. App'x at 724. Based on the appellate record, it is clear that Plaintiffs' appeal was unreasonable and frivolous, and that it constituted merely the final phase of a litigation strategy designed to extract settlements by imposing costs and litigation risks on defendants. That motivation, coupled with the need to compensate Defendant and deter future conduct by Plaintiffs and other opportunistic copycats, further leads the Court to conclude that Plaintiffs must pay reasonable attorneys' fees and costs incurred by Defendant on appeal.

### III. REASONABLENESS OF ATTORNEYS' FEES

Having concluded that Defendant is entitled to attorneys' fees for both the district court litigation and appeal, the inquiry becomes whether the fees sought by Defendant are reasonable. In calculating attorneys' fees, courts in the Second Circuit determine a "presumptively reasonable fee" by multiplying a reasonable hourly rate by the reasonable number of hours expended on the case. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 189–90 (2d Cir. 2008). This method "boils down to [asking] what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively." *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (internal

quotation marks omitted). "In making [its reasonableness determinations], the district court does not play the role of an uninformed arbiter but may look to its own familiarity with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties." *Tlacoapa v. Carregal*, 386 F. Supp. 2d 362, 371 (S.D.N.Y. 2005). "[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). However, "[i]n determining how to exclude unnecessary hours, courts may apply a percentage discount to the overall fee award as a practical means of trimming fat from a fee application because a request for attorney's fees should not result in a second major litigation." *Mango v. BuzzFeed, Inc.*, 397 F. Supp. 3d 368, 374 (S.D.N.Y. 2019) (internal citations, quotation marks, and brackets omitted).

Defendant SBS was represented by two firms in the case. The first firm, Stroock & Stroock & Lavan LLP ("Stroock"), was paid directly by Defendant. (Doc. No. 171.) Stroock has provided contemporaneous time records, and requests a total of $482,292.61 in attorneys' fees for its work in the district court (*id.* at 2) and $41,317.26 in connection with the appeal (Doc. No. 216 at 2).[2] The second firm, Hughes Hubbard & Reed LLP ("Hughes Hubbard"), was paid by Broadcast Music, Inc. ("BMI") – a non-party to the litigation that licensed SBS's rights to play the songs – as part of an indemnification agreement between BMI and SBS. (Doc. No. 172.) Hughes Hubbard has also provided invoices and time entries for its work, and requests a total of $446,165.60 in attorneys' fees for its district court work (*id.* at 3) and $63,227.20 for the appeal (Doc. No. 217 at 3). Although Plaintiffs do not object to the litigation costs identified by Defendant, Plaintiffs do challenge several categories of time entries for Defendant's attorneys' fees, including: fees incurred in connection with SBS's request for indemnification by BMI; fees and costs incurred by

---

[2] Defendant concedes that one of Stroock's time entries – in the amount of $1,837.50 – should be excluded from Stroock's requested appellate award of $43,154.76. (Supp. Reply at 6–7 n.4.)

Hughes Hubbard, which were paid by BMI directly; and fees and costs incurred for travel by Miami-based counsel at Stroock. (*See* Pl. Mem. at 2–7.)  Plaintiffs also argue that the fees should be reduced due to the relative financial positions of each party. (*Id.* at 7–8.)

### A.  Reasonableness of Rates

Over the course of the litigation, which spanned several years, Stroock charged the following hourly rates: $435 to $525 for James Sammataro, a partner with substantial experience in entertainment law; $435 to $465 for Hans Hertell, an associate with experience in entertainment law and Latin American practice; $425 to $465 for Brendan Everman, a litigation associate; $425 for Jose Garcia-Tunon, a former entertainment and litigation associate; and $350 for Courtney Caprio, a former entertainment and litigation associate. (*See* Doc. No. 171-3; Doc. No. 171 at 3.) Hughes Hubbard charged the following hourly rates: $825 to $1,000 for James C. Fitzpatrick, a litigation partner with a practice that included music licensing for BMI; $670 to $740 for Meaghan C. Gragg, a litigation associate; $590 to $690 for Hannah L. Miller, an IP and antitrust associate; $270 to $280 for Marc Hartmann, a paralegal; and $270 for Margarita Klimentova, a paralegal. (*See* Doc. Nos. 172, 172-1.)

Although Plaintiffs do not specifically challenge Stroock's and Hughes Hubbard's rates (*see* Pl. Mem.), courts in this district have generally found hourly rates of $400 to roughly $750 to be appropriate for partners in copyright and intellectual property cases. *See, e.g.*, *Broad. Music, Inc. v. Pamdh Enters., Inc.*, No. 13-cv-2255 (KMW), 2014 WL 2781846, at *6–7 (S.D.N.Y. June 19, 2014) (approving hourly rates of $570 for partner with 15 years' experience in copyright law); *Sub–Zero, Inc. v. Sub Zero N.Y. Refrigeration & Appliances Servs., Inc.*, 13-cv-2548 (KMW), 2014 WL 1303434, at *8–9 (S.D.N.Y. Apr. 1, 2014) (collecting cases and approving rates of $785 for a partner who specializes in copyright); *Pyatt v. Raymond*, 10-cv-8764 (CM), 2012 WL

1668248, at *6 (S.D.N.Y. May 10, 2012) (collecting cases approving rates ranging from $400 to $650 for partners in copyright and trademark cases); *Union of Orthodox Jewish Congregations of Am. v. Royal Food Distribs. Liab. Co.*, 665 F. Supp. 2d 434, 437 (S.D.N.Y. 2009) (finding partner's rate of $735 to be reasonable in copyright dispute); *GAKM Res. LLC v. Jaylyn Sales Inc.*, 08-cv-6030 (GEL) (THK), 2009 WL 2150891, at *8 (S.D.N.Y. July 20, 2009) (approving $650 and $600 hourly rates for partners specializing in intellectual property litigation). While Sammataro's rates are well within or below that range ($435 to $525), Fitzpatrick's rates clearly exceed it ($825 to $1,000). Indeed, when it first filed its motion for attorneys' fees, Defendant conceded "that some of Hughes Hubbard's rates are above" the hourly rates that courts in this district have found reasonable in copyright cases. (Doc. No. 170 at 23 n.17.) Accordingly, the Court will cap the rate for Hughes Hubbard's partner James Fitzpatrick at $750 an hour, which reflects a 25% discount.

With respect to associates' rates, courts in the Southern District have generally found hourly rates of $200 to $450 to be reasonable in copyright cases. *See, e.g.*, *Genger v. Genger*, No. 14-cv-5683 (KBF), 2015 WL 1011718, at *2 (S.D.N.Y. Mar. 9, 2015) ("New York district courts have . . . recently approved rates for law firm associates in the range of $200 to $450 per hour . . . ."); *Dweck v. Amadi*, 10-cv-2577 (RMB) (HBP), 2012 WL 3020029, at *4 & n.5 (S.D.N.Y. July 6, 2012) (collecting cases approving rates between $180 and $440 per hour for associates); *OZ Mgmt. LP v. Ozdeal Inv. Consultants, Inc.*, No. 09-cv-8665 (JGK) (FM), 2010 WL 5538552, at *4 (S.D.N.Y. Dec. 6, 2010), *report and recommendation adopted*, 2011 WL 43459 (S.D.N.Y. Jan. 5, 2011) (approving rates between $355 and $400 per hour for associates); *Union of Orthodox Jewish Congregations of Am.*, 665 F. Supp. 2d at 437 (approving associate hourly rate of $445); *Nat'l Ass'n for Specialty Food Trade, Inc. v. Construct Data Verlag AG*, No. 04-cv-2983 (DLC) (KNF), 2006 WL 5804603, at *6 (S.D.N.Y. Dec. 11, 2006) (approving associate rate of

$325 per hour), *report and recommendation adopted*, 2007 WL 656274 (S.D.N.Y. Feb. 23, 2007). Again, Stroock's rates are generally within that range ($435 to $465), while Hughes Hubbard's rates substantially exceed it ($590 to $740). Accordingly, the Court will cap the rate for Hughes Hubbard's associates at $465 an hour, which reflects roughly a 30% discount.

Turning finally to the paralegal rates in this action, the Court notes that judges in the Southern District of New York have generally found hourly rates of $150 to $200 to be reasonable for paralegals in copyright cases. *See, e.g.*, *Broad. Music, Inc.*, 2014 WL 2781846, at *6–7 (approving hourly rates of $200 for paralegal with 13 years' experience, and $160 for paralegal with two years' experience); *Sub–Zero, Inc.*, 2014 WL 1303434, at *8–9 (collecting cases and approving a rate of $200 for a paralegal); *GAKM Res. LLC*, 2009 WL 2150891, at *8 (adopting report and recommendation approving a $195 hourly rate for paralegals). Here, Hughes Hubbard's rates ($270 to $280) exceed the range. Accordingly, the Court will cap the paralegals' rate at $200 an hour, which reflects roughly a 30% discount.

B.  Time Spent by SBS Pursuing Indemnification

Plaintiffs argue that SBS is not entitled to fees incurred by either firm relating to their indemnification discussions. (Pl. Mem. at 6.) The Court agrees. SBS cannot recover fees expended as part of a contractual dispute between itself and BMI. Put simply, the question of whether BMI and ASCAP were obligated to indemnify SBS is not relevant to this litigation. *See Liang v. AWG Remarketing, Inc.,* No. 14-cv-99, 2016 WL 428294, at *9 (S.D. Ohio Feb. 4, 2016) ("[P]ermitting Defendants to recover their fees spent pursuing . . . indemnification . . . does not further or advance the purposes of the Copyright Act . . . ."); *see also Ritchie v. Gano*, 754 F. Supp. 2d 605, 609 (S.D.N.Y. 2010) (concluding that the defendant in a copyright action cannot recover for claims brought by the plaintiff that were unrelated to the copyright claims, such as a breach of

14

contract claim). Moreover, because SBS has the burden of showing that hours expended were reasonable, and since many of the attorneys' time entries are block-billed and do not allow the Court to distinguish between hours worked on the indemnification dispute and hours spent on the infringement claims,[3] the Court will exclude those block-billed entries. *See Hensley*, 461 U.S. at 433 ("Where the documentation of hours is inadequate, the district court may reduce the award accordingly . . . ."). After a careful analysis of the time entries, the Court estimates that roughly 7% of Stroock's requested fees and less than 1% of Hughes Hubbard's requested fees were block-billed in this way.

### C.  Work Performed by Attorneys Retained by BMI

Section 505 limits recovery of fees to the "prevailing party." 17 U.S.C. § 505. While SBS was clearly the prevailing party, Plaintiffs nonetheless argue that they should not be held responsible for work performed by Hughes Hubbard *on behalf of SBS* pursuant to the indemnification agreement, because such work was paid pursuant to an indemnification agreement and by a third party. (Pl. Mem. at 2-5.) The Court disagrees. The fact that a prevailing party's legal fees are paid by a third party should not deprive it of the ability to recover fees for the total amount spent on successfully litigating a case. *See, e.g.*, *ABC, Inc. v. Primetime 24*, 67 F. Supp. 2d 558, 562 (M.D.N.C. 1999) ("[T]he fact that [a prevailing party's] legal fees and expenses have been paid by [a third party] . . . does not bar [the prevailing party] from recovering such fees."), *aff'd*, 232 F.3d 886 (4th Cir. 2000); *Radin v. Hunt*, No. 10-cv-08838 (JAK) (SSX), 2012 WL 13006187, at *4 (C.D. Cal. Feb. 27, 2012) ("[T]here is nothing in [section 505] that precludes [a prevailing party] from receiving reasonable attorney's fees, even though they were indemnified.").

---

[3] *See, e.g.*, Doc. Nos. 171-3 at 6 ("[R]eview and analyze order relating to case management and discovery; review and analyzed issues relating to BMI's indemnification."), 172-1 at 3 ("TC and emails with K. Howland-Kruse re indemnity issues and review court filings.").

15

Nevertheless, because Hughes Hubbard represents BMI in a number of other matters, the Court must take particular care to ensure that Hughes Hubbard's claimed fees relate only to its representation of *SBS in this matter*.  (Doc. No 172 at 2.)  Clearly, most of the time records submitted by Hughes Hubbard support Defendant's argument that the firm was performing work in support of SBS's defense in this case.  (*See, e.g.*, Doc. No. 172-1 at 16, 21.)  However, Plaintiffs identify several time entries that appear to reflect work done by Hughes Hubbard solely for the benefit of BMI, and not on behalf of SBS's defense in the case.  (*See* Pl. Mem. at 3–5; *see, e.g.*, Doc. No. 172-1 at 53 ("Draft letter responding to plaintiffs' subpoena to BMI.").)  Furthermore, some time entries are so vague that the Court is unable to determine whether the entry actually reflects work done on behalf of BMI in some unrelated matter.  (*See, e.g.*, Doc. No. 172-1 at 12 ("Call with BMI and attention to same (0.3).").)  Hughes Hubbard may not be reimbursed for work done on BMI's behalf alone, or for work that is not sufficiently detailed to allow the Court to determine its purpose.  After a careful analysis of the time entries, the Court estimates that roughly 6% of Hughes Hubbard's requested fees are attributable to work done on behalf of BMI only.

### D. Travel Expenses for SBS's Miami-Based Counsel

SBS also seeks fees and costs related to travel between Florida and New York for its Miami-based attorneys from Stroock.  (Doc. Nos. 171-3, 171-5.)  Plaintiffs object to these fees on the grounds that they could have been avoided if SBS had retained counsel in this district.  (Pl. Mem. at 7.)  Nevertheless, the prevailing hourly rates in Miami are far lower than those in the Southern District, and by retaining its long-time counsel, SBS was able to ensure efficiencies that undoubtedly resulted in fewer hours being expended in this matter.  For these reasons, the Court finds that a private litigant seeking to "spend the minimum necessary to litigate the case effectively," *Simmons*, 575 F.3d at 174 (internal quotation marks omitted), would have reasonably

16

concluded that the additional travel costs – including both attorney hours and the expenses associated with flights, lodging, and meals – were more than offset by the lower rates and efficiencies associated with retaining Stroock.  Thus, the Court will not reduce Stroock's fee award for hours associated with travel from Miami.

### E.  Ability to Pay

Plaintiffs next argue that they are "struggling to emerge from bankruptcy" and that their financial condition is so precarious as to justify a further reduction in the Defendant's attorneys' fees award.  (Pl. Mem. at 8.)  A court may take into account the relative financial positions of the parties in determining what amount of attorneys' fees should be awarded.  *See Shangold v. Walt Disney Co.*, 275 F. App'x 72, 74 (2d Cir. 2008) ("Fee awards are at bottom an equitable matter, and courts should not hesitate to take the relative wealth of the parties into account." (internal brackets omitted) (quoting *Faraci v. Hickey-Freeman Co.*, 607 F.2d 1025, 1028 (2d Cir. 1979))).  However, since Plaintiffs' filed their opposition (Pl. Mem.), Defendant has notified the Court that those bankruptcy cases have been dismissed (Doc. No. 220).  Moreover, while the bankruptcy court acknowledged that Plaintiffs have few assets, it also observed that Plaintiffs are "repeat filer[s] and that the record shows that [they have] been trying to avoid or delay payment to judgment creditors through the bankruptcy proceedings."  *In re ACEMLA De Puerto Rico Inc.*, No. 17-02021 (ESL), 2019 WL 311008, at *22 (Bankr. D.P.R. Jan. 22, 2019).  (*See* Doc. No. 220-2 (consolidating ACEMLA and LAMCO bankruptcy cases).)  The bankruptcy court also barred Plaintiffs from refiling for two years.  (*See* Doc. No. 220-2 at 2.)

Given Plaintiffs' litigation history and repeated misrepresentations throughout these proceedings, the Court puts little stock in Plaintiffs' self-serving claims of financial distress. Moreover, "individuals who bring objectively unreasonable claims should not be given a 'free

17

pass' just because they have limited financial resources." *Muller*, 2011 WL 3678712, at *4.  Courts have a strong interest in deterring unreasonable actions through fee awards, for without the prospect of such awards, a defendant "might be forced into a nuisance settlement." *Jovani Fashion Ltd. v. Cinderella Divine, Inc.*, 820 F. Supp. 2d 569, 575 (S.D.N.Y. 2011) (quoting *Assessment Techs. of WI, LLC v. WIREdata, Inc.*, 361 F.3d 434, 437 (7th Cir. 2004)).  Accordingly, the Court will not further reduce Defendant's award merely because Plaintiffs profess financial hardship.

### F.  Costs

Defendant also seeks full costs for the district court work, including $13,543.66 in costs for Stroock's work and $6,935.05 in costs for Hughes Hubbard's work.  Plaintiffs challenge costs only as they relate to Stroock's travel expenses.  However, as noted above, the Court concludes that Defendant seeks reasonable costs for Stroock's travel, particularly in light of the fact that Stroock's hourly rates are far lower than is typical in the Southern District of New York.  Indeed, if Defendant had hired Hughes Hubbard for the entire representation, the attorneys' fees would have been much higher.  Therefore, the Court sees no reason to withhold or reduce Defendant's request for full costs.

### IV.  CONCLUSION

In light of the findings set forth above, the Court concludes that Stroock's requested fees should be reduced by 7% for its district court work.  The Court further concludes that Hughes Hubbard's requested fees should be reduced by 30% for both its district court and appellate work, and Hughes Hubbard's fees for its district court work should be reduced by another 7% after the initial 30% reduction is applied.  Full costs are also awarded.

Accordingly, IT IS HEREBY ORDERED THAT that Defendant's application for attorneys' fees is GRANTED.  Defendant is awarded $824,562.24 in attorneys' fees: $448,532.13

for Stroock's district court work; $41,317.26 for Stroock's appellate work; $290,453.81 for Hughes Hubbard's district court work; and $44,259.04 for Hughes Hubbard's appellate court work. Defendant is also awarded $13,543.66 in costs paid by Stroock and $6,935.05 in costs paid by Hughes Hubbard.

The Clerk of the Court is respectfully directed to terminate the motion pending at document number 215.

SO ORDERED.

Dated:   June 1, 2020
         New York, New York

                                      RICHARD J. SULLIVAN
                                      UNITED STATES CIRCUIT JUDGE
                                      Sitting by Designation